IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 12-cv-00487-MOC-DCK

| | |
|---|---|
| DAVID HOLMES, individually and on Behalf of a Rule 23 putative class, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BANK OF AMERICA, N.A., in its own Capacity and as successor by merger to BAC Home Loans Servicing, L.P., and ILLINOIS UNION INSURANCE COMPANY, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S MOTION TO DISMISS**

The Plaintiff's *sole basis* for his unjust enrichment claim is Illinois Union Insurance Company's ("IUI") provision of continuous lender-placed wind insurance coverage. Lender-placed insurance ("LPI") is designed to avoid lapses in coverage for loss caused by hazards such as fire, wind, or flood. As such, state officials, government sponsored entities, and consumer advocates have taken the position that the continuous coverage provided under LPI policies protects borrowers and lenders by ensuring that borrowers' homes are at no time without coverage for such hazards. The complaint fails to allege that, by IUI's provision of continuous coverage, the Plaintiff received

inadequate consideration for a benefit conferred upon IUI; the complaint fails to allege that continuous coverage constitutes an "inequitable" circumstance in relation to any benefit conferred by the Plaintiff upon IUI; and the Complaint fails to address the existence of an express contract governing the precise subject-matter of the Plaintiff's unjust enrichment claim.

For each of these reasons, IUI respectfully submits this memorandum of law in support of its motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

### A. The Lender-Placed Insurance Business and IUI's Role

When borrowing money for the purchase of a home, a borrower is required to maintain certain minimum, continuous levels of hazard insurance. In the event of loss due to hazards such as fire, wind, and flood, such insurance protects the borrower from a complete loss of equity in his or her home and protects the lender's collateral. In those cases where a borrower fails to maintain required hazard insurance, standard mortgage instruments provide a lender the contractual right to obtain LPI on the borrower's behalf. *See infra* Part III.B.ii.

IUI is an insurance company incorporated in Illinois and provides LPI coverage in Florida as an authorized surplus-lines insurer. With respect to homeowners with loans serviced by Bank of America, IUI provided coverage to Bank of America under a master policy pursuant to which Evidence of Insurance under that master policy was issued by

Balboa Insurance Services, Inc. to individual borrowers. IUI is not an insurance agent, and its revenue relating to LPI consists of the premiums paid by servicers such as Bank of America for the issuance of an individual Evidence of Insurance.

**B.      Continuous Coverage Is a Required Component of Hazard Insurance**

"Continuous coverage" means that the effective date of LPI is set such that there is no lapse between the coverage periods of the borrower's original insurance policy and the LPI coverage. Standard mortgage instruments, and investors in the secondary mortgage market such as Fannie Mae and Freddie Mac, require that borrowers and lenders maintain continuous coverage. *See infra* Part III.B.ii.

These policies protect borrowers and lenders on a *prospective* basis against any loss that may eventually be discovered and subsequently determined to have been caused by a covered hazard (in this case, loss caused by wind) during the gap between a lapsed policy and lender-placed coverage. Without continuous coverage, such losses would be borne directly by uninsured borrowers, usually the homeowners. This manner of providing continuous coverage is unique in the insurance industry, and state officials and consumer advocates have stated repeatedly that such coverage is of vital importance. *See, e.g.,* Robert P. Hartwig, Testimony, National Association of Insurance Commissioners ("NAIC") Public Hearing on Private Lender-Placed Insurance, at 11 (Aug. 9, 2012) (Attached as Ex. A) ("Stated simply, the old adage that you can't insure a house that's already on fire doesn't apply to LPI insurers."); *see also infra* Part III.B.i. By definition, continuous coverage means that a lender-placed insurance provider agrees

to cover loss occurring during a period of coverage that predates the issuance of Evidence of Insurance to a particular borrower. *See LaCroix v. U.S. Bank, N.A.*, Civ. No. 11-3326, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012) ("Backdating policies…ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage.").[1]

