# Exhibit C


NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS (N.A.I.C.)
MODEL LAWS, REGULATIONS AND GUIDELINES
N.A.I.C. MODEL LAWS, REGULATIONS AND GUIDELINES
VOLUME III
CREDIT INSURANCE
CREDITOR-PLACED INSURANCE MODEL ACT
NAIC 375-1

Copyright 2012 National Association of Insurance Commissioners. Current through April 2012 Update.

Table of Contents

Section 1. Purpose

Section 2. Scope

Section 3. Definitions

Section 4. Term of Insurance Policy

Section 5. Calculation and Payment of Premiums

Section 6. Prohibited Coverages

Section 7. Evidence of Coverage

Section 8. Filing, Approval and Withdrawal of Forms and Rates

Section 9. Refund of Unearned Premiums

Section 10. Claims

Section 11. Rights and Obligations of the Parties

Section 12. Remittance of Premiums and Payment of Compensation

Section 13. Disclosures to the Debtor

Section 14. Enforcement

Section 15. Regulations

Section 16. Judicial Review

Section 17. Penalties

Section 18. Severability Provision

Section 19. Effective Date

**Section 1. Purpose**

  The purposes of this Act are to:
    A. Promote the public welfare by regulating creditor-placed insurance;
    B. Create a legal framework within which creditor-placed insurance may be written in this state;
    C. Help maintain the separation between creditors and insurers; and
    D. Minimize the possibilities of unfair competitive practices in the sale of creditor-placed insurance.

**Section 2. Scope**

    A. This Act applies to an insurer or producer transacting creditor-placed insurance as defined in this Act.
    B. All creditor-placed insurance written in connection with credit transactions for personal, family or household purposes is subject to the provisions of this Act, except:
      (1) Transactions involving extensions of credit primarily for business or commercial purposes;
      (2) Insurance on collateralized real property;

  **Drafting Note**: States have various definitions of "real property." Accordingly, the states may wish to consider their state definition of "real property," especially with the varying nature of manufactured housing used as a residence.
      (3) Insurance offered by the creditor and elected by the debtor at the debtor's option;
      (4) Insurance for which no specific charge is made to the debtor or the debtor's account; or
      (5) Blanket insurance, whether paid for by the debtor or the creditor.

  **Drafting Note**: Nothing in this Act shall be construed to create or imply a private cause of action for violation of this Act, and the commissioner shall have authority to bring an administrative or judicial proceedings to enforce this Act. Furthermore, nothing in this Act shall be construed to extinguish any debtor rights available under common law or other state statutes.

**Section 3. Definitions**

  As used in this Act:
    A. "Actual cash value (ACV)" means the cost of replacing damaged or destroyed property with comparable new property, minus depreciation and obsolescence.

  **Drafting Note**: The definition of "actual cash value (ACV)" shall not be interpreted in any manner inconsistent with the meaning of actual cash value as used in the states' unfair claims settlement practices laws or regulations.
    B. "Blanket insurance" means insurance that provides coverage on collateral as defined in a policy issued to a creditor, without specifically listing the collateral covered.
    C. "Collateral" means personal property that is pledged as security for the satisfaction of a debt.
    D. "Credit agreement" means the written document that sets forth the terms of the credit transaction and includes the security agreement.
    E. "Credit transaction" means a transaction by the terms of which the repayment of money loaned or credit commitment made, or payment of goods, services or properties sold or leased, is to be made at a future date or

dates.

F. "Creditor" means the lender of money or vendor or lessor of goods, services, property, rights or privileges for which payment is arranged through a credit transaction, or any successor to the right, title or interest of a lender, vendor or lessor.

G. "Creditor-placed insurance" means insurance that is purchased unilaterally by the creditor, who is the named insured, subsequent to the date of the credit transaction, providing coverage against loss, expense or damage to collateralized personal property as a result of fire, theft, collision or other risks of loss that would either impair a creditor's interest or adversely affect the value of collateral covered by limited dual interest insurance. It is purchased according to the terms of the credit agreement as a result of the debtor's failure to provide required physical damage insurance, with the cost of the coverage being charged to the debtor. It shall be either single interest insurance or limited dual interest insurance.

