# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

**Civil Action No. 3:12-cv-487-MOC-DCK**

| | | |
|---|---|---|
| DAVID HOLMES, HERTA S. THEBERGE, MARGUERITE K. POTTER, and the MARGUERITE K. POTTER REVOCABLE TRUST, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANTS CERTAIN UNDERWRITERS' MEMORANDUM IN SUPPORT OF MOTION TO** |
| BANK OF AMERICA, N.A., in its own capacity and as successor by merger to BAC HOME LOANS SERVICING, L.P., SEATTLE SPECIALTY INSURANCE SERVICES, INC., in its own capacity and as successor in interest to COUNTRYWIDE INSURANCE SERVICES, INC., ILLINOIS UNION INSURANCE COMPANY, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON, including all underwriters who underwrote force-placed wind insurance policies for Bank of America, as the insured during the applicable limitations period and LLOYD'S, UNDERWRITERS, AT LONDON | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR LACK OF SUBJECT-MATTER JURISDICTION** |
| Defendants. | ) ) | |
| _____ | ) | |

MAY IT PLEASE THE COURT:

The Defendants named in Plaintiffs' First Amended Complaint [D.E. 40] as "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period" (hereinafter, "Certain Underwriters"), by and through undersigned counsel, respectfully submit this Memorandum in support of their Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and their Motion to Dismiss for Lack of Subject-Matter Jurisdiction pursuant to Rule 12(b)(1).

## I.   INTRODUCTION

Certain Syndicates at Lloyd's issued a Policy to Bank of America, N.A. ("Bank of America") by which the Syndicates agreed to provide wind insurance coverage for homes under mortgage to Bank of America in certain specified situations in which those homes would otherwise be uninsured. After Bank of America notified Plaintiff Theberge that she had failed to obtain wind insurance coverage and that Bank of America would—pursuant to the terms of her mortgage contract—obtain such wind insurance if she failed to do so, and Plaintiff Theberge failed to obtain such coverage, an evidence of insurance for wind insurance on Theberge's property was issued. Theberge now asserts a claim for unjust enrichment against Certain Underwriters, alleging that she is entitled to purportedly "backdated insurance premiums" paid to Certain Underwriters by Bank of America relating to the coverage of Theberge's property.

Plaintiffs' claim against Certain Underwriters should be dismissed because Plaintiffs have failed to state a claim for unjust enrichment on four independent grounds. First, Plaintiffs have failed to specify the applicable state law to the unjust enrichment claims of this putative nationwide class. Dismissal of an unjust enrichment claim for failure to state a claim is appropriate where the applicable law is not clear from the complaint, particularly in light of the

1

many differences in the law of unjust enrichment across states. Second, assuming that Florida law applies to Theberge's claim, Plaintiffs have failed to allege the requisite elements because Plaintiffs cannot allege that Theberge directly conferred a benefit on Certain Underwriters. Third, Plaintiffs offer no facts that support their bare assertion that Certain Underwriters' retention of any such benefit conferred would be unjust—and the terms of the Policy show that such facts could not be alleged. Fourth, Plaintiffs' unjust enrichment claim may not proceed because of their contractual claims based on the same subject matter.

As to standing, the named plaintiffs in a class action must have standing to sue on behalf of the class. Named plaintiffs do not have standing to sue defendants who have not injured them, even if those defendants have purportedly injured other class members. As Plaintiff Theberge is the only named plaintiff asserting a claim against Certain Underwriters, Plaintiffs' claims against Certain Underwriters must be dismissed for lack of standing to the extent Plaintiffs assert claims against Syndicates at Lloyd's other than those subscribing to the Policy under which coverage was provided for Theberge's property. Plaintiffs have not alleged any relationship or connection between Theberge and any other Syndicates at Lloyd's, and thus Theberge could not have suffered any injury caused by such Syndicates.

## II.  FACTUAL & PROCEDURAL BACKGROUND

### A.  Lender-Placed Insurance and the Policy

When borrowing funds for the purchase of a home, a borrower is required to maintain certain minimum, continuous levels of hazard insurance. "Continuous coverage" (which Plaintiffs refer to as "backdating"[1]) means that the effective date of lender-placed insurance is set

---

[1] Plaintiffs used the term "backdating" to describe continuous coverage. That term should not be understood to imply that lender-placed insurance provides no prospective coverage for losses determined to have occurred within the period of time preceding the issuance of an evidence of insurance, or that the insurance company bears no risk with respect to that period. Indeed, although Plaintiffs fail to acknowledge the possibility that losses may be

such that, in the event of insufficient insurance, there is no lapse in coverage. *LaCroix v. U.S. Bank, N.A.*, No. 11-3236, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012); *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011); *Webb v. Chase Manhattan Mortg. Corp.*, No. 05-548, 2008 WL 2230696, at *19 (S.D. Ohio May 28, 2008).

With respect to certain loans serviced by Bank of America, Certain Underwriters provided coverage to their insured, Bank of America, under a policy pursuant to which evidences of insurance were issued for the homes of individual borrowers (the "Policy").[2] The Policy had an effective period of October 10, 2008 through December 31, 2009.[3] The Syndicates at Lloyd's subscribing to the Policy were Syndicates 2000, 1084, 4444, 2791, 318, 2003, 4020, 1225, 1200, 2488 and 958. (Hicks Declaration.)

## B. Plaintiffs' Allegations Against Certain Underwriters[4]

Herta Theberge is the only named Plaintiff who asserts a claim against Certain Underwriters. (First. Am. Compl., ¶¶ 140, 182–188.) As Theberge's unjust enrichment claim against Certain Underwriters is premised solely on purported "backdating" of lender-placed wind insurance, only a subset of Theberge's allegations are relevant to her claim against Certain Underwriters. (*Id.* at ¶¶ 11, 140, 185–188.)[5] In particular: Bank of America serviced Theberge's mortgage on her home in Florida. (*Id.* at ¶¶ 14, 58.) Theberge's mortgage agreement with Bank

---

attributed to events caused during a period prior to the discovery of loss, Plaintiffs nevertheless concede that lender-placed insurance carriers bear risk and payment obligations as of the moment that coverage is placed on a particular property, even with respect to losses occurring prior to the issuance of an evidence of insurance. *See* First Am. Compl., ¶ 132 (implicitly acknowledging that lender-placed insurance carriers will not know whether a property is damaged as of the moment coverage is requested by a lender).

