IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 12-cv-00487-MOC-DCK

DAVID HOLMES, HERTA S. THEBERGE, MARGUERITE K. POTTER, and the MARGUERITE K. POTTER REVOCABLE TRUST, individually and on behalf of all others similarly situated,
                 Plaintiffs,

v.

BANK OF AMERICA, N.A., in its own capacity and as successor by merger to BAC Home Loans Servicing, L.P., SEATTLE SPECIALTY INSURANCE SERVICES, INC., in its own capacity and as successor in interest to COUNTRYWIDE INSURANCE SERVICES, INC., ILLINOIS UNION INSURANCE COMPANY, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON, including all underwriters who underwrote force-placed wind insurance policies for Bank of America, as the insured during the applicable limitations period and LLOYD'S UNDERWRITERS AT, LONDON,
                 Defendants.

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO ILLINOIS UNION'S MOTION TO DISMISS**

# INTRODUCTION

Illinois Union Insurance Company ("Illinois Union") has attempted to rewrite the operative facts in this case so that it may prevail on its motion to dismiss, but its efforts fail. Throughout its brief, Illinois Union attempts to justify Defendants' actions, stressing the importance of providing "coverage on a continuous basis from the date that prior [insurance] coverage lapse[s]." Mem. in Supp. of Def. Illinois Union's Mot. to Dismiss Pls.' Am. Compl., ECF No. 75 at 9 ("Illinois Union Memo"). This assertion, however, has no bearing on the facts alleged in the First Amended Complaint ("FAC"). In fact, Bank of America did not force-place wind insurance because Plaintiffs David Holmes, Marguerite K. Potter, and the Marguerite K. Potter Revocable Trust ("Plaintiffs") let a prior required wind policy lapse. Indeed, Plaintiffs did not procure wind insurance at origination because ***it was not required at the closing of their loans***. Then, months after closing, Bank of America force-placed worthless, backdated wind insurance policies on Plaintiffs for a coverage period that had already passed, not only by the time the insurance was force-placed, but also predating any notice to Plaintiffs that such insurance was even purportedly required.

Even if Bank of America did force-place insurance on Plaintiffs in order to provide continuous coverage or because there had been a lapse in required coverage (neither of which are true here), Illinois Union would still have been unjustly enriched by the backdated wind insurance premiums it received because the insurance coverage it provided was worth no more than the paper it was printed on. It was worthless, providing coverage in name only, because it covered a period of time during which there was absolutely no risk of loss. *See McNeary-Calloway v. JPMorgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 962 (N.D. Cal. Mar. 26, 2012) ("This [backdating] practice was disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced,

1

backdated policy."). Accordingly, Illinois Union's receipt and retention of premiums for such worthless coverage was unquestionably unjust and supports a claim for unjust enrichment.

Numerous courts, including courts interpreting Florida law, have upheld similar claims for unjust enrichment based on similar allegations of backdating in connection with force-placed insurance. *See, e.g., Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506, 2012 WL 6176905, at *19 (N.D. Cal. Dec. 11, 2012); *McNeary*, 863 F. Supp. 2d at 964; *Ulbrich v. GMAC Mort., LLC*, No. 11-62424, 2012 WL 3516499, at *1-3 (S.D. Fla. Aug. 15, 2012); *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *1-2, *8-10 (S.D. Fla. Sept. 19, 2011) ("*Williams I*"). This Court should as well.

Finally, Illinois Union's argument that Plaintiffs' unjust enrichment claims should be dismissed because of Plaintiffs' mortgage agreements is misleading and misplaced. Plaintiffs' mortgage agreements with Bank of America (to which Illinois Union is not a party) have no bearing whatsoever on Plaintiffs' unjust enrichment claims, and therefore cannot preclude them from proceeding with these claims at this juncture.

For these reasons, Illinois Union's motion to dismiss should be denied in its entirety.