## C. The Plaintiff's Allegations[2]

The Plaintiff, David Holmes, is a resident of West Palm Beach, Florida. Compl. ¶ 10. The Plaintiff alleges that, on October 5, 2010, he obtained a reverse mortgage from his original lender, One Reverse Mortgage, LLC, in the amount of $64,125.00, posting his home as collateral. The Plaintiff alleges that, approximately one week later, this reverse mortgage was purchased from One Reverse Mortgage by defendant Bank of America, N.A., which, along with defendant BAC Home Loans Servicing, L.P., undertook the role of servicer for the loan and, therefore, to ensure that the required hazard insurance was, at all times, in place for the Plaintiff's home. Compl. ¶¶ 11-28. The Complaint alleges that LPI was provided "to Bank of America" by IUI, but does not

---

[1] The Complaint uses the term "backdating" as a shorthand for continuous coverage. As noted above, the term should not be understood to imply that LPI provides no prospective coverage for losses determined to have occurred within the period of time preceding the issuance of an Evidence of Insurance, or that the insurance company bears no risk with respect to that period. Indeed, although the Plaintiff fails to acknowledge the possibility that losses may be attributed to events caused during a period prior to the discovery of that loss, the Complaint nevertheless concedes that LPI insurers bear risk and payment obligations as of the moment that coverage is issued on a particular property, even with respect to losses occurring prior to issuance of Evidence of Insurance. *See* Compl. ¶ 57 (implicitly acknowledging that LPI insurers will not know whether a property is damaged as of the moment coverage is requested by a lender).

[2] For purposes of this motion only, IUI treats the allegations of the Complaint as true.

allege any specific obligations imposed on either party through the terms of any contract or policy issued to Bank of America, including any obligations with respect to the provision of continuous coverage to Bank of America or its borrowers. Compl. ¶ 13.

The Complaint states that the Plaintiff maintained a hazard insurance policy on the property as of the date that Bank of America purchased the loan, but that this policy "allegedly" did not provide for windstorm coverage. Compl. ¶ 25-26. The Plaintiff alleges that, on April 5, 2011, Bank of America sent Plaintiff a letter stating that he was required to maintain wind insurance on his property and requesting proof of such insurance. Not receiving such proof, Bank of America allegedly obtained wind insurance for the Plaintiff's property through IUI in the amount $24,966.00. Compl. ¶¶ 28-31. The Evidence of Insurance form allegedly sent to the Plaintiff indicating that Bank of America had obtained LPI for the Plaintiff's property provided for an effective date of approximately October 12, 2010, for the coverage issued through IUI. Compl. ¶ 31. The Plaintiff further alleges that on January 13, 2012, Bank of America informed him that renewed LPI had been obtained with an effective date of October 12, 2011 and an expiration date of October 12, 2012. Compl. ¶¶ 36-37.

The Complaint sets forth three claims for relief, only one of which names IUI as a defendant. The Plaintiff alleges claims of breach of contract and of an implied covenant of good faith and fair dealing with respect to Bank of America. Compl. ¶¶ 69-86. The Complaint's sole claim against IUI is limited to an assertion that IUI was unjustly enriched by receiving premiums on a policy with an effective date prior to the date that

5

Case 3:12-cv-00487-MOC-DCK   Document 36   Filed 10/04/12   Page 5 of 20
23750189v10

the policy was issued.  Compl. ¶¶ 90-91.  For the reasons stated below, the Complaint fails to state a claim for unjust enrichment by IUI.

**ARGUMENT**

**I.     Standard of Review**

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the Court must accept as true all of the factual allegations contained in the complaint, mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action will not suffice.  *Twombly*, 550 U.S. at 555.  Legal conclusions are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**II.    The Elements of a Claim for Unjust Enrichment**

To state a claim for unjust enrichment under Florida law, a complaint must allege "[*1*] a benefit conferred upon a defendant by the plaintiff, [*2*] the defendant's appreciation of the benefit, and [*3*] the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof."  *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004).  There can be no claim for unjust enrichment when adequate consideration is provided for the benefit conferred. *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011).  Finally, "Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists

concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla. Dist. Ct. App. 2008) (per curiam).[3]

### III. The Complaint Fails to State a Claim for Unjust Enrichment

The claim for relief against IUI is focused on only one issue. The *sole basis* for the Plaintiff's claim against IUI is that the LPI for his property was dated so as to provide coverage as of a date prior to the date that Bank of America requested proof of wind insurance covering the property, *i.e.*, that IUI provided continuous coverage for the period beginning when Bank of America undertook the servicing of the Plaintiff's loan. Compl. ¶ 90. This allegation is insufficient to state a claim for unjust enrichment.