H. "Debtor" means the borrower of money or a purchaser or lessee of goods, services, property, rights or privileges, for which payment is arranged through a credit transaction.

I. "Insurance tracking" means monitoring evidence of insurance on collateralized credit transactions to determine whether insurance required by the credit agreement has lapsed, and communicating with debtors concerning the status of insurance coverage.

J. "Insurer" means an insurance company, association or exchange authorized to issue insurance policies in the state of [insert applicable state].

K. "Lapse" means that the insurance coverage required by the credit agreement is not in force.

L. "Limited dual interest insurance" means insurance purchased by the creditor to insure its interest in the collateral securing the debtor's credit transaction. This insurance waives the three (3) conditions for loss payment under single interest insurance and extends coverage on the collateral while in the possession of the debtor.

M. "Loss ratio" means the ratio of incurred losses to earned premium.

N. "Net debt" means the amount necessary to liquidate the remaining debt in a single lump-sum payment, excluding all unearned interest and other unearned charges.

O. "Producer" means a person who receives a commission for insurance placed or written or who, on behalf of an insurer or creditor, solicits, negotiates, effects, procures, delivers, renews, continues or binds policies of insurance to which this Act applies, except a regular salaried officer, employee or other representative of an insurer who devotes substantially all working time to activities other than those specified here and who receives no compensation that is directly dependent on the amount of insurance business written, and except a regular salaried officer or employee of a creditor who receives no compensation that is directly dependent on the amount of insurance effected or procured.

P. "Single interest insurance" means insurance purchased by the creditor to insure its interest in the collateral securing a debtor's credit transaction. Three (3) conditions must be met for payment of loss under the policy:

   (1) The debtor has defaulted in payment;

   (2) The creditor has legally repossessed the collateral, unless collateral has been stolen from the debtor; and

   (3) The creditor has suffered an impairment of interest.

**Drafting Note**: Some states have expressed the opinion that the above conditions, particularly Paragraph (2), are not in the best interests of consumers. Those states may wish to eliminate this definition and prohibit the offering of single interest insurance.

**Section 4. Term of Insurance Policy**

    A. Creditor-placed insurance shall become effective on the latest of the following dates:
      (1) The date of the credit transaction;
      (2) The date prior coverage, including prior creditor-placed insurance coverage, lapsed;
      (3) One year before the date on which the related insurance charge is made to the debtor's account; or
      (4) A later date provided for in the agreement between the creditor and insurer.
    B. Creditor-placed insurance shall terminate on the earliest of the following dates:
      (1) The date other acceptable insurance becomes effective, subject to the debtor providing acceptable evidence of the other insurance to the creditor;
      (2) The date the collateralized personal property is repossessed, unless the property is returned to the debtor within ten (10) days of the repossession;
      (3) The date the collateralized personal property is determined by the insurer to be a total loss;
      (4) The date the debt is completely extinguished; or
      (5) An earlier date specified in the individual policy or certificate of insurance.
    C. An insurance charge shall not be made to a debtor for a term longer than the scheduled term of the creditor-placed insurance when it becomes effective, nor may an insurance charge be made to the debtor for creditor-placed insurance before the effective date of the insurance.
    D. If a charge is made to a debtor for creditor-placed insurance coverage that exceeds a term of one year, the debtor shall be notified at least annually that the insurance will be canceled and a refund or credit of unearned charges made if evidence of acceptable insurance secured by the debtor is provided.