[2] Relevant excerpts from the policy wording are attached hereto as Exhibit 1A. The full Policy will be filed separately as Exhibit 1B in the near future.

[3] Declaration of Mark Hicks, attached hereto as Exhibit 2.

[4] For purposes of this Motion only, Certain Underwriters accept Plaintiffs' allegations as true, except to the extent that they conflict with the terms of the Policy as discussed *infra* at § III.A.

[5] Theberge's other allegations, including relating to allegedly excessive flood insurance (First Am. Compl., ¶¶ 75–82), allegedly excessive or unnecessary coverage (*id.* at ¶¶ 60–63, 68–70) and agency commissions (*id.* at ¶ 64), are not relevant to her claim against Certain Underwriters.

3

of America's predecessor NationsBank required Theberge to "keep the improvements . . . on the Property insured against . . . any other hazards . . . for which NationsBank requires," and provided:

> If [Theberge] fails to obtain any insurance required by this Section . . . or if [Theberge] fails to pay the insurance premiums for any period of thirty (30) consecutive calendar days during the term of this Mortgage . . . NationsBank may obtain the insurance and pay the premiums. If NationsBank does so, [Theberge] shall pay the charge for the insurance and [Theberge] agrees to pay to NationsBank interest on such amount until it is paid . . . . Such amounts shall become additional debt of [Theberge] secured by this Mortgage. [Theberge] agrees that the amount and type of insurance purchased by NationsBank is within NationsBank's sole discretion.

(Theberge Mortg., § 5, Exh. C to First Am. Compl. [D.E. 40-3]; *see also* First Am. Compl., ¶¶ 57, 59–60.)

After Bank of America sent Theberge letters stating that she was required to maintain wind insurance and, if she did not, Bank of America would purchase it for her (First Am. Compl., ¶¶ 63, 65), Bank of America notified Theberge on January 31, 2010 that it had obtained lender-placed wind insurance for her property. (*Id.* at ¶ 66.) Bank of America enclosed with its letter an evidence of wind insurance document for the period April 9, 2009 through April 9, 2010, which listed Countrywide Insurance Services, Inc. as the insurance agency and Certain Underwriters at Lloyd's, London as the insurer (the "Evidence of Insurance"). (*Id.* at ¶¶ 66–67.)[6] The only specific relief that Plaintiffs seek from Certain Underwriters is the return of "backdated insurance premiums." (*Id.* at ¶¶ 11, 133, 185–189.)[7]

---

[6] Theberge allegedly purchased replacement wind insurance coverage through another insurer with an effective date of February 8, 2010. *Id.* at ¶ 70.

[7] Certain Underwriters are not insurance agents, and their revenues relating to lender-placed insurance consist solely of the premium paid by insureds such as Bank of America. It is unclear from the First Amended Complaint whether Plaintiffs are seeking premium paid for time periods prior to the issuance of an evidence of insurance, or for

### C. Procedural Background

Plaintiffs filed their original Complaint [D.E. 1] as a putative class action on August 6, 2012 against Bank of America and Illinois Union Insurance Company. The Complaint was amended on October 30, 2012, when Certain Underwriters were added as defendants along with Seattle Specialty Insurance Services, Inc.[8] As discussed, the Amended Complaint asserts only one claim against Certain Underwriters, by Plaintiff Theberge for unjust enrichment, and seeks to certify a "Lloyd's Subclass" consisting of: "All persons in the Nationwide Force-Placed Wind Insurance Class whose force-placed insurance policies list Certain Underwriters at Lloyd's, London as the insurer." (*Id.* at ¶ 140.)

## III. LAW & ARGUMENT

### A. Plaintiffs Have Failed to State a Claim for Unjust Enrichment[9]

#### 1. Standard for Failure to State a Claim upon which Relief Can Be Granted

The purpose of Federal Rule of Civil Procedure 12(b)(6) is to allow for elimination of factually or legally insufficient claims. To survive a motion to dismiss for failure to state a claim, the complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This facial plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," demanding instead that a plaintiff plead facts that allow a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In conducting this review, a court

---

time periods prior to Bank of America's having notified the homeowner of the need to obtain wind insurance. (*Id.* at ¶¶ 66–67.)

[8] As discussed *infra* at note 30, Plaintiffs also purport to sue the non-existent entity "Lloyd's, Underwriters at, London."

[9] Plaintiffs label their claim as one for "Unjust Enrichment/Restitution/Disgorgement." First Am. Compl., p. 41. Restitution and disgorgement are remedies for the unjust enrichment claim, and are not separate causes of action. *Montage Grp. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 196 (Fla. Dist. Ct. App. 2004); *Lemy v. Direct Gen. Fin. Co.*, __ F. Supp. 2d __, No. 11-2722, 2012 WL 2339702, at *2 (M.D. Fla. June 19, 2012).

5

"take[s] the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (*quoting E. Shore Mkts., Inc. v. J. D. Assocs. Ltd. P'Ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

Certain Underwriters' reference to and provision of the Policy with this Rule 12(b)(6) Motion to Dismiss does not convert it to a Motion for Summary Judgment because the Policy is not a "matter[] outside the pleadings" for purposes of Rule 12(d). A court may consider matters incorporated by reference into the complaint on a Rule 12(b)(6) motion without converting it into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *New Beckley Mining Corp. v. Int'l Union*, 18 F.3d 1161, 1164 (4th Cir. 1994). In particular, it is proper for a district court to consider an insurance policy introduced by a defendant insurer as an exhibit to a motion to dismiss where the plaintiff has referred to the existence of the policy in the complaint and it is central to the plaintiff's case against the insurer. *Ford v. Hartford Life & Acc. Ins. Co.*, No. 08-281, 2009 WL 963594, at *1–*2 (W.D.N.C. Apr. 8, 2009) (*citing Darcangelo v. Verizon Commc'ns., Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002)); *Murray v. Loewen Grp.*, 133 F. Supp. 2d 1110, 1116 n.6 (E.D. Wis. 2001).