## FACTUAL BACKGROUND[1]

Illinois Union Insurance Company is a surplus line insurance carrier with its principal place of business in Chicago, Illinois. FAC ¶ 21. It operates under a letter of eligibility in the State of Florida but is virtually unregulated by that state and is not required to file its insurance rates there. *Id.* Illinois Union is a subsidiary of ACE USA, which is headquartered in Philadelphia, Pennsylvania. *Id.* Illinois Union provides lender-placed insurance to Bank of America. *Id.*

---

[1] The facts underlying Plaintiffs' claims are outlined in Plaintiffs' opposition to Bank of America's Motion to Dismiss (ECF No. 96) and are incorporated by reference herein.

2

# ARGUMENT

## A.     Applicable Legal Standard

Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  To satisfy this standard, it is not necessary to plead "detailed factual allegations"; all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility standard is not akin to a "probability requirement."  *Id.*

The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action.  *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995); s*ee also Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (motion to dismiss "importantly, … does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.")*.* At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor.  *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

## B.     Plaintiffs Have Stated a Valid Claim for Unjust Enrichment Against Illinois Union

In order to state a claim for unjust enrichment under Florida law, a plaintiff must show that: (1) the plaintiff has conferred a benefit on the defendant, who had knowledge thereof; (2) the defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  *Williams I*, 2011 WL 4368980, at *8 (denying motion to dismiss

3

unjust enrichment claim based on force-placed insurance policies).[2]  Plaintiffs have pleaded each of these elements here to state a claim that is plausible on its face.  *See* FAC ¶¶ 182-188.

### 1. Plaintiffs Conferred a Direct Benefit on Illinois Union

*First*, Plaintiffs allege that they conferred a direct benefit on Illinois Union: namely, "money improperly taken from them and retained by Illinois Union … in the form of backdated insurance premiums."  FAC ¶ 185.  *See also Williams I*, 2011 WL 4368980, at *9 ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims.").  Plaintiffs have never received a refund for the backdated insurance premiums received by Illinois Union.  FAC ¶¶ 44, 104, 105.

### 2. Illinois Union Accepted and Retained the Benefit Conferred

*Second*, Plaintiffs allege that Illinois Union accepted and retained these backdated insurance premiums, and were enriched by said premiums, which covered "past time periods with *no* recorded risk of loss according to well-documented weather records."  FAC ¶ 186 (emphasis in original).  The backdated policies cover a period when no recorded hail, wind, storm, or hurricane damage occurred, and for which Defendants were on notice or could easily have been on notice that no such damage occurred.  *Id.* ¶ 130.  It is an industry practice for insurance companies to subscribe to tracking and storm reporting services that provide the insurance company with data on wind speed, hail size, and other storm information within a given geographic area.  *Id.* ¶ 132 (citing websites of companies that provide insurance companies

---

[2] Illinois Union's argument regarding Plaintiffs' purported failure to specify the applicable state law is meritless for all of the reasons discussed by Plaintiffs in their opposition to Lloyd's Motion to Dismiss.

4

with such information).[3]  Equipped with all of this information, an insurance company could be confident that they were getting backdated premiums associated with no underlying risk.  *Id.*  Thus, backdated insurance results in a windfall for insurance companies, because they obtain premiums from the consumer for a time period where there is no risk, and therefore no claims.  *Id.*

### 3. The Circumstances Make It Inequitable For Illinois Union To Retain Such Benefits

*Third*, Plaintiffs allege that Illinois Union's retention of these benefits would be inequitable under the circumstances.  These premiums resulted from force-placed wind insurance policies that were not explicitly required by Plaintiffs' mortgage agreements; were not required of Plaintiffs at the closing of their mortgages; and were not required by Bank of America at the time it undertook servicing of Plaintiffs' loans.  FAC ¶¶ 34, 36, 37, 88, 89.  In other words, Illinois Union received and retained premiums for wind insurance policies that were force-placed on Plaintiffs for a time period before they were *ever* notified that such policies were even purportedly "required."  *Id.* ¶¶ 37, 40, 91.