#### A. Continuous Coverage Provides Prospective Protection and Is Adequate and Expected Consideration for the Plaintiff's LPI Premiums

IUI's provision of continuous coverage for wind losses constituted adequate consideration for any benefit received, and therefore IUI's retention of any alleged benefit is not "unjust" as a matter of law. *Griggs*, 959 So.2d at 331-32. First, the Plaintiff's only reasonable expectation in light of his mortgage agreement and

---

[3] While the Plaintiff cites to no particular state's law with respect to any of the claims in his Complaint (a failure that is, in itself, sufficient to warrant dismissal of this claim, *see In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009)), the applicable law with respect to the Plaintiff's unjust enrichment claim is that of the State of Florida. Although IUI is incorporated in Illinois, only Florida has more than an incidental relationship to the subject matter of this suit. *See Stetser v. TAP Pharm. Prods. Inc.*, 598 S.E.2d 570, 580-81 (N.C. Ct. App. 2004) (discussing both the "most significant relationship test" and the "state of injury test" as applied to claims of unfair trade practices, which, like unjust enrichment claims, fall between the rules applied to claims brought in contract or tort); *see also Penn. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 111 (4th Cir. 2012) (noting that the Court, when sitting in diversity, must apply the substantive law that a court in North Carolina would apply if it were deciding this case).

communications from defendant Bank of America was that any required hazard insurance was to be maintained on a continuous basis during the term of the loan, and that if the Plaintiff failed to purchase such insurance, any LPI that Bank of America obtained for his property would provide for continuous coverage. Second, the Plaintiff cannot allege inadequate consideration in light of the mistaken and implausible assertion that continuous coverage does not provide "prospective" coverage. Third, the Plaintiff's allegations that an insurance company could "be confident" that no covered losses occurred during the period of coverage preceding the issuance of Evidence of Insurance is likewise facially implausible and, in any event, fails to allege that IUI was not obligated to provide coverage on a continuous basis by agreement with Bank of America.

> *i* "Continuous Coverage" Is Adequate Consideration Because It Represents the Plaintiff's Reasonable Expectation with Respect to LPI

Continuous coverage is *the* feature of LPI that—above all other aspects of such coverage—represents the reasonably expected consideration received in return for LPI premiums. *See* Evidence of Wind Insurance for David Holmes (Attached as Ex. B and providing for an effective date of October 12, 2011 and an expiration date of October 12, 2012).[4] As another court has held in a similar case, obtaining LPI on a continuous

---

[4] IUI's Evidence of Wind Insurance is incorporated into the Complaint by reference at paragraph 31 and may be considered by the Court in evaluating IUI's motion to dismiss, along with the other documents and sources cited in this memorandum, each of which is either relied upon in the Complaint or may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) ("We are not required, however, to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inference. Nor must we accept as true allegations that contradict matters
8

coverage basis represents the expected and appropriate response of a lender when a borrower's standard coverage is not maintained. *See Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011) ("Plaintiff does not claim that Wachovia has done anything other than what it was entitled to do under the contract: ensure that its interest in the property was protected with continuous, adequate insurance coverage….").