**Section 5. Calculation and Payment of Premiums**

    A. Premiums for creditor-placed insurance coverage may be calculated based on:
      (1) An amount not exceeding the net debt even though the coverage may limit the insurer's liability to the net debt, actual cash value or cost of repair; or
      (2) Other premium calculation methods that more closely reflect the exposure of each item insured and approximate the premium calculation method of the coverage required by the credit agreement.
    B. An insurer shall not write creditor-placed insurance for which the premium rate differs from that determined by the schedules of the insurer on file with the commissioner. The premium or amount charged to the debtor for creditor-placed insurance shall not exceed the premiums charged by the insurer, computed at the time the charge to the debtor is determined.
    C. A method of billing insurance charges to the debtor on closed-end credit transactions that creates a balloon payment at the end of the credit transaction or extends the credit transaction's maturity date is prohibited, unless specifically disclosed at the time of the origination of the credit agreement and specifically agreed to by the debtor at the time the charge is added to the outstanding credit balance.

    **Drafting Note**: States should consider the extent to which state banking or consumer finance laws, including truth-in-lending laws, need to be referenced or amended to meet the intent and requirements of Subsection C.

**Section 6. Prohibited Coverages**

    A. Creditor-placed insurance coverage shall not include:
      (1) Coverage for the cost of repossession;
      (2) Skip, confiscation and conversion coverage;

    (3) Coverage for payment of mechanics' or other liens that do not arise from a covered loss occurrence;

    (4) Coverage that requires a debtor's insurance deductible to be less than $250; or

    (5) Coverage that is broader than the insurance coverages that meet the minimum insurance requirements of the credit agreement.

  B. Nothing in this section shall be deemed to prohibit the issuance of a separate policy or endorsement providing the coverages listed in Subsection A above. However, no charge shall be passed along to the debtor for the coverages.

**Section 7. Evidence of Coverage**

Creditor-placed insurance shall be set forth in an individual policy or certificate of insurance. A copy of the individual policy, certificate of insurance coverage, or other evidence of insurance coverage shall be mailed, first class mail, or delivered in person to the last known address of the debtor.

**Section 8. Filing, Approval and Withdrawal of Forms and Rates**

  A. All policy forms and certificates of insurance to be delivered or issued for delivery in this state and the schedules of premium rates pertaining thereto shall be filed with the commissioner.

  B. The commissioner shall within thirty (30) days after the filing of the policy forms and certificates of insurance disapprove a form that does not conform to this Act or to other applicable provisions of the insurance statutes and regulations and shall, within thirty (30) days of filing, disapprove a schedule of premium rates pertaining to the form if it does not conform to the standard set forth in Subsection E.

  C. If the commissioner disapproves a form or schedule of premium rates in accordance with Subsection B, the commissioner shall promptly notify the insurer in writing of the disapproval, and it shall be unlawful for the insurer to issue or use the form or schedule. In the notice, the commissioner shall specify the reasons for disapproval and state that a hearing will be granted upon request pursuant to [insert code section for the state's administrative procedures statute or other law or regulation for hearing requests on rate and form filings].

  D. Unless the commissioner disapproves the form or schedule of premium rates in accordance with Subsections B and C or gives written approval of the form or schedule within thirty (30) days after the filing, the form or schedule shall be deemed approved on the thirty-first day after the filing.

**Drafting Note**: States should choose one of the following two alternatives for Subsection E to prescribe the method by which premium rates are determined to be reasonable in relation to the benefits provided under the policy.

Alternative 1:

  E. The schedules of premium rates shall not be excessive, inadequate or unfairly discriminatory. In determining whether a schedule of premium rates are excessive, inadequate or unfairly discriminatory, the commissioner shall take into account past and prospective loss experience, general and administrative expenses, loss settlement and adjustment expenses, reasonable creditor compensation and other acquisition costs including insurance tracking costs, reserves, taxes, licenses, fees and assessments, reasonable insurer profit and other relevant datDPA2 A. Rates are not unfairly discriminatory because different premiums result for different policyholders, including group policyholders, with similar loss exposures but different expense factors or similar expense factors but different loss exposures, nor are rates unfairly discriminatory if they are averaged broadly among all persons insured in this state or all persons insured under a group insurance policy.

Case 3:12-cv-00487-MOC-DCK Document 36-3 Filed 10/04/12 Page 6 of 13
© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Alternative 2:

E. A schedule of premium rates shall provide for premiums that are not unreasonable in relation to the benefits provided by the form to which the schedule applies. A premium rate or schedule of premium rates shall be presumed to be reasonable for purposes of this section if the rate or schedule or rates produces or may reasonably be expected to produce a loss ratio of sixty percent (60%) or greater. Nothing in this subsection shall prohibit the commissioner from approving other loss ratios which may be found reasonable.