Here, Plaintiffs sue Certain Underwriters as those "underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured," and allege that Certain Underwriters "received premium payments for the backdated wind insurance coverage"—which coverage could only have been extended and which payments could only have been made pursuant to the Policy. (First Am. Compl., p. 2 & ¶ 133; *see also id*. at ¶ 3 ("Lenders obtain this force-placed insurance from insurance carriers with whom they maintain

6

prearranged relationships.").)  Plaintiffs' allegations also explicitly rely on the "Evidence of Wind Insurance page sent to Theberge . . . list[ing] . . . Certain Underwriters at Lloyd's, London as the insurance company" (*id.* at ¶ 67), which Evidence of Insurance could only have been issued pursuant to the Policy.  Thus, Plaintiffs' First Amended Complaint incorporates by reference the Policy, which is central to Plaintiffs' claim against Certain Underwriters.

To the extent that the Policy contradicts Plaintiffs' allegations, this Court is not required to accept Plaintiffs' allegations as true.  *Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14, 15 (4th Cir. 2008) (*quoting Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)) ("[T]he court is not required 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences' or 'allegations that contradict matters properly subject to judicial notice or by exhibit.'").  Further, "in the event of a conflict between the bare allegations of the complaint and any [attached] exhibit . . . the exhibit prevails."  *Mortg. Payment Prot., Inc. v. Genworth Mortg. Ins. Corp.*, No. 11-75, 2012 WL 569906, at *5 (E.D.N.C. Jan. 20, 2012) (*quoting Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

### 2. Plaintiffs Have Failed to State a Claim for Unjust Enrichment Because They Have Failed to Specify the Applicable State Law

Plaintiffs have failed to state a claim by failing to specify the state law under which their unjust enrichment claim is alleged.  "Unjust enrichment is not a catch-all claim existing within the narrow scope of federal common law," and the elements of unjust enrichment differ across the states. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009).[10]

---

[10]  *See also Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, No. 08-179, 2012 WL 4336218, at *7 (E.D.N.Y. Sept. 17, 2012) (criticizing plaintiffs for having "fuse[d] the three applicable state standards and provide[d] only conclusory allegations without attention to the nuances of the three jurisdictions' respective unjust enrichment regimes"); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("[V]ariances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies

7

In *Wellbutrin*, the court dismissed plaintiffs' unjust enrichment claim for failure to state a claim, explaining:

> The amended complaint, however, does not reference any basis in law on which a claim for unjust enrichment might proceed. The plaintiffs fail to link their claim to the law of any particular state. As a result of this deficiency, the plaintiffs fail to state a cause of action under their third count.

*Id.*; *see also Avenarius v. Eaton Corp.*, __ F. Supp. 2d __, No. 11-9, 2012 WL 4903373, at *7 (D. Del. Oct. 16, 2012) (dismissing unjust enrichment claims for failure to state a claim because plaintiff "fail[ed] to sufficiently identify those jurisdictions under which [it] brings [its] claims"). Nowhere in the First Amended Complaint do Plaintiffs identify the state law basis for their unjust enrichment claim, with the consequence that they have failed to state a claim.[11]

### 3. Plaintiffs Have Failed to State a Claim for Unjust Enrichment Under Florida Law

The sole basis for Theberge's claim against Certain Underwriters is that Certain Underwriters are not entitled to "backdated insurance premiums." (*Id.* at ¶¶ 11, 133, 185–189.) The essence of Theberge's complaint thus is that Certain Underwriters provided continuous wind insurance coverage for her property, consistent with her mortgage agreement with Bank of

---

from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.") (internal citations omitted).

[11] As an illustration, one facet of the complications created by Plaintiffs' lack of specification as to applicable law is the uncertainty thereby inherent in Plaintiffs' class definition. The "Nationwide Force-Placed Wind Insurance Class"—of which the Lloyd's Sub-Class is part—is defined as: "All persons who have or had a loan or line of credit secured by property and serviced by Bank of America, and who were charged for lender-placed wind insurance and/or paid such charges to Bank of America, in whole or in part, <u>during the applicable statute of limitations period</u>." First Am. Compl., ¶¶ 136, 140 (emphasis added). Under Florida law, the statute of limitations applicable to unjust enrichment claims is four years. *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. Dist. Ct. App. 2005) (*citing* Fla. Stat. § 95.11(3)(k)). As to unnamed purported class members from other states, the statute of limitations applicable to their claims would be determined by the applicable state law. Such statutes vary. For example, Texas applies a two-year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869 (Tex. 2007). By contrast, in Louisiana, actions for unjust enrichment prescribe after ten years. *State v. City of Pineville*, 403 So. 2d 49, 55 (La. 1981). Moreover, the rules as to when the unjust enrichment cause of action accrues vary by state. Thus, by failing to specify the state law under which they are asserting their unjust enrichment claim, Plaintiffs have unnecessarily complicated and confused this litigation in multiple ways.

8

America and the terms of the Policy that Certain Underwriters issued to their insured Bank of America. This allegation is insufficient to state a claim for unjust enrichment.

To state a claim for unjust enrichment under Florida law,[12] a complaint must allege:

> (1) [T]he plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof.

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (*citing Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

### a. Plaintiffs Fail to Allege that They Directly Conferred a Benefit on Certain Underwriters

Plaintiffs allege that "money [was] improperly taken from [Plaintiffs] and retained by . . . Lloyd's in the form of backdated insurance premiums." (First Am. Compl., ¶ 185.) But the Amended Complaint fails to allege that Plaintiffs directly conferred a benefit upon Certain Underwriters that Certain Underwriters accepted and retained, because the only payments allegedly made were from Theberge to Bank of America. (*Id*. at ¶¶ 72–74 ("Bank of America subsequently refunded a portion of the premium it charged Theberge for the force-placed wind insurance ($596.00). However, it did not refund the balance of the premium ($3,028.12). Theberge paid $3028.12 in full . . . . When Theberge's principal balance was paid off . . . Bank of America insisted that she pay the remaining force-placed wind insurance premium in full in a lump sum . . . .")).