---

[3] Contrary to Illinois Union's argument, these allegations are pleaded with sufficient plausibility to allege that Defendants knew or should have known that the practice of force-placing backdated insurance would constitute a benefit due to the lack of risk of payout on these policies.  *See* Illinois Union Memo at 16.  In fact, if the Court is inclined to consider Lloyd's purported wind insurance Policy with Bank of America, which Lloyd's improperly submitted in conjunction with its motion to dismiss (*see* Plaintiffs' Opposition to Lloyd's Motion to Dismiss), that Policy provides further support for Plaintiffs' allegations.  Specifically, the Policy indicates that Lloyd's will only provide wind insurance coverage if no loss has occurred or is in progress as of the date Bank of America requests coverage.  *See* Lloyd's Policy § VIII.B.1, ECF No. 94-2 at 3 ("coverage for each described location shall commence on the date and for the amounts of insurance you have requested, ***provided that no loss has occurred or is in progress as of your request date***.") (emphasis added).  This language confirms not only that the backdated insurance coverage that was force-placed was worthless, but that both Bank of America and Lloyd's knew that it was worthless.  Plaintiffs anticipate that they will uncover similar evidence with respect to Illinois Union in discovery.  For now, these allegations are plausible on their face, and meet the pleading standards required by Fed. R. Civ. P. 8.

5

Even after they received notice from Bank of America, Plaintiffs had no ability to privately purchase wind insurance policies for the previous backdated time period, because retroactive coverage is unavailable for purchase on the standard insurance market. FAC ¶ 71 n.5 (citing Testimony of Robert P. Hartwig, NAIC Public Hearing on Private Lender-Placed Insurance, August 9, 2012, ECF No. 76 at p. 11 (retroactive coverage "is unheard of in the standard homeowners insurance market")). The National Association of Insurance Commissioners ("NAIC") has made clear that policies "should *not* be back-dated to collect premiums for a time period that has already passed." FAC ¶ 131 (citing Jeff Horwitz, "Ties to Insurers Could Land Mortgage Servicers in More Trouble." *Am. Banker* (Nov. 9, 2010)).

Thus, Illinois Union has retained premiums for worthless backdated insurance that was forced on Plaintiffs without any notice that such insurance was required, and which Plaintiffs were unable to obtain from any other source. *See Alcoa Steamship Co. v. Perez*, 424 F.2d 433, 435 (1st Cir. 1970) ("Plaintiffs never sought this insurance, have protested from the outset that they did not want it, and have never made any claim against it. By appellee's reasoning a man who kidnapped a victim for ransom, upon being apprehended, would have a claim for the taxi fare. Plaintiffs did not ask for this ride, and are not to be told that it must be paid for.").

### 4. Numerous Courts Have Permitted Similar Unjust Enrichment Claims Based on Backdating Allegations To Proceed Past a Motion to Dismiss

Numerous courts have upheld claims for unjust enrichment based on similar allegations at the motion to dismiss stage, including under Florida law. *See, e.g., Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *2-4 (S.D. Fla. Oct. 14, 2011) ("*Williams II*") (allowing claim to proceed under Florida law where plaintiffs alleged that lender "retroactively" purchased "backdated" force-placed policies); *Ellsworth*, 2012 WL 6176905, at *19 (denying motion to dismiss unjust enrichment claim against provider of force-placed

6

insurance based on backdating allegations); *Lass v. Bank of America, N.A.*, 695 F.3d 129, 139 (1st Cir. 2012) (upholding district court's finding that plaintiff stated a claim for unjust enrichment based on backdating allegations); *Ulbrich*, 2012 WL 3516499, at *1, *3 (denying motion to dismiss unjust enrichment claim against insurance services company where plaintiff alleged that "policies were backdated … to cover periods of time which had already passed") (applying Florida law); *McNeary*, 863 F. Supp. 2d at 938-39, 964 (plaintiff stated valid claim by alleging that defendant backdated "force-placed insurance policies to cover time periods which had already passed and for which there was already absolutely no risk of loss").