The Plaintiff concedes that he was informed in his initial loan documents that he was required to "insure all improvements on the Property . . .in the amounts, to the extent and for the periods required by the Lender." Compl. ¶ 22; *id.*, Ex. A, at 2 ¶ 3. Bank of America was entitled under those documents to "do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of …hazard insurance." *Id.* ¶ 23; *id.*, Ex. A, at 3 ¶ 5. Furthermore, the Plaintiff was informed on at least two occasions prior to the placement of IUI's coverage that he was required to maintain wind coverage on his property, and that such coverage was to be "continuous," *id.* ¶ 29, and was to be maintained "at all times." Mem. in Supp. of Bank of Am. Mot. to Dismiss, Ex. 3 (Notification Letter dated April 11, 2011); *id.*, Ex. 4 (Notification Letter dated May 9, 2011).

Because the very allegations of the Plaintiff's Complaint establish that he received the only reasonably expected consideration in return for any benefit conferred, his claim of unjust enrichment must be dismissed. *See Gibson v. Chase Home Finance, LLC*, No. 11–cv–1302, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011) ("The terms

---

properly subject to judicial notice or by exhibit." (internal quotation marks and citations omitted)).

of the mortgage and the hollowness of Gibson's conclusory allegations render implausible a claim that Chase received an 'inequitable' benefit."); *see also RC Hilton Assocs., Inc. v. Stan Musial & Biggie's, Inc.*, 702 F.2d 907, 909 (11th Cir. 1983) ("In the present case Musial clearly informed Hilton that it did not intend to pay a sales commission."); *Al-Babtain v. Banoub*, No. 06-cv-1973, 2008 WL 4938348 (M.D. Fla. Nov. 18, 2008) (dismissing claim of unjust enrichment under Florida law where the Plaintiff had no "reasonable expectation" of compensation for business development services provided to defendant).

> ii. *The Allegation that "Backdating" Does Not Provide Prospective Protection Is Conclusory and Implausible*

The Plaintiff's wind insurance covers any loss that *will be* attributable to the covered period, and his coverage is in fact prospective in nature. Thus, the Plaintiff's citation to an article appearing in the American Banker, which in turn quotes an unnamed person associated with NAIC stating that insurance "is supposed to be 'prospective in nature,'" Compl. ¶ 56, is beside the point with respect to continuous coverage. By its very nature, continuous coverage means that IUI was exposed to any loss that had befallen the Plaintiff's property – or any losses that may in the future be discovered to have befallen the Plaintiff's property – during the period of coverage. *LaCroix*, 2012 WL 2357602, at *5. Thus, IUI's risk of loss under the continuous coverage provided adequate consideration in return for the Plaintiff's LPI premium. *Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. Dist. Ct. App. 2009) ("[W]hen a defendant has given adequate consideration to someone for a benefit conferred, a claim for unjust enrichment

10

necessarily fails."); *see also Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007) ("Budget retained a benefit in the form of the amounts paid…, but [Plaintiffs] make no allegations as to anything Budget was obligated to do, and failed to do, in exchange for that benefit.").

> *iii. The Allegation that Insurance Companies Could "Be Confident" That No Loss Had Occurred During a Gap in Coverage Is Speculative and Implausible*

The Plaintiff asserts that any given insurance company could "be confident" that a property presents "no underlying risk" with respect to a covered hazard because "it is an industry practice . . . to subscribe to tracking and storm reporting services." Compl. ¶ 57. The Plaintiff alleges no plausible basis to support the bald assertion that an insurance company tasked with providing coverage to a lender with thousands of borrowers in LPI could "be confident" that a particular property had not in fact been damaged during the applicable coverage period prior to the time the Evidence of Insurance was issued by that lender or its agent. Moreover, although the Plaintiff alleges that IUI provides LPI "*to Bank of America*," rather than to individual borrowers, Compl. ¶ 13 (emphasis added), the Plaintiff makes *no allegation* concerning the terms or conditions of IUI's contract with Bank of America, and, in particular, makes no allegation that IUI provides coverage in any way other than as it is obligated to do pursuant to the policy provided to Bank of America. As such, the Complaint fails to allege a plausible basis on which to find that IUI's provision of continuous coverage constitutes inadequate consideration. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads sufficient

11

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### B. The Plaintiff Fails to Allege that Continuous Coverage Is Otherwise Inequitable