F. The commissioner may withdraw approval of an approved form or schedule of premium rates when the commissioner would be required to disapprove the form or schedule of premium rates if it were filed at the time of the withdrawal. The withdrawal shall be in writing and shall specify the reasons for withdrawal and the effective date of the withdrawal. An insurer adversely affected by a withdrawal may, within thirty (30) days after receiving the written notification of the withdrawal, request a hearing pursuant to [insert code section for the state's administrative procedures statute or other law or regulation for hearing requests on rate and form filings] to determine whether the withdrawal should be annulled, modified or confirmed. Unless the commissioner grants an extension in writing in the withdrawal or subsequently grants an extension, the withdrawal shall, in the absence of a request for hearing, become effective, prospectively and not retroactively, on the ninety-first day following delivery of the notice of withdrawal and, if the request for hearing is filed, on the ninety-first day following delivery of written notice of the commissioner's determination.

G. Forms and rates filed and approved in accordance with this Section shall be deemed to be in compliance in all respects with the laws of this state.

**Section 9. Refund of Unearned Premiums**

A. Within sixty (60) calendar days after the termination of creditor-placed insurance coverage, and in accordance with the formulas approved by the commissioner, an insurer shall refund any unearned premium or other identifiable charges.

B. Within sixty (60) calendar days after the termination date of creditor-placed insurance coverage, the insurer shall provide to the debtor a statement of refund disclosing the effective date, the termination date, the amount of premium being refunded and the amount of premium charged for the coverage provided. No statement shall be required in the event that the policy terminates pursuant to Section 4B(4).

C. The entire amount of premiums, minimum premiums, fees or charges of any kind shall be refunded if no coverage was provided.

**Section 10. Claims**

A. In the event of a loss under the creditor-placed insurance policy, the insurer shall pay, at a minimum, the least of the following, the value of which shall be determined as of the date of loss:
   (1) The cost to repair the collateral less any applicable deductible;
   (2) The actual cash value of the collateral, less any applicable deductible;
   (3) The net debt, less any applicable deductible. The method of calculation of net debt payable pursuant to this paragraph shall be identical to the method of calculation of net debt for payment of premiums pursuant to Section 5A of this Act; or
   (4) If single interest insurance is provided, the amount by which the creditor's interest is impaired.

B. The net debt or actual cash value amounts in Subsection A may be reduced by the value of salvage if the insurer does not take possession of the insured property.

C. In the event of a loss, no subrogation shall run against the debtor from the insurer.

D. Whenever a claim is made on a creditor-placed insurance policy, the insurer shall furnish to the claimant a written statement of the loss explaining the settlement amount and the method of settlement.

E. A creditor or insurer may not abandon salvage to a towing or storage facility in lieu of payment of storage fees without the consent of the facility and the claimant. The insurer shall be responsible for the payment of towing and storage charges for a covered loss occurrence from the time the claim is reported to the insurer in accordance with the terms of the policy to the time the claim is paid. The insurer shall give written notice to the claimant when the claim is paid that the claimant may incur storage charges after the date the claim is paid.

**Section 11. Rights and Obligations of the Parties**

A. In order for the creditor to place insurance on the collateral pledged by the debtor and pass the cost of the insurance on to the debtor:
   (1) The creditor must have a security interest in the personal property;
   (2) The credit agreement must require the debtor to maintain insurance on the collateral to protect the creditor's interest;
   (3) The credit agreement must authorize the creditor to place the insurance if the debtor fails to provide evidence of the insurance; and
   (4) These requirements must be clearly disclosed to the debtor at the inception of the credit transaction.

B. The debtor shall always have the right to provide required insurance through existing policies of insurance owned or controlled by the debtor or of procuring and furnishing the required coverage through an insurer authorized to transact insurance within this state. However, a creditor may establish maximum acceptable deductibles, insurer solidity standards and other reasonable conditions with respect to the required insurance.