---

[12] As set out above, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have failed to specify the applicable law. If the claim is not dismissed on that basis, in the alternative, the applicable law with respect to Theberge's unjust enrichment claim could only be that of the State of Florida, because only Florida has more than an incidental relationship to the subject matter of her claim. *See Stetser v. TAP Pharm. Prods., Inc.*, 598 S.E.2d 570, 580–81 (N.C. Ct. App. 2004) (discussing both the "most significant relationship test" and the "state of injury test" as applied to claims of unfair trade practices which, like unjust enrichment claims, fall between the rules applied to claims brought in contract and tort); *see also Penn. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 111 (4th Cir. 2012) (noting that a federal court sitting in diversity must apply the substantive law that a court in the forum state would apply).

9

Plaintiffs have failed to allege that they directly conferred a benefit on Underwriters—and could not allege such conferral, which would be contrary both to the terms of Theberge's mortgage agreement with Bank of America and the Policy between Bank of America and Certain Underwriters. Theberge's mortgage agreement provides that Bank of America would pay the premium for any insurance obtained on Theberge's property, and that Theberge would then pay Bank of America, with any resulting debt secured by the mortgage. (Theberge Mortg., § 5 [D.E. 40-3]; *see also* First Am. Compl., ¶¶ 59–60.) The Policy provides that, in the event the insured, Bank of America, did not pay the premium due thereunder, Certain Underwriters could deduct the amount due from any loss payments made to Bank of America. (Policy, § VIII.M ("We [*i.e.*, Certain Underwriters] will make all loss payments under this certificate directly to you [*i.e.*, the insured Bank of America]. . . . In the event the premium for the damaged property at the described location has not yet been paid at the time of the loss payment, we may, at our option, deduct the unpaid premium from the loss payment.") (selected emphases included from original)). Pursuant to these contracts, then, Certain Underwriters were to receive the premium from Bank of America before and independent of any payment by Theberge to Bank of America. Thus, Theberge could not have directly conferred a benefit on Certain Underwriters.[13]

In *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012), the Eleventh Circuit applied Florida law to affirm the Rule 12(b)(6) dismissal of an unjust enrichment claim for plaintiffs' failure to allege a direct conferral of a benefit by plaintiffs on defendants. *Id.* at 1333–34 & n.17. In that case, plaintiff homeowners alleged that their homes were built near a hazardous site and sued both the builder who had sold them the homes as well as certain entities

---

[13] On this same basis, Theberge cannot establish the requisite element that Certain Underwriters "knowingly and voluntarily accept[ed]" the benefit of any payment by Theberge. Certain Underwriters could not have knowingly accepted a benefit that did not exist at the relevant time for Certain Underwriters' involvement (*i.e.*, when Bank of America paid premium to Certain Underwriters under the Policy). *See E & M Marine Corp. v. First Union Nat'l Bank*, 783 So. 2d 311, 312–13 (Fla. Dist. Ct. App. 2001).

PD.8087158.1

that had received a percentage of the home sales prices from the builder as payment for marketing services. In dismissing plaintiffs' claim against the marketers, the Eleventh Circuit rejected the plaintiffs' argument that the builder "was merely a pass-through conduit required to deliver" the marketing fee, observing in particular that the marketers' right to payment could only be challenged by the builder and not by plaintiffs, including because two separate contracts were in play. *Id.* at 1337. *Virgilio* correctly applied Florida law. *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. Dist. Ct. App. 2009) ("Plaintiff cannot allege nor establish that it conferred a <u>direct</u> benefit upon [defendant].") (emphasis added); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007) ("The plaintiffs must show they <u>directly</u> conferred a benefit on the defendants.") (emphasis added); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. Dist. Ct. App. 1996) (dismissing claim for unjust enrichment where "the plaintiff . . . could not and did not allege that it had <u>directly</u> conferred a benefit on the defendants") (emphasis added).[14]

As in *Virgilio*, there are two separate contracts governing the relationships and payments amongst Theberge, Bank of America and Certain Underwriters. Theberge and Bank of America had a mortgagor-mortgagee relationship under their mortgage contract, pursuant to which Theberge received her loan and made payments to Bank of America. Bank of America and Certain Underwriters had an insured-insurer relationship under the Policy, pursuant to which Bank of America received insurance coverage and paid the premium to Certain Underwriters that Plaintiffs seek to recover by this lawsuit. But Plaintiffs have no right to claw back the premium: as the insured under the Policy, only <u>Bank of America</u> could do so. Policy, § VIII.A ("[Y]ou [Bank of America] are our sole insured under this certificate."); *see also Virgilio*, 680 F.3d at

---

[14] *Virgilio* was decided after *Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011), and therefore implicitly overrules contrary holdings in that case and the federal District Court cases cited therein.

11

1337 (pointing out that it was for the payor under the contract to complain about the funds at issue, and not for plaintiffs, who were not contracting parties).

In this case, Theberge has only alleged—and can only allege—that she made payments to Bank of America, not to Certain Underwriters. Because Theberge cannot and does not allege that she conferred a benefit directly on Certain Underwriters, her unjust enrichment claim must be dismissed.

> **b. Alternatively, Even if There Were Any Benefit Directly Conferred on Certain Underwriters by Theberge, Plaintiffs Offer No Facts to Support their Assertion that Retention of the Benefit is Unjust—and the Policy Shows that Plaintiffs Could Not Allege Such Facts**

To the extent it could be construed that Theberge conferred any benefit directly on Certain Underwriters in the form of premium payments (from Bank of America), Plaintiffs' unjust enrichment claim also fails because Certain Underwriters provided adequate consideration for the benefit allegedly conferred. Certain Underwriters' provision of continuous coverage for wind losses constituted adequate consideration for any benefit received, and therefore Certain Underwriters' retention of any benefit is not "unjust" or "inequitable" as a matter of law. *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. App. Ct. 2007). Indeed, "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (*quoting Griggs*, 959 So. 2d at 331–32).