This Court should reach the same result and deny Illinois Union's motion to dismiss.

### C. Illinois Union's Argument That The Backdated Wind Insurance Policies Constitute Adequate Consideration Is A Merits Fact-Based Argument That Should Not Be Addressed At The Motion to Dismiss Stage

Illinois Union challenges Plaintiffs' unjust enrichment claim by arguing that the backdated insurance policies constitute "adequate consideration for any benefit received." Illinois Union Memo at 11. Specifically, Illinois Union argues that its "risk of loss" under the backdated wind policies establishes adequate consideration for the premiums received.[4] *Id.* at 15. This argument merely amounts to a denial of, and directly contradicts Plaintiffs' well-pled allegations that there was, in fact, absolutely no risk of loss during these time periods, and that such information was known or should easily have been known by Defendants. *See supra* Section (B)(2); *see also McNeary*, 863 F. Supp. 2d at 938-39, 964 (denying defendant's motion

---

[4] Illinois Union also argues that its contractual arrangement with Bank of America to provide backdated force-placed wind insurance policies somehow precludes Plaintiffs from "alleg[ing] a plausible basis on which to find that [Illinois Union's] provision of continuous coverage constitutes inadequate consideration." Illinois Union Memo at 16. This argument is a red herring. The terms of any contract between Illinois Union and Bank of America are immaterial to the question of whether the insurance policy that was forced on Plaintiffs for a time period in which there was no recorded risk of loss constitutes inadequate consideration to Plaintiffs. If party A hires party B to steal money from party C, it cannot be claimed that C is not injured because A and B fulfilled each other's mutual expectations.

7

to dismiss where plaintiff alleged that defendant backdated "force-placed insurance policies to cover time periods which had already passed and for which there was already absolutely no risk of loss").

Illinois Union's argument regarding the adequacy of consideration is an affirmative defense that is appropriately decided later in the case, not on a motion to dismiss. *See Republican Party*, 980 F.2d at 952 (motion to dismiss "importantly … does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses"); *In re Burton Wiand Receivership Cases Pending In the Tampa Div. of the Middle Dist. of Fl.*, No. 8:05-cv-1856, 2008 WL 818504, at *6 (M.D. Fla. Mar. 26, 2008) (holding that whether circumstances were inequitable or whether fair consideration was received "are issues not appropriate for resolution on a motion to dismiss").

Florida district courts have rejected the very same arguments in the context of analogous force-placed insurance cases, holding that "[w]hether the consideration received was in fact adequate is not an appropriate question for the Court to resolve at this stage." *Williams I*, 2011 WL 4368980, at *11; s*ee also Williams II*, 2011 WL 4901346, at *6 (holding that the argument "necessarily fails"); *Ulbrich*, 2012 WL 3516499, at *3 (rejecting insurance company's argument that plaintiff received adequate consideration because the policy was "substantially prospective," and holding that "whether the consideration received by Plaintiff was, in fact, adequate should not be resolved at the pretrial phase").

At this stage, Plaintiffs have plausibly alleged that the practice of force-placing back dated insurance is inequitable and gives rise to liability. As alleged, insurance is supposed to be prospective in nature; backdated coverage is contrary to that intent; backdated coverage is unavailable on the private market; and Defendants knew or should have known that there was no

8

risk of loss for the periods of time that had already elapsed. FAC ¶¶ 130-132, 186. Illinois Union is entitled to defend itself against these allegations by arguing that the backdated policies do, in fact, provide adequate consideration, but that is a question of fact, appropriate for resolution after discovery has been taken, and not in a motion to dismiss.