Continuous coverage is a required element of LPI policies, and regulators, legislators, and consumer advocates have stated that such coverage provides an important benefit to the housing and mortgage markets generally, and to individual lenders and borrowers in particular. IUI's provision of continuous coverage plainly does not constitute a "circumstance[] that make[s] it inequitable" to retain premiums paid for its LPI coverage, and, therefore, the Complaint fails to allege the required third element of an unjust enrichment claim under Florida law. *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004).[5]

#### *i. State Regulators, Legislatures, and Consumer Protection Advocates Consistently Endorse the Provision of Continuous Coverage*

The Complaint alleges that the New York Department of Financial Services is currently reviewing all aspects of the lender-placed market in an ongoing review of banks and insurers. Compl. ¶ 58. Nothing in this allegation rises above the conclusory or the irrelevant. In any event, the Complaint fails to mention that in his opening remarks at the Department's public hearings held in May of 2012, the Superintendent expressly acknowledged the value of continuous coverage: "[LPI is] *designed to maintain*

---

[5] Additionally, each of the considerations discussed above with respect to the consideration provided to the Plaintiff undermine any plausible allegation of inequity. *See supra* Part III.A.

*continuous coverage and protection for the properties, and does serve an important purpose.*" *In re Force-Placed Ins. Public Hr'gs*, N.Y. DEPT. OF FIN. SERVS., Transcript of May 17, 2012, Proceedings, at 3:3-10 (Opening Statement of Superintendent Lawsky), *available at* www.dfs.ny.gov/insurance/hearing/fp_052012/fp_trans_20120517.pdf (emphasis added)). Moreover, an allegation of a quote purportedly attributable to someone working with the NAIC, Compl. ¶ 56, is insufficient to meet the pleading standards of *Twombly*, and is similarly at odds with that organization's express and public recognition of the benefit of continuous coverage. *See* CREDITOR-PLACED INSURANCE MODEL ACT § 4(A)(2), 20XX WL 8342883 (NAIC Sept. 30, 1996) (providing that "*[t]he date prior coverage, including prior creditor-placed insurance coverage, lapsed*" is an acceptable effective date for LPI coverage (emphasis added)) (Attached as Ex. C).

Moreover, Florida state law also reflects the importance and fairness of maintaining borrowers in continuous coverage. For example, Florida law expressly requires that, for borrowers whose insurance premium payments are escrowed with their lenders, lenders ensure that premium payments are advanced on behalf of borrower such that "coverage on the property does not lapse." Fla. Stat. 501.137(1). This requirement demonstrates the legislature's belief in the public importance of continuous coverage, not only for lenders, but for borrowers, as well.

Finally, even the Center for Economic Justice, a consumer advocacy group critical of LPI providers and the banks with which they contract, has taken the position that ensuring continuous coverage is a means of protecting lenders and fostering an efficient mortgage market. *See* Birny Birnbaum, Testimony, NAIC Public Hearing on

13

Private Lender-Placed Insurance, at 6 (Aug. 9, 2012) (Attached as Ex. D) ("Ensuring Continuous Insurance Coverage: Lender-Placed Insurance (LPI) is an important tool for mortgage servicers to meet this requirement and for mortgage markets to operate smoothly.").

The Plaintiff's allegation of inequity is implausible in light of these public affirmations that LPI may, should, and, in some instances, "shall," provide continuous coverage. As the allegation is both speculative and implausible on its face, it cannot sustain the Plaintiff's unjust enrichment claim. *Twombly*, 550 U.S. at 555 (2007) ("'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" (*quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

> *ii. Government-Sponsored Investors in the Secondary Mortgage Market Require the Maintenance of Continuous Coverage*

In addition to the position taken by state officials that continuous coverage is an important aspect of LPI, both Fannie Mae and Freddie Mac insist on the provision of continuous coverage for the mortgages in which each of these government-sponsored entities invests—whether that coverage is obtained through by the borrower or by a lender through LPI. As alleged in the complaint, Fannie Mae has recently considered amendments to its Servicing Guidelines designed to address certain concerns with respect to LPI: continuous coverage is not alleged to be among those concerns. *See* Compl. ¶ 54. Indeed, recently published amendments to Fannie's servicing guidelines continue to require that hazard insurance be maintained by lenders "at all times." Fannie Mae,