**Section 12. Remittance of Premiums and Payment of Compensation**

A. The entire amount of the premium due from a creditor shall be remitted to the insurer or its producer in accordance with the insurer's requirements. No commissions may be paid to, or retained by, a person or entity except a licensed and appointed insurance producer.

B. The retention by the creditor of unearned premiums upon cancellation of the insurance without crediting to the debtor's account the amount of unearned insurance charges is prohibited.

C. Rebates to the creditor of a portion of the premium charged to the debtor are prohibited as are other inducements provided to the creditor by an insurer or producer. The listing of the following activities as prohibited rebates or inducements is not intended to be restrictive, and the commissioner may identify an activity as prohibited by rule, regulation or order:
   (1) Allowing insurers or producers to purchase certificates of deposit from the creditor or to maintain accounts with the creditor at less than the market interest rates and charges that the creditor applies to other customers for deposit accounts of similar amounts and duration;
   (2) Paying a commission to a person, including a creditor, who is not appropriately licensed as a producer in this state;
   (3) Purchasing or offering to purchase certificates of deposit from, or maintaining or offering to maintain deposit accounts or investment accounts with a creditor as part of a creditor-placed insurance solicitation.

D. Prohibited rebates or inducements do not include:
   (1) The providing of insurance tracking and other services incidental to the creditor-placed insurance program;

    (2) The paying of commissions and other compensation to a duly licensed and appointed insurance producer, whether or not affiliated with the creditor;

    (3) The paying to the creditor policyholder of group experience rated refunds or policy dividends; and

    (4) The paying to the creditor of amounts intended to reimburse the creditor for its expenses incurred incidental to the creditor-placed insurance program (such as costs of data processing, mail processing, telephone service, insurance tracking, billing, collections and related activities); provided that these payments are approved in a manner consistent with the procedures in Section 8 and are calculated in a manner that does not exceed an amount reasonably estimated to equal the expenses incurred by the creditor.

  E. An insurer that pays commissions to producers for creditor-placed insurance that are greater than twenty percent (20%) of the net written premium shall be required to demonstrate the commissions are not unreasonably high in relation to the value of the services rendered.

  F. Nothing contained in this section shall prohibit or restrict an insurer or producer from maintaining a demand, premium deposit or other account or accounts with a creditor for which the insurer or producer provides insurance if the accounts pay the market interest rate and charges that the creditor applies to other customers for deposit accounts of similar amounts and duration.

**Section 13. Disclosures to the Debtor**

  A. A creditor shall not impose charges, including premium costs and related interest and finance charges, on a debtor for creditor-placed insurance coverage unless adequate disclosure of the requirement to maintain insurance has been made to the debtor. Adequate disclosure is accomplished if the following occurs:

    (1) The credit agreement sets forth the requirement that the debtor must maintain insurance on the collateral as provided for in Section 11;

    (2) The creditor makes reasonable efforts to notify the debtor of the requirement to maintain insurance and allows a reasonable time for compliance with this requirement;

    (3) A final notice as required by this Act is sent to the debtor; and

    (4) If creditor-placed insurance coverage is issued, a copy of the policy or certificate is sent to the debtor as provided for in Section 7.

  B. After adequate disclosure of the request to maintain insurance has been made to the debtor as required by this section, a creditor may proceed to impose charges for creditor-placed insurance if the debtor fails to provide evidence of insurance. A creditor may impose charges no earlier than ten (10) calendar days after sending the final notice.

  C. Reasonable efforts to notify the debtor are accomplished if:

    (1) The creditor mails a notice by first class mail to the debtor's last known address as contained in the creditor's records, stating that the creditor intends to charge the debtor for creditor-placed insurance coverage on the collateral if the debtor fails to provide evidence of the property insurance to the creditor;

    (2) The creditor allows the debtor at least twenty (20) calendar days to respond to the notice and provide evidence of acceptable insurance coverage before sending a final notice; and

    (3) The creditor sends a final notice in compliance with this section by first class mail to the debtor's last known address as contained in the creditor's records at least ten (10) calendar days before the cost of insurance is charged to the debtor by the creditor. Proof of the mailing of the final notice shall be retained for at least three (3) years following the expiration or termination of the coverage or as otherwise required by law.