Certain Underwriters provided adequate consideration to Bank of America in the form of the insurance coverage extended pursuant to the Policy. This satisfies the requirement that "someone" receive adequate consideration. Thus, whether Theberge received consideration is irrelevant. At any rate, Theberge received the benefit of continuous coverage for which she had bargained with Bank of America. By entering into her mortgage agreement, Theberge agreed to

PD.8087158.1

lender-placed insurance if her coverage lapsed. (Theberge Mortg., § 5 [D.E. 40-3]; First Am. Compl., ¶ 60.)[15]  Maintaining insufficient coverage could have exposed Theberge to serious financial harm, and she therefore received the benefit of her bargain with Bank of America.[16]

Theberge's bare assertion that the lender-placed coverage was worthless because it was backdated (e.g., First Am. Compl., ¶ 187) is not supported by factual allegations. Moreover, the terms of the Policy make clear that the coverage provided by Certain Underwriters was adequate consideration.[17]  Two highly relevant endorsements to the Policy provide as follows:

> Backdating of Coverage
>
> The Evidences of Insurance issued [under] [sic] this Master Policy may be backdated, as necessary; however, such Evidences of Insurance may not be backdated prior to the effective date of the mortgage between the Mortgagee [i.e., Bank of America] and the Mortgagor or prior to the effective date of this Master Policy, whichever effective date is later. . . .
>
> Coverage Guaranty and Automatic Coverage Endorsement
>
> Coverage provided by this endorsement will attach on the effective date shown on the Declarations Page or the date the Mortgagee's interest in the loan attaches, whichever is later, and shall continue until:

---

[15]  *See Richardson v. Ameriquest Mortg. Co.*, No. 08-22334, 2011 WL 5548066 (Fla. Cir. Ct. Nov. 8, 2011) (slip copy), *aff'd*, No. 11-3123, 2012 WL 5258962 (Fla. Dist. Ct. App. Oct. 24, 2012) ("The Court finds [the] mortgage . . . clear and unambiguous. The mortgage required [plaintiff] to keep the property insured. Following [plaintiff's] failure to maintain his own property insurance, the mortgage allowed defendants to place coverage to protect the lender's interest."); *see also Schilke*, 820 F. Supp. 2d at 834–35 ("Plaintiff does not claim that Wachovia has done anything other than what it was entitled to do under the contract: ensure that its interest in the property was protected with continuous, adequate insurance coverage. . . . Plaintiff's 'backdating' allegations ignore her contractual duty in her mortgage agreement to maintain continuous, uninterrupted insurance on the property, which serves as security for the loan, and also ignore the terms authorizing Plaintiff's lender or servicer to do and pay for whatever it deems reasonable or appropriate to protect the lender's rights in the property. . . . If anything, Wachovia honored the agreement when it did exactly what it told Plaintiff it would do—purchase an insurance policy at Plaintiff's expense when Plaintiff failed to maintain its obligations under the agreement by maintaining insurance on the property.").

[16]  Again, Theberge had no bargain with Certain Underwriters, and should not be heard to complain about the premium paid by Bank of America under Bank of America's contract (the Policy) with Certain Underwriters.

[17]  As discussed *supra* § III.A.1, the terms of the Policy control where they conflict with Theberge's bare allegations. *Genworth*, 2012 WL 569906, at *5 (*quoting Fayetteville Investors*, 936 F.2d at 1465).

PD.8087158.1

1.  the Mortgagee provides written notice to us of their intention to terminate this Master Policy, or

2.  the Mortgagor no longer has an interest in the insured property as the result of a foreclosure,

whichever occurs first.

We agree to provide coverage under this endorsement:

1.  to indemnify the Mortgagee named on the Declarations Page for all eligible properties securing loans within the Mortgagee's portfolio, for which property insurance is required . . . .

(Policy, Endorsements.)

Thus, pursuant to the Policy, the coverage provided by Certain Underwriters automatically attached upon the happening of one of three events: (1) Bank of America obtaining an interest in a property without wind insurance coverage during the period of the Policy; (2) the owner of a property under mortgage to Bank of America letting prior wind insurance coverage lapse during the period of the Policy; or (3) the inception of the Policy if the borrower had no wind insurance coverage on the inception date. By definition, therefore, there was no "backdating" of coverage: the coverage provided by Certain Underwriters automatically attached upon a lapse in coverage. That coverage was effective regardless of the date on the Evidence of Insurance.[18]

Continuous coverage—the practice Plaintiffs refer to as "backdating"—is of value because it "ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage." *LaCroix v. U.S. Bank, N.A.*, No. 11-3236, 2012 WL 2357602, at \*5 (D. Minn. June 20, 2012); *see also Schilke v. Wachovia Mortg., FSB*, No. 09-1363, 820 F. Supp. 2d 825, 834 (N.D. Ill. 2011) ("Simply put, Plaintiff's 'backdating' allegations

---

[18] Plaintiffs' allegation of "backdating" of coverage is distinguishable from the customary "backdating" of an evidence of insurance, which is issued after coverage attaches, and which naturally therefore has to show an effective date of coverage earlier than the date on which the evidence of insurance is issued and printed. Thus, "backdated" evidences of insurance simply reflect the continuous coverage provided by the insurer.

ignore her contractual duty in her mortgage agreement to maintain continuous, uninterrupted insurance on the property, which serves as security for the loan . . . .); *Webb v. Chase Manhattan Mortg. Corp.*, No. 05-548, 2008 WL 2230696, at *19 (S.D. Ohio May 28, 2008) ("If Chase had obtained replacement insurance effective as of the date it received confirmation that the property was no longer insured, and a loss had occurred in the interim, then there would be no coverage to satisfy Chase's security interest or the borrower's ownership interest in the property.").[19] The continuous coverage requirement has been endorsed by state regulators, consumer advocates and loan investors—including Fannie Mae and Freddie Mac.[20]