### D. Illinois Union Mischaracterizes and Ignores Plaintiffs' Allegations in the Complaint

Even considering the merits of its arguments, Illinois Union misunderstands the crux of Plaintiffs' claims, and ignores the factual allegations that Plaintiffs make in the FAC. Illinois Union argues that the backdated wind insurance represents Plaintiffs' "reasonable expectation" in light of their mortgage agreements and communications from Bank of America. Illinois Union Memo at 11-13. In so arguing, however, Illinois Union mischaracterizes Plaintiffs' backdating claims as it focuses on the provision of "continuous coverage" in the event of a "lapse" in required insurance.

As alleged by Plaintiffs, however, there was no "lapse" in required coverage, because Bank of America *never required* wind insurance on Plaintiffs' properties before its first notice to them. Neither Holmes' nor Potter's mortgage agreements explicitly require wind insurance coverage. FAC ¶¶ 32, 86. Plaintiff Holmes was not required to obtain wind insurance by One Reverse Mortgage, LLC prior to closing, and Bank of America failed to notify him that it required such coverage for a period of *six months* after it acquired the loan. FAC ¶¶ 36, 37. Similarly, Bank of America required Potter to offer proof of adequate insurance prior to closing, which she provided, and that insurance (which did not include wind coverage) was accepted by Bank of America as sufficient coverage for the loan at closing. *Id.* ¶ 89. Bank of America did not notify Potter that it would require wind insurance for another two months, and then force-

9

placed a policy in the amount of approximately ten times Bank of America's interest in the property, with a premium of $72,293.22, backdated for a four month period. *Id.* ¶ 95.[5]

While there may be many types of insurance Bank of America could arguably require its borrowers to obtain on a going forward basis, the force-placement of backdated wind insurance coverage without any prior notice, especially when Plaintiffs' mortgages do not explicitly mention wind insurance, and when they were not required to obtain such coverage at origination, cannot be reasonably expected. *See* FAC ¶¶ 34-36, 61-63, 88-89; *see also Foothill Village Homeowners Ass'n. v. Bishop*, 68 Cal. App. 4th 1364, 1374 (1999) (holding that "open-ended liability of the borrower to purchase any and all insurance" not specifically required by the lender would be an "unreasonable" interpretation of a mortgage contract that limited coverage to "hazards for which the lender requires insurance").[6]

Plaintiffs have sufficiently alleged that the backdated insurance policies that were force-placed by Defendants were worthless, and could not have been reasonably expected under the circumstances.[7]

---

[5] Bank of America's failure to provide advance notice is by no means limited to its dealings with Holmes and Potter. For example, Bank of America did not notify Plaintiff Theberge of its alleged wind insurance requirement until ***thirteen years*** after she originated her loan. FAC ¶ 63. Moreover, the wind insurance Bank of America subsequently force-placed on Theberge's property was backdated ***more than eight months*** before the date of its first notice to her. *Id.* ¶ 66.

[6] Plaintiffs discuss at length why their mortgage agreements did not permit such backdating practices in their opposition to Bank of America's Motion to Dismiss, and incorporate those arguments by reference. *See* Pls.' Opp. to Bank of America's Motion to Dismiss (ECF No. 96) at 10-16, 19-22.

[7] The cases cited by Illinois Union to justify the provision of backdated insurance as reasonable are distinguishable. For instance, the court in *Schilke v. Wachovia Mortgage, FSB* failed to consider the specific contract language Plaintiffs cite in support of their position. 820 F. Supp. 2d 825 (N.D. Ill. 2011). *Schilke* also involved a situation of lapsed insurance coverage, further distinguishing it from the instant case. *Id.* at 829. *LaCroix v. U.S. Bank, N.A.*, No. 11-3236

### E. Illinois Union's Fact-Based Argument That Its Retention of Premiums Received for Backdated Wind Insurance Coverage Is Not Inequitable Fails

Illinois Union's argument that its retention of premiums obtained from the force-placement of backdated wind insurance policies is not otherwise inequitable similarly fails as a merits based denial of Plaintiffs' well-pled allegations, which must be taken as true at this stage of the proceedings. *See Stermer v. SCK Solutions, LLC*, No. 08-61751, 2009 WL 1849955, at *6 (S.D. Fla. Jun. 26, 2009) (rejecting dismissal of unjust enrichment claim as inequitable based on defendant's argument that it provided a "valuable service," because the argument was in direct contravention to the allegations of the complaint). Illinois Union will have a full and fair opportunity at summary judgment or trial to argue its case, with actual evidence. Now is simply not the time for the Court to resolve merits based disputes, and Plaintiffs' allegations are more than sufficient to proceed past a motion to dismiss.