14

*Servicing Guide Announcement SVC-2012-04* (Mar. 14, 2012) (Attached as Ex. E).[6] Freddie Mac, too, expressly endorses the requirement of continuous coverage. *See* Freddie Mac, *Single-Family Seller/Servicer Guide*, § 58.2(a) (Oct. 6, 2006) (Attached as Ex. F) ("If any of the preceding perils (e.g., windstorm) is excluded from the primary insurance policy, coverage of the excluded peril *must be picked up through a secondary insurance policy* . . . . The Seller/Servicer must ensure that *adequate insurance coverage is in force* even when the improvements are vacant or unoccupied." (emphasis added)).[7]

In light of the positions taken by state officials, consumer advocates, and the two largest American mortgage-finance corporations that continuous hazard insurance coverage is important and necessary, it is implausible that to allege that IUI's coverage of a home under an Evidence of Insurance bearing an effective date chosen to avoid a lapse in coverage constitutes an inequitable circumstance necessary to state a claim for unjust enrichment. *See Schilke*, 820 F. Supp. 2d at 834 ("Ensuring that a property is adequately insured is a core part of a bank's lending activity."). The claim against IUI must therefore be dismissed.[8]

---

[6] *See also* Federal National Mortgage Association, *Single Family 2012 Servicing Guide*, at 206-1 (Mar. 14, 2012), *available at* www.efanniemae.com/sf/guides/ssg/svcg/svc031412.pdf ("[I]n all cases the servicer is responsible for ensuring that – whether through borrower-placed or lender-placed hazard insurance – *there is no lapse in coverage*." (emphasis added)).

[7] *See also* Federal Home Loan Mortgage Corporation, *Form 3010: Florida Mortgage*, at 6 (Uniform First Lien Security Instrument), *available at* www.freddiemac.com/uniform/unifsecurity.html#highlights ("[Hazard insurance] *shall be maintained*…for the periods that Lender requires." (emphasis added)).

[8] Those district courts that have expressly considered the issue of continuous coverage have found that it is an equitable and important aspect of LPI policies. *See Schilke*, 820 F. Supp.

15

### C. Where the Plaintiff Has an Adequate Contractual Remedy, a Claim for Unjust Enrichment Must Be Dismissed

"[A] Plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank,* 989 So.2d 696, 697 (Fla. Dist. Ct. App. 2008) (per curiam). Because the Plaintiff alleges that Bank of America's procurement of a lender-placed wind insurance is subject to the terms of his mortgage contract and deed of trust, Compl. ¶ 71, and that the "language [of those documents] does not allow Bank of America to purchase backdated wind insurance," *id.* ¶ 73, there can be no question but that the subject matter of the Plaintiff's unjust enrichment claim is also the subject matter of the documents underlying his contractual claims.[9]

---

2d at 834; *see also LaCroix v. U.S. Bank, N.A.,* Civ. No. 11-3326, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012); *Webb v. Chase Manhattan Mortg. Corp.,* No. 2:05-cv-0548, 2008 WL 2230696, at *19 (S.D. Ohio May 28, 2008).

Although the Plaintiff cites to three opinions of other U.S. District Courts addressing allegations relating to LPI, Compl. ¶ 59, the listing of these cases is, at best, an assertion of legal conclusions insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, none of these cases attempts to articulate what the prevention of a lapse in coverage entails for borrowers, lenders, or the housing market generally. *E.g.*, *Gustafson v. Bank of Am., N.A.*, No.8:11-cv-00915, at 7 (C.D. Cal. Apr. 12, 2012) (noting that "backdating" had been alleged as one of many bases for a breach of contract claim and concluding, without discussion, these bases taken together were sufficient to state such a claim). Similarly, the recent decisions from the First Circuit reversing the dismissal of a borrower's contract-based claims are inapplicable to an insurer such as IUI and, in any event, do not address any claim premised solely on the provision of continuous coverage apart from any other issue. *See Lass v. Bank of Am., N.A.*, No. 11-2037, 2012 WL 4240504, at *7 (1st Cir. Sept. 21, 2012); *Kolbe v. BAC Home Loans Serv'g, LP*, No. 11-2030, 2012 WL 4240298 (1st Cir. Sept. 21, 2012).