  D. The initial notice shall be in a form determined by the creditor to remind the debtor of the requirement to maintain insurance on the collateral. The final notice shall be as complete as the following notice, printed in not less than twelve (12) point type, and modified where necessary to fit the nature of the credit transaction:

**FINAL NOTICE**

Your credit agreement with us requires you to have property insurance on the collateral until you pay off your loan. You have not given us proof you have insurance on the property. You can ask your insurance company or agent to give us proof of insurance or you can send us proof you have property insurance within ten calendar days after the date this letter was postmarked. If you do not, we will buy the insurance and charge the cost to you.

You must pay for the property insurance we buy. It may cost more than insurance you can buy on your own. The cost of the insurance we buy may be added to your loan balance and we may charge you interest on it. If we do, you will pay interest at the same rate you pay on your loan.

The insurance we buy will pay claims to us (the creditor) for physical damage to your property. It will not pay any claims made against you [and it may not pay you for any claims you make (delete if limited dual interest coverage)]. The insurance we buy will not give you any liability insurance coverage and will not meet the requirements of a state's financial responsibility law.

We may receive compensation for placing this insurance, which is included in the cost of coverage charged to you.

The property coverage we buy will start on the date shown in the policy or certificate, which may go back to the date of the loan or the date your prior coverage stopped. We will cancel the insurance we bought for you and give you a refund or credit of unearned charges if you give us proof you have bought property insurance somewhere else or if you have paid off the loan.

**Drafting Note**: States that have a residual market mechanism established to address high risk individuals may want to amend the notices under this section to include information on how to access those programs, including any available toll-free telephone number.

E. All creditor-placed insurance shall be set forth in an individual policy or certificate of insurance. Not earlier than the sending of the final notice nor fifteen (15) days after a charge is made to the debtor for creditor-placed insurance coverage, the creditor shall cause a copy of the individual policy, certificate or other evidence of insurance coverage evidencing the creditor-placed insurance coverage to be sent, first-class mail, to the debtor's last known address.

F. A creditor's compliance with or failure to comply with this Act shall not be construed to require the creditor to purchase insurance coverage on the collateral, and the creditor shall not be liable to the debtor or a third party as a result of its failure to purchase the insurance.

**Section 14. Enforcement**

A. The commissioner may conduct investigations or examinations of insurers and producers to ensure compliance with and enforcement of the provisions of this Act.

B. The commissioner may take any of the following actions when necessary or appropriate to enforce the provisions of this Act and any regulations promulgated under this Act:

(1) Upon finding that an insurer or producer has violated a provision of this Act or a regulation promulgated under this Act, the commissioner may issue an order directing that the insurer or producer cease and desist from committing the violations, impose a civil penalty for the violations, provide an equitable remedy for past violations, or any combination of these;

(2) Upon the issuance of an order pursuant to Paragraph (1) of this subsection, the insurer or producer shall have the right to request a hearing. At the hearing, the burden shall be on the insurer or producer to show cause why an order issued pursuant to this subsection should be annulled, modified or confirmed. The

provisions of [insert citation of statute concerning the conduct of hearing before the commissioner] shall apply to all hearings;

   (3) Pending the hearing and the decision by the commissioner, the commissioner shall suspend the effective date of the order;

   (4) Not more than sixty (60) days following completion of the hearing, the commissioner shall enter an order of final determination which shall specify all relevant findings of fact, conclusions of law and orders;

   (5) With the agreement of each affected insurer or producer, and in lieu of a hearing, the commissioner may enter into a consent agreement disposing of the matters that would be the subject of the hearing and order; and

   (6) The commissioner may bring an action in [insert court] Court for an injunction or other appropriate relief to enjoin threatened or existing violations of this Act, the commissioner's orders or regulations. An action filed under this paragraph may also seek restitution on behalf of persons aggrieved by a violation of this Act or orders or regulations of the commissioner.