Plaintiffs cite several cases in support of their assertion that "[b]orrowers in other cases have successfully challenged similar force-placed practices." (First Am. Compl., ¶ 134.) With the exception of *Kolbe v. BAC Home Loans Servicing, LP*, 695 F.3d 111 (1st Cir. 2012), none of the cited opinions evaluated whether claims against insurers should be dismissed, but rather rejected efforts to dismiss claims against lenders and insurance agents. As explained herein, Certain Underwriters' relation to Plaintiffs is less direct and more tangential. Indeed, in *Kolbe*,

---

[19] Plaintiffs misconstrue the nature and reasons for continuous coverage. First, Plaintiffs wrongly assume they knew or would have known whether there was wind damage to their properties during a coverage lapse. Covered wind damage can remain latent for some time, unbeknownst to the occupant of the property. Second, even if there had been no damage, Plaintiffs wrongly assume that Bank of America or its insurers Certain Underwriters would have known there was no damage or had an obligation to determine whether there was damage before placing coverage. In both regards, relatively minor and localized weather events—well short of named storms—can give rise to wind damage of which neither the property owner nor the insurer would be aware. The Policy does not limit coverage to major storms, but rather provides: "The peril of wind includes windstorm, hurricane, wind gusts, tornadoes or cyclones." (Policy, § II.20.) By definition, then, an event need not be major to cause covered damage. *E.g.*, *St. Paul Fire & Marine Ins. Co. v. C. Park Mobile Home*, 529 P.2d 711, 712–13 (Ariz. Ct. App. 1974) (finding coverage under wind insurance policy where wind gusts were only 8–12 miles per hour).

[20] *See generally* Illinois Union's Memorandum in Support of Motion to Dismiss, at § III.B [D.E. 75] and Exhibits D–H thereto [D.E. 82–86]. The public record sources referred to therein may be considered by this Court in evaluating Certain Underwriters' Motion to Dismiss because they may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

15

the First Circuit affirmed the dismissal of claims against the insurer while allowing the claims against the lender to proceed. *Id.* at 125.[21]

The Policy shows that the provision of continuous coverage thereunder was automatic upon the happening of certain specified events. Thus, the Policy trumps the inconsistent allegations that premium was accepted by Certain Underwriters with knowledge of the absence of prior losses, and that Theberge did not receive something of value (for the premium paid by Bank of America) when continuous coverage was placed on her property.[22] By definition, coverage arose under the Policy according to certain specified conditions, regardless of Certain Underwriters' knowledge of losses.[23]

For these reasons, Theberge's lender-placed insurance had value, and it therefore constituted adequate consideration for any benefit purportedly conferred on Certain Underwriters. There is nothing inequitable or unjust about Certain Underwriters' retaining the premium paid by Bank of America. *See Lemy v. Direct Gen. Fin. Co.*, __ F. Supp. 2d __, No. 11-2722, 2012 WL 2339702, at *7 (M.D. Fla. June 19, 2012), *aff'd*, __ F. Supp. 2d __, 2012 WL 3326342 (2012) (dismissing unjust enrichment claim against insurers where plaintiffs' allegations that the insurance coverage was worthless were without support). Plaintiffs' bare assertion that Underwriters were somehow enriched is nothing more than a "formulaic recitation" of elements, which the Supreme Court has held does not satisfy Rule 12. *Twombly*,

---

[21] On November 1, 2012, the First Circuit granted *en banc* review in *Kolbe*, with a hearing set for February 5, 2013.

[22] Again, Theberge was not the insured under the Policy and it would be for Bank of America to complain if Certain Underwriters failed to provide a benefit thereunder. The resulting benefit to Theberge is merely emphasized here to illustrate—for purposes of Theberge's unjust enrichment claim—that there is nothing inequitable about Certain Underwriters retaining the premium at issue.

[23] Plaintiffs fundamentally misunderstand the nature of lender-placed continuous coverage insurance, as is clear from their allegation that Theberge tried to purchase "backdated" wind insurance coverage and was informed by her insurance agent that was not possible. (First Am. Compl., ¶ 71 & n.5.) Bank of America was the insured under the Policy. As discussed above, Bank of America did not—and could not, under the terms of the Policy—receive coverage on properties securing loans for effective dates prior to the effective date of the Policy. The effective date of coverage on Theberge's property (April 9, 2009) was during the policy period of the Policy (October 10, 2008 through December 31, 2009). (Hicks Declaration.)

PD.8087158.1

550 U.S. at 555. Moreover, Plaintiffs' bare assertion is contradicted by the terms of the Policy, which control over the conflicting allegations.

### 4. Plaintiffs' Unjust Enrichment Claim May Not Proceed Because of the Express Contract Concerning the Same Subject Matter

A "plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev't Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) (per curiam) (*citing Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007); *and Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. Dist. Ct. App. 1984)). This is so because the law will not imply a contract where a valid legally enforceable express contract exists concerning the same subject matter. *Kovtan*, 449 So. 2d at 1; *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994); *see also In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) (*quoting Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) ("It is blackletter law that 'the theory of unjust enrichment is equitable and is, therefore, not available where there is an adequate legal remedy.'").

Theberge alleges that Bank of America procured the lender-placed wind insurance—for which she now seeks return of premium from Certain Underwriters by her unjust enrichment claim—pursuant to her mortgage contract. (First Am. Compl., ¶¶ 59–60). Thus, the subject matter of Theberge's unjust enrichment claim (*i.e.*, the continuous coverage Bank of America obtained and Certain Underwriters provided) is also the subject matter of her contractual claims against Bank of American under the mortgage contract.[24]

---

[24] While one Florida appellate court held that an action for equitable relief can only be barred where an adequate remedy of law exists against the same person from whom the relief in equity is sought, that case involved a relief from forfeiture claim rather than an unjust enrichment claim. *See McNorton v. Pan Am. Bank of Orlando*, 387 So.2d 393, 396, 399 (Fla. Dist. Ct. App. 1980). At any rate, the issue of whether the parties to the contract <u>must</u> be the same as the parties to the claim in order for an unjust enrichment claim to be prohibited by an express contract

Moreover, the Amended Complaint allows for no possibility that the contractual claims might be dismissed while the unjust enrichment claim proceeds, and no party to this case has alleged or contended that Theberge's mortgage agreement is invalid.[25] *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233, 2011 WL 4901346, at *6 (S.D. Fla. Oct. 14, 2011) ("[U]njust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid."); *In re Managed Care*, 185 F. Supp. 2d at 1337–38 ("[A]n unjust enrichment claim can only be pled in the alternative if one or more of the parties contest the existence of an express contract governing the subject of the dispute, and such is not the case here.").