As described above, Plaintiffs have alleged that Illinois Union retained premiums for backdated insurance under circumstances that were unquestionably inequitable. *See supra* Section (B)(3). These allegations are supported by numerous sources, including, but not limited to, widespread public criticism of such policies and practices, as well as investigations by state regulators. *See* FAC ¶¶ 117-125, 131. Specifically, according to the NAIC, insurance is supposed to be "prospective in nature." *Id.* at ¶ 131. Backdated insurance is contrary to this

---

(DSD/JJK), 2012 WL 2357602, at *5 (D. Minn. Jun. 20, 2012), contains almost no analysis of the backdating claim, improperly trivializes the backdating period, does not analyze the contractual language upon which Plaintiffs rely, and erroneously relied on *Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2008 WL 2230696, at *9 (S.D. Ohio May 28, 2008), which was decided at summary judgment after a motion to dismiss had already been denied with respect to the borrower's claims, including her claim for breach of the covenant of good faith and fair dealing in connection with backdated insurance. The First Circuit recently distinguished *Webb* in vacating a district court's grant of a motion to dismiss similar allegations to the case here against Bank of America. *Lass*, 695 F.3d at 139. The First Circuit specifically rejected Bank of America's arguments that plaintiff's backdating claim was without merit. *Id.*; *see also Ellsworth*, 2012 WL 6176905, at *16 (distinguishing *Webb* as applying summary judgment standard).

11

intent. *Id.* The NAIC has also stated that policies "should not be back-dated to collect premiums for a time period that has already passed[.]" *Id.* While Illinois Union argues that this statement is "insufficient to meet the pleading standards in *Twombly*," (Illinois Union Memo at 18), the First Circuit disagrees. In *Lass*, the First Circuit credited the cited statement by the NAIC as evidence that "the propriety of procuring a policy back-dated to *before* notice was given is uncertain." *See Lass*, 695 F.3d at 139 n.18 (emphasis in original) (citing NAIC statement in reversing district court's dismissal of backdating claim against Bank of America). For these reasons as well, Plaintiffs' backdating allegations support their claim for unjust enrichment.

Illinois Union's entire argument regarding inequity is premised on its theory of the benefits and propriety of force-placing "continuous coverage." Applied to the facts of this case, however, this theory completely misses the mark. For example, Illinois Union cites Florida state law for the unremarkable proposition that lenders must promptly pay insurance premiums from the lenders' escrow accounts to ensure that "insurance coverage on the property does not lapse." *See* Illinois Union Memo at 18 (citing West's F.S.A. § 501.137(1)). Similarly, the Fannie Mae and Freddie Mac guidelines merely discuss the servicer's obligations to protect Fannie Mae and Freddie Mac's interests by monitoring insurance coverage to make sure that the property is covered by required insurance at all times. *See* Illinois Union Memo at Exs. G and H.

Plaintiffs' allegations, however, do not concern a *lapse* in policy coverage, because Plaintiffs were never told that such coverage was necessary in the first instance. *Contra* Illinois Union Memo at 21 ("[I]t is implausible that [sic] to allege that Illinois Union's coverage of a home under an Evidence of Insurance bearing an effective date chosen to avoid a lapse in coverage constitutes an inequitable circumstance necessary to state a claim for unjust enrichment"). Holmes and Potter obtained all of the insurance that was required of them prior to

12

closing. Had the wind insurance coverage that Bank of America later force-placed on them been required at the time of closing, Plaintiffs should have been promptly notified of the requirement. Nor was Holmes notified that such coverage was required when Bank of America acquired his loan. Instead, Bank of America chose to wait for a period of months before notifying Plaintiffs of its purported requirements, and obtained backdated insurance at an exorbitant cost to Plaintiffs, knowing full well that Plaintiffs could not obtain backdated insurance coverage on their own in the private market and could only meet Bank of America's absurd retroactive requirement by being force-placed. *See* FAC ¶ 71 & n.5. This scenario is a classic bait and switch.