9    Intermediate Florida courts have held that claims for unjust enrichment may proceed where a contract is only alleged to have been executed between the Plaintiff and another party not named in a simultaneous unjust enrichment claim, *see McNorton v. Pan Am. Bank of Orlando*, 387 So.2d 393, 399 (Fla. Dist. Ct. App. 1980) (applying such a "same person"

Where Florida courts have permitted both contractual claims and unjust enrichment claims to proceed simultaneously, the overriding concern has been for the protection of a Plaintiff's ability to plead in the alternative where there is a possibility that *1)* recovery against a contractual counterparty may not result in full recovery or may be based on different theories of liability, *see Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998) (denying a motion to dismiss unjust enrichment claims against two defendants who were employees of a third defendant with whom Plaintiff had an express contract), or *2)* the contract itself may ultimately prove invalid. *See Williams v. Wells Fargo Bank, N.A.*, No. 11-21233 Civ., 2011 WL 4901346, at (S.D. Fla. Oct. 14, 2011) ("[U]njust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid.").

In this case, the contractual and quasi-contractual claims overlap entirely as they relate to continuous coverage, *see* Compl. ¶¶ 5, 65, 73. Moreover, the Complaint allows for no possibility that the contractual claims might be dismissed while the unjust enrichment claim proceeds, and no party to this case has alleged that the contracts cited in the Complaint are invalid. *See* Mem. in Supp. of Bank of Am. Mot. to Dismiss at 1-2; *see also In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002) ("[A]n unjust enrichment claim can only be pled in the alternative if one or more of the

---

rule). However, the issue remains unsettled by Florida's Supreme Court, which permits this Court to assess IUI's argument regarding contractual remedies. *See Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999) ("To forecast a decision of the state's highest court we can consider, *inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions.").

17

parties contest the existence of an express contract governing the subject of the dispute, and such is not the case here."). This court should, therefore, follow the "hornbook" law stating that no action for unjust enrichment may lie where an express contract addresses the same subject matter. *See Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) ("It is a well-rooted principle of contract law that an express contract and an implied contract, relating to the same subject matter, can not co-exist." (internal quotation marks omitted)); Joseph M. Perillo, 1-1 CORBIN ON CONTRACTS § 1.20 ("Where, however, there is an enforceable express or implied in fact contract that regulates the relations of the party or that part of their relations about which issues have arisen, there is no room for quasi contract.").[10]

## CONCLUSION

For these reasons, IUI respectfully requests that the Court dismiss the Plaintiff's Complaint with prejudice.

---

[10] In asserting the above grounds for dismissal, IUI does not intend to waive its right to assert any additional defenses in future pleadings or motions, as permitted under the Federal Rules of Civil Procedure.

18

Respectfully submitted this the 4TH day of October, 2012.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
David L. Brown
N.C. State Bar No. 18942
David G. Harris II
N.C. State Bar No. 35327
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC  27410
Telephone:  336.282.8848
Facsimile:  336.282.8409
Email:  byntema@pckb-law.com
dbrown@pckb-law.com
dharris@pckb-law.com

*Attorneys for Defendant Illinois Union Ins. Co.*

Eric R. Dinallo
Robert D. Goodman
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

*Of Counsel for Defendant Illinois Union Ins. Co.*
(Motions for Admission Pro Hac Vice Forthcoming)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of this Court on October 4, 2012, using the CM/ECF system which will send notification of such filing to all counsel of record for all interested parties to this action.

This the 4TH day of October, 2012.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
Email: byntema@pckb-law.com

*Attorneys for Defendant Illinois Union Ins. Co.*