**Drafting Note**: States may delete this section if the substance of it already exists in state law.

**Section 15. Regulations**

The commissioner may, after notice and hearing, promulgate reasonable regulations and orders to carry out and effectuate the provisions of this Act.

**Section 16. Judicial Review**

   A. A person subject to an order or final determination of the commissioner under Section 8 or Section 14 may obtain a review of the order or final determination by filing in the [insert title] Court of [insert county] County, within [insert number] days from the date of the service of the order, a written petition praying that the order of the commissioner be set aside. A copy of the petition shall be served upon the commissioner, and the commissioner shall certify and file in the court a transcript of the entire record in the proceeding, including all the evidence taken and the report and order or final determination of the commissioner. Upon filing of the petition and transcript, the court shall have jurisdiction of the proceeding and of the questions determined, shall determine whether the filing of the petition shall operate as a stay of the order or final determination of the commissioner, and shall have power to make and enter upon the pleadings, evidence and proceedings set forth in the transcript a decree modifying, affirming or reversing the order or final determination of the commissioner, in whole or in part. The findings of the commissioner as to the facts, if supported by [insert type] evidence, shall be conclusive.

**Drafting Note**: Insert appropriate language to accommodate to local procedure the effect given the commissioner's determination.

   B. To the extent that the order or final determination of the commissioner is affirmed, the court shall issue its own order commanding obedience to the terms of the order or final determination of the commissioner. If either party applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that the additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the commissioner, the court may order the additional evidence to be taken before the commissioner and to be adduced upon the hearing in the manner and upon the terms and conditions the court may deem proper. The commissioner may modify the findings of fact, or make new findings by reason of the additional evidence so taken, and shall file such modified or new findings that are supported

by [insert type] evidence with a recommendation if any, for the modification or setting aside of the original order or final determination, with the return of the additional evidence.

**Drafting Note**: Insert appropriate language to accommodate to local procedure the effect given the commissioner's determination. In a state where final judgment, order or final determination or decree would not be subject to review by an appellate court, provision therefore should be inserted here.

    C. An order issued by the commissioner under Section 14 shall become final:

      (1) Upon the expiration of the time allowed for filing a petition for review if no petition has been duly filed within that time; except that the commissioner may thereafter modify or set aside the order to the extent provided in Section 14; or

      (2) Upon the final decision of the court if the court directs that the order of the commissioner be affirmed or the petition for review dismissed.

    D. No order of the commissioner under this Act or order of a court to enforce the same shall relieve or absolve any person affected by the order from liability under any other laws of this state.

**Drafting Note**: States may delete this section if the substance of it already exists in state law.

**Section 17. Penalties**

An insurer that violates an order of the commissioner while the order is in effect, may after notice and hearing and upon order of the commissioner, be subject at the discretion of the commissioner to either or both of the following:

    A. Payment of a monetary penalty of not more than $1,000 for each violation, but not to exceed an aggregate penalty of $100,000, unless the violation was committed flagrantly in a conscious disregard of this Act, in which case the penalty shall not be more than $25,000 for each violation not to exceed an aggregate penalty of $250,000; or

    B. Suspension or revocation of the insurer's license.

**Drafting Note**: States may delete or modify this section if the substance of it already exists in state law.

**Section 18. Severability Provision**

If any provision of this Act, or the application of the provision to any person or circumstance, shall be held invalid, the remainder of the Act, and the application of the provision to any person or circumstance other than those as to which it is held invalid, shall not be affected.

**Section 19. Effective Date**

This Act shall take effect [insert effective date].

CREDIT(S)

*Chronological Summary of Action (all references are to the <u>Proceedings of the NAIC</u>)*

*1996 Proc. 2nd Quarter 11, 33, 113, 113-121 (adopted).*

**A-to-Z Index Terms**

WICC094

CREDIT INSURANCE

NAIC 375-1

END OF DOCUMENT