Thus, because of Theberge's contractual claims under her mortgage agreement concerning the same subject matter, Plaintiffs have failed to state a claim against Certain Underwriters for unjust enrichment.

## B. Plaintiffs Lack Standing to Sue Any Syndicate at Lloyd's Not Subscribing to the Policy under which Coverage Was Provided for Theberge's Property

Because Theberge has no relationship or connection to any Syndicate at Lloyd's other than those subscribing to the Policy under which coverage for her property was provided, Plaintiffs lack standing to sue such other Syndicates. Plaintiffs' claim against Certain Underwriters should therefore be dismissed for lack of standing except as to Syndicates 2000, 1084, 4444, 2791, 318, 2003, 4020, 1225, 1200, 2488 and 958. (Hicks Declaration.)

"A case is properly dismissed for lack of subject matter jurisdiction [under Rule 12(b)(1)] when the court lacks the statutory or constitutional power to adjudicate the case." *Home*

---

remains unsettled by Florida's Supreme Court, which allows this Court to assess how that court would likely rule. *See Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). Although Theberge's contract is with Bank of America and her unjust enrichment claim is against Certain Underwriters, Theberge's unjust enrichment claim should be dismissed because she should not be permitted to seek double recovery from two parties for harm arising from the same subject matter.

[25] Indeed, Plaintiffs acknowledge the existence and validity of Theberge's mortgage contract in the First Amended Complaint (¶¶ 56–61, 74), to which it is attached as an Exhibit [D.E. 40-3].

*Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).[26]  Standing is a threshold issue in every case, including class actions.  *Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).  In the class action context, a named plaintiff must have individual standing in order to sue on behalf of the class.  *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  Thus, "[t]he initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing."  *Winer*, 503 F.3d at 326.

The plaintiff bears the burden of proving that subject-matter jurisdiction exists.  *OSI, Inc. v. U.S.*, 285 F.3d 947, 951 (11th Cir. 2002); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  To establish constitutional standing, a plaintiff must show: (1) that she has suffered an "actual or imminent" injury that is "concrete and particularized" and not merely "conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *U.S. v. Hays*, 515 U.S. 737, 742–43 (1995) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To satisfy the "actual or imminent" injury requirement for standing, "a plaintiff must allege and show that he personally suffered injury."  *Griffin v. Dugger*, 823 F.2d 1476, 1482–83 (11th Cir. 1987).  This individual injury requirement cannot be met by plaintiffs alleging "that injury has been suffered by other, unidentified members of the class to which they belong and

---

[26]  Standing to sue in federal court is a "federal question," the resolution of which requires a different analysis than standing in state court.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985).  "Thus, even when a federal court sits in diversity jurisdiction, a plaintiff must meet the federal standing requirement."  *D.R. Ward Constr. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 492 (E.D. Pa. 2006).

PD.8087158.1

which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Wesleyan*, 6 F.3d at 188. "[A] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'" *Griffin*, 823 F.2d at 1483 (*quoting Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981)).

At least one named class representative must have standing with respect to each claim. *Prado-Steiman*, 221 F.3d at 1279; *King County v. IKB Deutsche Industriebank AG*, No. 09-8387, 2010 WL 2010943, at *1 (S.D.N.Y. 2010). Class representatives do not have standing to sue defendants who have not injured them, even if those defendants have purportedly injured other class members. *Yapuna v. Global Horizons Manpower Inc.*, 254 F.R.D. 407, 412 (E.D. Wash. 2008); *Hardin v. Harshbarger*, 814 F. Supp. 703, 707 (N.D. Ill. 1993). In other words, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Likewise, courts will dismiss class actions on standing grounds if the named plaintiff's injury is not fairly traceable to the defendant, or if a judicial ruling against the defendant will not redress the named plaintiff's injury. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 995–96 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004). In multi-defendant class actions, the named plaintiffs must show that each defendant has harmed at least one of them. *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 818 (W.D. La. 2003); *Pope v. City of Clearwater*, 138 F.R.D. 141, 145 (M.D. Fla. 1991).

In *Dash v. Firstplus Home Loan Trust 1996-2*, 248 F. Supp. 2d 489 (M.D.N.C. 2003), the Middle District of North Carolina dismissed the claims of a putative class against various lenders who held promissory notes relating to second mortgages for lack of standing, explaining:

> In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants. *Herlihy v. Ply-Gem Indus., Inc.*, 752 F. Supp. 1382, 1291 (D. Md. 1990) (dismissing class action lawsuit because "each plaintiff has not and cannot allege an injury arising from the conduct of each and every defendant"). In the instant matter, the allegations in the Complaint are insufficient to confer standing against Defendants because Plaintiffs do not allege that Defendants hold their loan. Moreover, naming each Defendant because it holds the notes of unnamed class member is, at this point, impractical and uncertain because those members could opt out of the class and because a denial of class certification would prevent the claims from ever being justiciable.

*Dash*, 248 F. Supp. 2d at 504; *see also Miller*, 224 F. Supp. 2d at 995–96 (holding that named-plaintiff mortgagors who sued lenders and subsequent assignees of loans in putative class action lacked standing to sue defendants with whom they had no contractual relationship). Moreover, in analogous situations to this one, federal courts have dismissed claims asserted by named plaintiffs against insurers for lack of standing where the named plaintiffs had no coverage from the defendant insurers. *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 243, 253 (W.D. Ark. 2011); *Miller v. Am. Family Mut. Ins. Co.*, No. 09-1954, 2010 WL 2926051, at *2 (D. Ariz. July 23, 2010); *Lindquist v. Farmers Ins. Co. of Ariz.*, No. 06-597, 2008 WL 343299 (D. Ariz. Feb. 6, 2008); *Aguilar v. All State Fire & Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809 (E.D. La. Mar. 6, 2007).