Not a single one of Illinois Union's citations to statements from state officials, consumer advocates, or governmental entities supports an argument that Bank of America may backdate insurance coverage to cover a period of time during which such insurance was never required. Nor do any of the exhibits to its motion, including the Fannie Mae or Freddie Mac guidelines, address whether premiums for backdated insurance can equitably be borne by the borrower. Finally, none of these documents provide that insurers like Illinois Union may collect and retain premiums on policies which they knew or should have known bore zero risk of loss. *See Lass*, 695 F.3d at 139 n.18.

Once stripped bare, it is plain that Illinois Union's arguments about "continuous coverage" are merely a diversion from the actual conduct alleged in Plaintiffs' First Amended Complaint. There is no basis to conclude, at the pleading stage, that backdated coverage is legitimate or appropriate, and the Court should reject Illinois Union's invitation to do so here.

### F.  Plaintiffs' Unjust Enrichment Claim is Not Barred By Contract

Finally, Illinois Union's argument that Plaintiffs' unjust enrichment claim is barred by contract is flawed for several reasons.

*First*, Plaintiffs do not assert a contract claim against Illinois Union.  FAC ¶ 183. Therefore, as Plaintiffs allege, there is no adequate remedy at law to compensate Plaintiffs for the money improperly taken from them and retained by Illinois Union.  *Id.* ¶ 185.

*Second*, Plaintiffs' mortgage agreements are with Bank of America, not with Illinois Union.  Because Plaintiffs' remedy at law (their breach of contract claims against Bank of America) is against a different entity than their claim for relief in equity (their unjust enrichment claim against Illinois Union), both may proceed.  *McNorton v. Pan Am. Bank of Orlando*, 387 So.2d 393, 399 (Fla. Dist. Ct. App. 1980) (holding that, in order for a remedy at law to bar a claim for equitable relief, both claims must be asserted against the same person); *accord Williams I*, 2011 WL 4368980, at *11 (rejecting insurance company's argument that plaintiffs' unjust enrichment claim was barred by mortgage contract, since insurance company "was not a party to the mortgage contract"); *accord*, *Morris v. Wells Fargo Bank, N.A.*, No. 2:11CV474, 2012 WL 3929805, at *10 (W.D. Pa. Sept. 7, 2012) (allowing unjust enrichment claim to proceed against an insurance company based on allegedly improper kickbacks in connection with force-placed insurance, even though mortgage contract barred the plaintiff's unjust enrichment claim against bank).

*Third*, Illinois Union fails to cite to a single case in support of its theory that Plaintiffs cannot maintain an unjust enrichment claim against Illinois Union because they have alleged a breach of contract claim against Bank of America.  In fact, as Illinois Union acknowledges, many of the cases that it does cite are directly contradictory to its own argument.  *See* Illinois Union Memo at 22 n.12; *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. Dist. Ct. App.

14

1998) (holding unjust enrichment claims were improperly dismissed against parties to which there was no contract, despite co-existence of breach of contract claims against third defendant based on similar underlying theory); *McNorton*, 387 So.2d at 399. In light of this admission, Illinois Union's later argument that the Court should follow "hornbook" law and dismiss Plaintiffs' claims on such grounds is patently disingenuous.