Theberge purports to sue multiple Underwriters at Lloyd's, London by naming "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable

statute of limitations period."[27]  But Theberge lacks standing to sue any Syndicate at Lloyd's that did not subscribe to the Policy under which the coverage on her property was issued, because she had no relationship or connection to such Syndicates and therefore cannot show that such Syndicates have harmed her.  Likewise, Theberge cannot show that her alleged injury is fairly traceable to such Syndicates, or that a judicial ruling against them would redress her alleged injury.  Plaintiffs cannot use the putative class members' alleged relationships with other Syndicates at Lloyd's to overcome Theberge's lack of standing.

This Court may properly consider the attached Hicks Declaration—which identifies the Syndicates at Lloyd's subscribing to the Policy—because Certain Underwriters are asserting a factual (rather than facial) challenge to standing.[28]  In ruling on a factual attack on subject matter jurisdiction under Rule 12(b)(1), the court can consider "matters outside of pleadings." *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980).  When a factual attack has been made, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

---

[27]  Plaintiffs incorrectly allege that "Lloyd's of London is a franchise."  First Am. Compl., ¶ 23.  The Society of Lloyd's is an insurance marketplace.  Individual underwriters, known as "Names" or "Members" assume the risk of insurance loss through administrative entities called "Syndicates."  *E.g.*, *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11th Cir. 2010).  "The Names are not liable for the risks that the other Names assume."  *Id.*; *see also Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 858–59 (5th Cir. 2003) ("A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. . . . [W]hile an insured receives a Lloyd's policy, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk.").

[28]  Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).  Like a Rule 12(b)(6) motion, a "'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for purposes of the motion."  *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980) (*citing Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  However, there is "a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  *Mortensen*, 549 F.2d at 891 (emphasis added).  "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction . . . there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*; *see Adams*, 697 F.2d at 1219.

PD.8087158.1

jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).[29]

Thus, to the extent Plaintiffs seek to sue any Syndicate at Lloyd's not subscribing to the Policy under which the coverage of Theberge's property was issued, such claims should be dismissed for lack of standing.[30]

## IV.  CONCLUSION

For the foregoing reasons, Certain Underwriters respectfully request that their Motion to Dismiss for failure to state a claim on which relief can be granted be GRANTED, and that Plaintiffs' claims against them be dismissed in their entirety, with prejudice, and at Plaintiffs' cost. Certain Underwriters also respectfully request that their Motion to Dismiss for lack of standing be GRANTED, and that Plaintiffs' claims against Syndicates at Lloyd's other than those subscribing to the Policy under which coverage was provided for Theberge's property (*i.e.*, Syndicates at Lloyd's other than Syndicates 2000, 1084, 4444, 2791, 318, 2003, 4020, 1225, 1200, 2488 and 958) be dismissed in their entirety, with prejudice, and at Plaintiffs' cost.

---

[29] Where a defendant makes a factual attack on subject-matter jurisdiction, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

[30] In addition to suing Certain Underwriters, Plaintiffs purport to sue a defendant identified as "Lloyd's, Underwriters at, London." (First. Am. Compl., p. 2, ¶ 22.) Certain Underwriters submit that there is no such juridical entity. Certain Underwriters believe that the name/label "Lloyd's, Underwriters at, London" is an incorrect and improper—and therefore unnecessarily duplicative—naming of Certain Underwriters (who are sued as "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period"). To the extent Plaintiffs meant to sue any persons or entities other than Certain Underwriters by their use of "Lloyd's, Underwriters at, London," Certain Underwriters respectfully submit that any such other persons or entities have not been properly named and identified such that they would be able to respond to this suit.

23

Respectfully submitted this 31st day of December, 2012.

PHELPS DUNBAR LLP

s/ Kevin M. O'Brien
Kevin M. O'Brien
obrienk@phelps.com
N.C. State Bar #43373
GlenLake One
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina 27612-3723
Telephone: 919-789-5300
Facsimile: 919-789-5301

*Attorney for Defendants Named as "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period"*

24

<u>**CERTIFICATE OF SERVICE**</u>

       I certify that, on this 31st day of December, 2012, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

BUCKLEYSANDLER LLP
Katherine L. Halliday, khalliday@buckleysandler.com
Stephen M. LeBlanc, sleblanc@buckleysandler.com
Matthew P. Previn, mprevin@buckleysandler.com
Robyn C. Quattrone, rquattrone@buckleysandler.com

DEBEVOISE & PLIMPTON LLP
Eric R. Dinallo, edinallo@debevoise.com
Robert D. Goodman, rdgoodman@debevoise.com

GOODWIN PROCTER
David Seth Kantrowitz, dkantrowitz@goodwinprocter.com
Brian M. LaMacchia, blamacchia@goodwinprocter.com
Matthew G. Lindenbaum, mlindenbaum@goodwinprocter.com
David L. Permut, dpermut@goodwinprocter.com

KESSLER TOPAZ MELTZER & CHECK LLP
Peter H. LeVan, Jr., plevan@ktmc.com

MCGUIREWOODS LLP
Steven N. Baker, sbaker@mcguirewoods.com
Bradley R. Kutrow, bkutrow@mcguirewoods.com

NELSON LEVIN DE LUCA & HAMILTON, LLC
David Leonard Brown, dbrown@nldhlaw.com
Brady A. Yntema, byntema@nldhlaw.com

NICHOLS KASTER, PLLP
E. Michelle Drake, drake@nka.com
Sarah W. Steenhoek, ssteenhoek@nka.com

ROBINSON, BRADSHAW & HINSON, P.A.
Nathan C. Chase, Jr., nchase@rbh.com
Robert Evans Harrington, rharrington@rbh.com

WHITFIELD, BRYSON & MASON, LLP
Daniel Kent Bryson, dan@wbmllp.com

                          s/ Kevin M. O'Brien
                          Kevin M. O'Brien

PD.8087158.1