*Fourth*, to the extent Illinois Union contends that Plaintiffs' unjust enrichment claim should be dismissed because they should not be permitted to seek a double recovery, this argument is easily disposed of. While Plaintiffs acknowledge that they will not ultimately be able to recover twice for the same injury, there is no reason they cannot pursue both claims, which have different elements, are against different parties, and are premised upon different theories of liability, at this early stage of the proceedings. *See Abels v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (reasoning, at motion to dismiss stage, that "at this point it would be premature to dismiss the unjust enrichment count simply because an express contract exists").

*Fifth*, even if Illinois Union were a party to the mortgage contract and Plaintiffs were asserting a claim against Illinois Union based on the mortgage contract (neither of which are true), Plaintiffs would be entitled to pursue their unjust enrichment claim as an alternative cause of action. *See, e.g., Williams II*, 2011 WL 4901346, at *6 ("a party may plead in the alternative for relief under an express contract and for unjust enrichment"); *Williams I*, 2011 WL 4368980, at *11 (same); *Abels*, 678 F. Supp. 2d at 1279 (allowing plaintiff to pursue contract claim and unjust enrichment claim against bank in connection with its force-placed insurance practices); *Ellsworth*, 2012 WL 6176905, at *18-19 (same); *McNeary*, 695 F. Supp. 2d at 954-59, 963-64

15

(same); *Lass*, 695 F.3d 129 (stating breach of contract and unjust enrichment claim against bank could proceed, reasoning "it is accepted practice to pursue both theories at the pleading stage").

Accordingly, Plaintiffs' unjust enrichment claims are not barred by their mortgage contracts, and there is no basis to grant Illinois Union's motion to dismiss on these grounds.

## CONCLUSION

For the foregoing reasons, Illinois Union's motion to dismiss should be denied in its entirety.

Respectfully submitted,

Dated: January 31, 2013 /s/Sarah W. Steenhoek
**NICHOLS KASTER, PLLP**
E. Michelle Drake, MN Bar No. 0387366*
Sarah W. Steenhoek, MN Bar No. 0390258*
 *admitted *pro hac vice*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
E-mail: drake@nka.com
 ssteenhoek@nka.com

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson**
Lawrence Deutsch**
Robin Switzenbaum**
 ***pro hac vice* applications forthcoming
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (215) 875-4604
Email: scarson@bm.net
 ldeutsch@bm.net
 rswitzenbaum@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Brett Cebulash**
Kevin S. Landau**
 ***pro hac vice* applications forthcoming

16

80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
Fax: (212) 931-0703
Email: bcebulash@tcllaw.com
klandau@tcllaw.com

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
Scott A. Shorr**
Tim S. DeJong**
  **pro hac vice* applications forthcoming
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone: (503) 227-1600
Fax: (503) 227-6840
Email: sshorr@stollberne.com
tdejong@stollberne.com

**WHITEFIELD BRYSON & MASON, LLP**
Daniel K. Bryson, NC Bar No. 15781
Karl Amelchenko, NC Bar No. 43387
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email: dan@wbmllp.com
karl@wbmllp.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Edward W. Ciolko**
Donna Siegel Moffa**
Amanda Trask**
  **pro hac vice* applications forthcoming
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056
E-mail: eciolko@ktmc.com
dmoffa@ktmc.com
atrask@ktmc.com

**GROSSMAN ROTH, P.A.**
Seth E. Miles**
  ** *pro hac vice* application forthcoming
2525 Ponce de Leon Blvd., Suite 1150

17

Coral Gables, FL 33134
Telephone: (888) 296-1681
Fax: (305) 285-1668
Email: SEM@grossmanroth.com

**SHAPIRO HABER & URMY LLP**
Edward F. Haber**
Adam S. Stewart**
   ** *pro hac vice* applications forthcoming
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Fax: (617) 439-0134
Email: ehaber@shulaw.com
         astewart@shulaw.com

**ATTORNEYS FOR PLAINTIFFS
AND THE CLASSES**

18

## CERTIFICATE OF SERVICE

       I, Sarah W. Steenhoek, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 31, 2013.

Dated:  January 31, 2013                              /s/ Sarah W. Steenhoek