IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 12-cv-00487-MOC-DCK

DAVID HOLMES, HERTA S. THEBERGE,
MARGUERITE K. POTTER, and the
MARGUERITE K. POTTER REVOCABLE
TRUST, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

BANK OF AMERICA, N.A., in its own
capacity and as successor by merger to BAC
Home Loans Servicing, L.P., SEATTLE
SPECIALTY INSURANCE SERVICES,
INC., in its own capacity and as successor in
interest to COUNTRYWIDE INSURANCE
SERVICES, INC., ILLINOIS UNION
INSURANCE COMPANY, and CERTAIN
UNDERWRITERS AT LLOYD'S LONDON,
including all underwriters who underwrote
force-placed wind insurance policies for Bank
of America, as the insured during the
applicable limitations period and LLOYD'S
UNDERWRITERS AT, LONDON,

        Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO LLOYD'S MOTION TO DISMISS**

# INTRODUCTION

The backdated force-placed wind insurance coverage that Certain Underwriters at Lloyd's, London and Lloyd's, Underwriters at, London ("Lloyd's" or "Defendants") provided to Plaintiff Herta Theberge ("Theberge" or "Plaintiff") was worth no more than the paper it was printed on. It was worthless, providing coverage in name only, because it covered a period of time where there was no risk of loss. Ironically, the policy under which Lloyd's provided force-placed wind insurance coverage to Bank of America ("the Policy"), which Lloyd's improperly submitted in support of its Motion to Dismiss, only serves to highlight not only that Theberge's policy was in fact worthless but also that Bank of America and Lloyd's *knew* that it was worthless. *See* Policy § VIII.B.1, ECF No. 94-2 at 3 ("coverage for each described location shall commence on the date and for the amounts of insurance you have requested, ***provided that no loss has occurred or is in progress as of your request date***.") (emphasis added). If Lloyd's conduct here does not give rise to an unjust enrichment claim, it is hard to imagine what would.

In light of the underlying facts and the highly analogous case law discussed *infra*, it is unsurprising that Lloyd's attempts to distract the Court by raising a variety of specious arguments. Each of Lloyd's arguments fails on the merits for the following reasons.

*First*, Lloyd's hyper-technical argument that Plaintiff's claim should be dismissed as she does not specify the applicable law finds no precedential support in this jurisdiction and is meritless. *Second*, Plaintiff did not have to ***directly pay*** Lloyd's for the backdated insurance coverage in order to have ***directly conferred*** a benefit on Lloyd's. *Third*, Lloyd's retention of the backdated premium payments is unquestionably unjust as Plaintiff received nothing of value in return for such payments. *Fourth*, Plaintiff's mortgage agreement with Bank of America does not have any bearing whatsoever on her unjust enrichment claim against Lloyd's, and therefore does not preclude Plaintiff from proceeding with her claim at this early stage of the proceedings.

1

*Finally,* Lloyd's argument that Plaintiff lacks standing to sue certain Lloyd's entities is unavailing. There is ample evidence that Lloyd's is a unitary, centrally controlled entity, which should not be permitted to exit this litigation piecemeal. Plaintiff is therefore entitled to discovery regarding the factual allegations upon which Lloyd's relies in bringing its motion to dismiss for lack of standing. For all these reasons, Lloyd's motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction should be denied in its entirety.

## FACTUAL BACKGROUND[1]

The Lloyd's Defendants are comprised of Certain Underwriters at Lloyd's London and "Lloyd's, Underwriters at, London."

Defendant Certain Underwriters at Lloyd's, London are all the Names and/or Syndicates who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period. First Amended Complaint ("FAC") ¶¶ 23, 140. Lloyd's of London is a franchise, created to facilitate the sale of insurance through franchisees. *Id.* ¶ 23. As part of this franchise, franchisees known as "Names" or "Underwriters" form Syndicates to underwrite insurance policies, including force-placed wind insurance policies issued to Bank of America. *Id.*

Defendant "Lloyd's, Underwriters at, London" is a surplus line carrier which operates under a letter of eligibility in the State of Florida. *Id.* ¶ 22. It appears to be the only Lloyd's entity which is eligible to write surplus lines insurance in Florida. *Id.*

---

[1] The facts underlying Plaintiff Theberge's claims are outlined in Plaintiffs' Opposition to Bank of America's Motion to Dismiss (ECF No. 96) and are incorporated by reference herein.

**ARGUMENT**

**I.     Plaintiff Has Stated a Valid Unjust Enrichment Claim Against Lloyd's**

   **A.  *Lloyd's Argument Regarding Plaintiff's Purported Failure to Specify the Applicable State Law is Meritless***

Lloyd's cites two cases from outside the Fourth Circuit for the proposition that Plaintiff's unjust enrichment claim should be dismissed for failure to specify which state's law should be applied to the claim.[2]  This proposition, which does not appear to have any precedential support in this jurisdiction, is at odds with the text of Rule 8 of the Federal Rules of Civil Procedure, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The First Amended Complaint clearly alleges a cause of action for unjust enrichment that is more than sufficient to put Defendants on notice of the claims Plaintiff is making.[3]

With respect to the choice of law issue, North Carolina's choice-of-law rules apply because the Court is located there.  *New England Leather Co. v. Feuer Leather Corp.*, 942 F.2d 253, 255 (4th Cir. 1991) ("To decide the choice of law issue, we apply the choice of law rules of the forum state, North Carolina.").  Based on the allegations as pled, and for purposes of this

---

[2] In addition to being non-binding, the cases Lloyd's cites are also inapposite as both of them involved multiple plaintiffs from multiple jurisdictions. *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D 143, 148, 167 (E.D. Pa. 2009); *Avenarius v. Eaton Corp.*, --- F. Supp. 2d ---, No. 11-09-SLR, 2012 WL 4903373, at *7 (D. Del. Oct. 16, 2012).

[3] Even if this Court were to hold that allegations in the First Amended Complaint do not properly allege a cause of action for unjust enrichment, Lloyd's has not identified any prejudice that it has suffered from this allegedly deficient pleading and it would elevate form over substance to grant Lloyd's motion on these grounds.  In light of this lack of prejudice, if the Court determines that it is required that the complaint specify which state's law applies, Plaintiff seeks leave to amend to include that information.  *See* Fed. R. Civ. P. 15(a)(2) (court "should freely give" leave to amend "when justice so requires."); *see also Avenaruis*, 2012 WL 4903373, at *7 (granting plaintiffs from multiple jurisdictions leave to amend to specify the jurisdictions under which they brought unjust enrichment claims).

3

motion only, it appears that Florida law would apply.[4]  *See, e.g.*, *Stetser v. TAP Pharm. Prods.*, Inc., 598 S.E.2d, 570, 580-81 (N.C. Ct. App. 2004); *New England Co.*, 942 F.2d at 255-56.[5] Theberge responds accordingly.

### B.  Lloyd's Insurance Policy with Bank of America Is Not Properly Before the Court

The Court should disregard Lloyd's wind insurance Policy with Bank of America, which Lloyd's submitted along with its brief.  *See* ECF No. 94-2 (Policy excerpts); ECF No. 95-1 (full Policy).  Contrary to what Lloyd's contends, Plaintiff's Complaint did not incorporate the Policy by reference. The Policy is not relevant to her underlying cause of action, which does not hinge on and is completely independent from any contract Lloyd's had with Bank of America.  The cases Lloyd's cites where insurance policies were considered at the motion to dismiss stage are completely inapposite as they involved situations where the language of the policies themselves were central to the plaintiffs' complaints and were referred to or relied on therein.  *See* Defs.' Certain Underwiters' Mem. In Supp of Mot to Dismiss, ECF No. 94-1 ("Lloyd's Memo") at 6.

---

[4] To the extent discovery reveals that another state's law may apply to Plaintiff's claims, that can be addressed at a later stage of the proceedings.  *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (deferring choice-of-law decision because applying the relevant factors was "a very fact intensive inquiry" but applying New Jersey law for purposes of defendants' motion to dismiss "[s]ince Plaintiffs have made their allegations under New Jersey law"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 294 (D. Mass. 2010) (deciding to make choice-of-law determination at a later stage in the proceedings where "more facts [were] needed to determine" where the challenged conduct occurred); *Harper v. LG Elecs. United States, Inc.*, 595 F. Supp. 2d 486, 490–91 (D.N.J. Feb.3, 2009) (deferring to make a choice-of-law decision until the parties presented a more complete factual record).

[5] Plaintiff acknowledges that she brings her claim against Lloyd's on behalf of a nationwide class, but maintains that, at this stage of the proceedings where no class has been certified, no choice of law analysis is necessary with respect to putative class members.  *See Cunningham v. PFL Life Ins. Co.*, 42 F. Supp. 2d 872, 883 (N.D. Iowa 1999) ("Initially, it is important to note that at this point in the litigation, the Court has not certified the Plaintiffs as class representatives. Accordingly, the Court will not make a choice of law determination that will bind the putative class in this Order.  This Order only contemplates the claims of the named Plaintiffs.").

4

In addition to this case being distinguishable from those Lloyd's cites, more analogous case law supports Plaintiff's position. In *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589 (S.D. Ind. 2000), plaintiff alleged that the defendant materially aided a third-party securities broker to sell securities in violation of state law. The defendant sought to have the court consider two documents attached to its motion to dismiss, both of which purported to explain the contours of the contractual relationship between the defendant and the third-party securities broker. The court rejected defendant's argument that it should consider the documents, finding the fact that plaintiff referred to the relationship between the defendant and the third party securities broker was "not enough to require [the court] to examine that contractual relationship to determine whether [plaintiff] has failed to state a claim." *Id.* at 595. The court distinguished the case from those where the proffered exhibit was either the contract between the plaintiff and defendant, or a document which the complaint directly quoted. *Id.*

Moreover, and as discussed below, the meaning and significance of the Policy language is far from clear and cannot be resolved at this early juncture. Plaintiff is entitled to discovery on the entirety of Lloyd's and Bank of America's agreements with one another, including the communications between them and attendant factual circumstances which serve as triggers for coverage to attach, such as requests for coverage and compliance with certain conditions for endorsement. *See, e.g.*, ECF Nos. 94-2 and 95-1. What the Policy means simply cannot be decided in a vacuum at this early stage, nor should it be. *See Hirata Corp.*, 193 F.R.D. at 594 (reasoning that "factual matters, such as the existence of a defense to [plaintiff's] claims, are best resolved at trial, or on summary judgment, where all of the evidence has been mustered by both

sides"). Therefore, the Court should reject Lloyd's invitation to consider the Policy at this early stage of the proceedings.[6]

### C. *Plaintiff Has Stated a Valid Unjust Enrichment Claim Against Lloyd's*

To state a claim for unjust enrichment, a plaintiff must show: (1) the plaintiff has conferred a benefit on the defendant, who had knowledge thereof; (2) the defendant voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *8 (S.D.Fla. Sept. 19, 2011) ("*Williams I*"). Plaintiff has pleaded each of these elements here. *See* FAC ¶¶ 182-188. Moreover, Lloyd's contention that Plaintiff's claim is barred by her express contract with Bank of America, to which Lloyd's is not even a party, should be summarily rejected.

### 1. Plaintiff Conferred a Direct Benefit on Lloyd's.

Plaintiff has sufficiently alleged that she conferred a direct benefit on Lloyd's: namely, "money improperly taken from [her] and retained by … Lloyd's in the form of backdated insurance premiums." FAC ¶ 185. The fact that Plaintiff paid Bank of America for this backdated insurance coverage and Bank of America, in turn, paid Lloyd's is a distinction without a difference under Florida law.[7] While the benefit conferred under an unjust enrichment claim

---

[6] Even if the Court does consider the Policy, it simply provides additional support for Plaintiff's argument that it would be completely inequitable for Lloyd's to retain her premium payments knowing that the backdated wind insurance coverage that it provided was ***completely worthless***.

[7] Lloyd's contends that Bank of America paid premiums to Lloyd's "before and independent of any payment by Theberge to Bank of America." Lloyd's Memo at 10. As an initial matter, Lloyd's claim is not supported by the plain language of the Policy it improperly submitted with its brief, which merely states that if the premium for the property at issue has not been paid by the time a covered loss occurs, Lloyd's may deduct the unpaid premium from the loss payment.

6

must be a "direct benefit," that does not mean that there must be direct contact between the plaintiff and the defendant. *See, e.g., Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at \*5 (S.D. Fla. Oct. 14, 2011) ("*Williams II*"); *Williams I*, 2011 WL 4368980, at \*9; *Ulbrich v. GMAC Mort., LLC*, No. 11-62424-CIV, 2012 WL 3516499, at \*2 (S.D. Fla. Aug. 15, 2012). As the court explained in *Williams I*, a case which involved a similar unjust enrichment claim premised upon the benefits an insurance agency received in connection with the force-placement of insurance:

> [J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims. It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant.

*Williams I*, 2011 WL 4368980, at \*9 (internal citations omitted).

*Virgilio v. Ryland Group, Inc.*, the lone case cited by Lloyd's in support of its position, does not warrant a contrary result. 680 F.3d 1329 (11th Cir. 2012). *Virgilio* involved home purchasers' claims against various entities involved in the development and marketing of a residential community, which the purchasers learned post-sale was adjacent to a former bombing range. *Id.* at 1331. The Eleventh Circuit found that the district court correctly dismissed plaintiffs' unjust enrichment claim against a marketing company hired by the builder because plaintiffs did not "seek to recover money [the marketing company] received as a partial payment for the houses [plaintiffs] bought, instead, they seek the money [the builder] paid for marketing

---

Policy, §VIII.M.4, ECF No. 94-2 at 4. More importantly, Lloyd's contentions are premature since "whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss." *Abels v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009). For the same reason, Lloyd's anemic attempt to contest that Plaintiff has established the second unjust enrichment element (that it voluntarily accepted a benefit from Theberge) must also be disregarded. *See* Lloyd's Memo at 10 n.13.

services[.]"  *Id.* at 1337.  Notably, in reaching this conclusion, the *Virgilio* court did not overrule *MacMorris v. Wyeth, Inc.*, which held that the plaintiff consumer stated a claim against the defendant manufacturer even though the consumer "did not deal directly with the manufacturer who was unjustly enriched."  No. 2:04CV596FTM-29DNF, 2005 WL 1528626, at *4 (M.D. Fla. June 27, 2005); *accord Hill v. Hoover, Co.*, --- F. Supp. 2d ---, No. 1:06-CV-00096-SPM, 2012 WL 4510855, at *1, *9 (N.D. Fla. Oct. 1, 2012) (post-*Virgilio* decision denying the defendant manufacturer's motion to dismiss the plaintiff consumer's unjust enrichment claim, finding that plaintiff conferred a benefit on the manufacturer by purchasing the product from a third-party retailer).

The instant case is analogous to *MacMorris* and *Hill*.  Here, Lloyd's role is similar to that of a manufacturer.  And just as the plaintiffs in *MacMorris* and *Hill* conferred a benefit on the manufacturer even though they paid the retailer for the manufacturer's product, Plaintiff Theberge has conferred a benefit on Lloyd's even though she paid Bank of America for the force-placed wind insurance coverage which Lloyd's provided.  Since Plaintiff conferred a benefit on Lloyd's by paying Bank of America for the very product at issue here, *Virgilio* is inapposite.

Moreover, in arguing that *Williams I* has been "implicitly overrule[d]" by *Virgilio* (Lloyd's Memo at 11 n.4), Lloyd's fails to mention *Ulbrich*.  In *Ulbrich*, which was also decided after *Virgilio*, the court found that plaintiff stated a valid unjust enrichment claim against the insurance agency involved in the force-placement of wind insurance, based upon allegations that it retained "handsome premium payments through improper means" which included, *inter alia*, the retention of premiums associated with backdated policies, notwithstanding the lack of direct

contact between the plaintiff and the insurance company.[8]  2012 WL 3516499, at *1-2. Accordingly, and contrary to Lloyd's arguments, *Virgilio* is distinguishable on its face and does not preclude Plaintiff's unjust enrichment claims as pleaded here.

### 2. Lloyd's Retention of Premiums for Backdated, Worthless Insurance Coverage Is Inequitable.

Accepting premium payments for expired or partially expired insurance coverage is clearly unjust and deserving of a remedy by the Court.  As alleged in Plaintiffs' First Amended Complaint, "backdated insurance results in a windfall for insurance companies, because they obtain premiums from the consumer for a time period where there is no risk, and therefore no claims."  FAC ¶ 132.  Indeed, Lloyd's own Policy with Bank of America confirms that Plaintiffs' allegations are true as it will only provide wind insurance coverage if no loss has occurred or is in progress as of the date Bank of America requests coverage.  Policy, § VIII.B.1, 2, ECF No. 94-2 at 3 ("coverage for each described location shall commence on the date and for the amounts of insurance you have requested, ***provided that no loss has occurred or is in progress as of your request date***.") (emphasis added).  Therefore, the Policy submitted by Lloyd's not only demonstrates that the insurance coverage purchased by Bank of America was worthless, but also that Bank of America and Lloyd's ***knew*** it was worthless when it was charged to the borrower, because their contract with one another specified that it was worthless.  This specific provision renders Lloyd's retention of the premium for backdated coverage unquestionably unjust and inequitable.  Numerous courts (including courts applying Florida law)

---

[8] The *Ulbrich* court was well aware of *Virgilio* because counsel in that matter filed a Notice of Recent Supplemental Authority prior to the court's ruling on its motion to dismiss in that case. *Ulbrich v. GMAC Mortgage, LLC, et al.*, No. 11-civ-62424 (ECF No. 68, Jul. 17, 2012).  The *Ulbrich* court ultimately denied the insurance company's motion to dismiss, rejecting its arguments regarding direct benefit, *see* 2012 WL 3516499, at *1-2, and this Court should reach the same result.

have upheld claims for unjust enrichment based on similar backdating allegations. *See Ulbrich*, 2012 WL 3516499, at *1, *3 (denying motion to dismiss unjust enrichment claim against insurance services company where plaintiff alleged that "policies were backdated … to cover periods of time which had already passed") (applying Florida law); *Williams II*, 2011 WL 4901346, at *2-4 (allowing claim to proceed where plaintiffs alleged that lender "retroactively" purchased backdated force-placed policies) (applying Florida law); *Lass v. Bank of Am.*, 695 F.3d 129, 138-142 (1st Cir. 2012) (finding plaintiff stated a claim for unjust enrichment based on backdating allegations); *Ellsworth v. U.S. Bank, N.A.*, --- F. Supp. 2d. ---, No. C 12-02506 LB, 2012 WL 6176905, at *19 (N.D. Cal. Dec. 11, 2012) (denying insurance company's motion to dismiss plaintiff's unjust enrichment claim premised on its receipt of improper benefits, including "premiums for backdated insurance policies"); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 938-39, 964 (N.D. Cal. 2012) (plaintiff stated valid claim by alleging that defendant backdated "force-placed insurance policies to cover time periods which had already passed and for which there was already absolutely no risk of loss"). This Court should reach the same conclusion.[9]

Lloyd's tortured reading of its own Policy does not support its conclusion that the backdated coverage provided adequate consideration. Lloyd's Memo at 13-14. According to Lloyd's:

> [C]overage provided by Certain Underwriters automatically attached upon the happening of one of three events: (1) Bank of America obtaining an interest in a property without wind insurance coverage during the period of the Policy; (2) the owner of a property under mortgage to Bank of America letting prior wind

---

[9] Predictably, Lloyd's cites the same cases Bank of America cites in an attempt to rationalize its backdating practices. Lloyd's Memo at 14-15. These cases are distinguishable for all of the reasons articulated in Plaintiffs' response to Bank of America's Motion to Dismiss. *See* Pls' Opp. to BOA's Mot. to Dismiss at 15, n. 12 (ECF No. 96).

insurance coverage lapse during the period of the Policy; (3) the inception of the Policy if the borrower had no insurance coverage on the inception date.

Lloyd's Memo at 14. Aside from being irrelevant and improperly before the Court, as Plaintiff's claim against Lloyd's is not premised upon the contents of its Policy with Bank of America, Lloyd's interpretation of this document appears to be at odds with the Policy's language. In making the above argument, Lloyd's appears to be relying on an endorsement to the Policy which states: "[c]overage provided by this endorsement will attach on the effective date shown on the Declarations Page or the date the Mortgagee's interest in the loan attaches, whichever is later." ECF No. 94-2 at 6. Notably, however, this endorsement only provides for *unpaid principal balance coverage*. *See* Policy, Coverage Guaranty and Automatic Coverage Endorsement, ECF No. 94-2 at 6 ("The amount of coverage provided under this endorsement is limited to the unpaid principal balance of the loan on the date of loss"). Here, Plaintiff Theberge was force-placed with wind insurance coverage that *greatly exceeded* her unpaid principal balance. *See* FAC ¶¶ 65-68 (force-placed insurance coverage of $105,100 even though Plaintiff's remaining unpaid principal balance at the time was $5,096.44). Accordingly, it appears that the insurance Lloyd's claims "automatically attached" was much smaller than the amount for which Theberge was charged. Moreover, whether the endorsement applies *at all* is unclear as it contains several conditions precedent which must be satisfied for this coverage to "automatically attach." Specifically, Bank of America must:

1.  maintain procedures to track the status of property insurance on all eligible mortgages;
2.  place all forced order insurance with us [Lloyd's];
3.  take all reasonable steps to secure coverage to protect its interest and our interest in the event that required property insurance is cancelled or lapses. Reasonable steps include, but are not limited to, acting upon receipt of any cancellation or non-renewal notice by immediately notifying us and requesting coverage; and

11

4.　　allow us or anyone we designate to audit [Bank of America's] mortgage portfolio at any time as we deem fit.

Policy, Coverage Guaranty and Automatic Coverage Endorsement, ECF No. 94-2 at 7. Moreover, the endorsement only applies "with respect to property insurance coverage requested by computer tape or direct electronic data interface, for any property not reported to the producer shown on the Declarations Page due to the Mortgagee's erroneous, but not intentional, failure to order property insurance coverage." *Id.* There is no indication that *any*, much less *all*, of these conditions have been met. Indeed, the allegations in the Complaint indicate that at least some of them have not been met, as Bank of America can hardly be said to have taken "reasonable steps" or to have unintentionally failed to secure coverage by waiting *thirteen years* after Theberge originated her loan to notify her that it purportedly required that she maintain wind insurance coverage. FAC ¶ 63. Thus, at this early stage of the proceedings, it is far from clear whether the coverage guaranty Lloyd's cites provided *any* wind insurance coverage whatsoever, much less that it "automatically" provided $105,100 worth of coverage.

Lloyd's also conveniently ignores another provision of the Policy, which also contradicts its self-serving interpretation. Even assuming *arguendo*, that Bank of America received unpaid principal balance coverage under the Policy endorsement cited above, under no circumstances would Lloyd's have provided force-placed insurance coverage in excess of that amount absent a certification that no loss had occurred as of Bank of America's request date. Under "Conditions" for the "Monoline Wind or Hail Insurance Certificate", the Policy states: "coverage for each described location shall commence on the date and for the amounts of insurance you have requested, *provided that no loss has occurred or is in progress as of your <u>request date</u>*." Policy § VIII.B.1, ECF No. 94-2 at 3 (emphasis added). This provision clearly contemplates that coverage will begin as of the date Bank of America *requests* coverage for a specific location, not

12

the date shown on the declarations page of the master Policy. More importantly, since coverage would only be issued pursuant to the certificate if no loss had occurred or was occurring as of the date Bank of America requested wind insurance coverage, any coverage purportedly provided would be **worthless** to both Bank of America and Plaintiff Theberge.[10]

This confirms what Plaintiff has alleged: that Lloyd's got paid for nothing. Lloyd's received premiums for backdated periods of time for which it was guaranteed it would never have to pay out a claim. Such conduct clearly supports Plaintiff's claim for unjust enrichment.

3.    Plaintiff's Unjust Enrichment Claim is Not Barred by Contract.

Finally, Lloyd's argument that Plaintiff's unjust enrichment claim is barred by an express contract covering the same subject matter (Lloyd's Memo at 17-18), also fails for the following reasons.

*First*, Plaintiff does not assert a contract claim against Lloyd's. FAC ¶¶ 184, 185. Therefore, as Plaintiff alleges, there is no adequate remedy at law to compensate Plaintiff for the money improperly taken from her and conferred upon and retained by Lloyd's. *Id.* ¶ 185.

*Second*, Plaintiff's mortgage agreement is with Bank of America, not Lloyd's. Because Plaintiff's remedy at law (her breach of contract claim against Bank of America) is against a different entity than her claim for relief in equity (her unjust enrichment claim against Lloyd's),

---

[10] While Plaintiff has pleaded that Lloyd's did not provide adequate consideration to either her or Bank of America, she is not required to do so, as Lloyd's contends. Lloyd's Memo at 12. Lloyd's reliance on dicta from the Eleventh Circuit stating that "[w]hen a defendant has given adequate consideration to *someone* for the benefit conferred, a claim of unjust enrichment fails" is misplaced. Contextually, it is clear that the "someone" the court was referring to was the individual bringing the unjust enrichment claim. *Baptista v. JP Chase Bank*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (finding that the plaintiff's unjust enrichment claim failed because defendant had provided sufficient consideration to the plaintiff). Indeed, the courts in both *Ulbrich* and *Williams* cited *Baptista*, and correctly focused their inquiry on whether the defendants had provided adequate consideration to the plaintiffs in those matters, and allowed plaintiffs' unjust enrichment claims to proceed. *Ulbrich*, 2012 WL 3516499, at *3; *Williams I*, 2012 WL 4368980, at *8, *11.

13

both may proceed. *McNorton v. Pan Am. Bank of Orlando*, 387 So.2d 393, 399 (Fla. Dist. Ct. App. 1980) (holding that in order for a remedy at law to bar a claim for equitable relief both claims must be asserted against the same person); *accord Williams I*, 2011 WL 4368980, at \*11 (rejecting insurance company's argument that plaintiffs' unjust enrichment claim was barred by mortgage contract, since insurance company "was not a party to the mortgage contract"); *accord*, *Morris v. Wells Fargo Bank, N.A.*, No. 2:11CV474, 2012 WL 3929805, at \*10 (W.D. Pa. Sept. 7, 2012) (allowing unjust enrichment claim to proceed against insurance company based on allegedly improper kickbacks in connection with force-placed insurance, even though mortgage contract barred plaintiff's unjust enrichment claim against bank).[11]

*Third*, Lloyd's contention that Plaintiff's unjust enrichment claim should be dismissed because she should not be permitted to seek a double recovery is easily disposed of. While Plaintiff acknowledges that she will not ultimately be able to recover twice for the same injury, there is no reason that she cannot pursue both claims, which have different elements, are against different parties, and are premised upon different theories of liability, at this early stage of the proceedings. *See Abels*, 678 F. Supp. 2d at 1279 (reasoning, at motion to dismiss stage, that "at this point it would be premature to dismiss the unjust enrichment count simply because an express contract exists").

*Finally*, even if Lloyd's were a party to the mortgage contract and Plaintiff was asserting a claim against Lloyd's based on the mortgage contract (neither of which are true), Plaintiff would be entitled to pursue her unjust enrichment claim as an alternative cause of action. *See, e.g., Williams II*, 2011 WL 4901346, at \*6 ("a party may plead in the alternative for relief under

---

[11] The cases cited by Lloyd's where plaintiffs brought unjust enrichment claims where an express agreement also existed between the parties are distinguishable on those grounds. *See* Lloyd's Memo at 17.

an express contract and for unjust enrichment"); *Williams I*, 2011 WL 4368980, at \*11 (same); *Abels*, 678 F. Supp. 2d at 1279 (allowing plaintiff to pursue contract claim and unjust enrichment claim against bank in connection with its force-placed insurance practices); *Ellsworth*, 2012 WL 6176905, at \*18-19 (same); *McNeary*, 863 F. Supp. 2d at 955-959, 964 (same); *Lass*, 695 F.3d at 140-41 (stating breach of contract and unjust enrichment claim against bank could proceed, reasoning "it is accepted practice to pursue both theories at the pleading stage").

## II. Lloyd's Standing Argument Is Premature and Incorrect.

### A. *The Court Should Not Decide Lloyd's Standing Argument Until The Parties Have Conducted Discovery*

When defendants rely upon factual allegations to challenge a court's jurisdiction, plaintiffs must have an opportunity to test those allegations through discovery. Here, Lloyd's acknowledges that its argument is a "factual (rather than facial) challenge to standing." Lloyd's Memo at 22. When a defendant makes a factual attack on the court's jurisdiction in a motion to dismiss, the court is free to consider matters outside the pleadings, such as testimony and affidavits, in order to determine whether it has the power to hear the case. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990).

However, while "a district court has wide discretion to determine the scope of [jurisdictional] discovery, a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir. 1991); *Lawrence,* 919 F.2d at 1529. The opportunity to present evidence includes the opportunity to conduct discovery for evidence relevant to the jurisdictional question. *Id.*; *see also In re CP Ships Ltd. Sec. Litig.,* 578 F.3d 1306, 1312 (11th Cir. 2009) ("In a factual challenge, the district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss.") (abrogated on other grounds by

15

*Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010)); *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727 (11th Cir. 1982) (reversing district court's dismissal on 12(b)(1) and remanding for jurisdictional discovery); *Chatham Condominium Ass'n v. Century Village, Inc.*, 597 F.2d 1002 (5th Cir. 1979); *Hopper v. Solvay Pharmaceuticals, Inc.*, 590 F. Supp. 2d 1352, 1358 (M.D. Fla. 2008) *aff'd*, 588 F.3d 1318 (11th Cir. 2009).

In *Johnson v. GEICO Cas. Co.*, a district court considering a motion to dismiss on standing grounds in a class action case against an insurance entity with a complex corporate structure deferred ruling on the motion until discovery could be conducted, stating:

> [T]he Court['s] decision to defer ruling on the question of standing is premised on the need for further discovery. Plaintiffs' Amended Complaint appears to treat all GEICO Defendants as a single entity. As Plaintiffs point out, all these companies are affiliates who market their insurance products under the same name, and it is unclear to the Court what role each entity plays with respect to the allegations of the Complaint. Accordingly, the Court concludes that discovery on the issue of standing is warranted before the Court entertains the question of whether GEICO General and GEICO Casualty should be dismissed from this action.

*Johnson v. GEICO Cas. Co.*, 516 F. Supp. 2d 351, 356 (D. Del. 2007). Faced with a similar situation, this Court should follow the same course.

There are three main factual areas where Plaintiff should be allowed discovery prior to resolution of the standing argument. First, Plaintiff should be entitled to test Lloyd's assertions by deposing Mark Hicks, Lloyd's Declarant. Second, Plaintiff should also be allowed to conduct discovery to determine the identities of the parties Defendants are proposing be dismissed. While the Hicks's declaration purports to identify the appropriate Syndicates, it fails to identify which Syndicates it believes are described in the Complaint but to whom the Complaint does not properly apply. *Cf* FAC ¶ 140 *with* Lloyd's Memo, Ex. 2.[12] Finally, the arguments regarding

---

[12] Plaintiffs' counsel discussed this issue with Lloyd's counsel and asked it to identify the syndicates who would be encompassed by the Lloyd's Sub-Class definition but who Defendants

Lloyd's corporate form in Section B below identify numerous areas of disputed fact upon which discovery should be granted before the Court rules on the motion before it.

Nor is Plaintiff seeking discovery without purpose. As the arguments below demonstrate, significant evidence exists which calls Lloyd's assertions into question.

### B. If The Court Does Rule On The Merits, It Should Deny The Motion

Even without the benefit of discovery, information available from the public record makes clear that Lloyd's motion should be denied because Lloyd's is a unitary organization which can be sued as such. Lloyd's cites a number of cases for the proposition that in cases with multiple defendants, the plaintiff must allege harm caused by each defendant.[13] *See* Lloyd's Memo at 21. However, none of the cases it cites involve Lloyd's specifically, or a similarly structured organization. Critically, publicly available information makes clear that, while Lloyd's occasionally attempts to contort itself into whatever form is most advantageous to it at the moment, it remains a unitary organization.

For example, records available from the Florida Office of Insurance Regulation indicate that Lloyd's received its license to issue surplus lines insurance in Florida, as a singular entity named "Lloyd's, Underwriters at, London." *See* Ex. 1.[14] In light of the fact that Lloyd's procured its insurance license in Florida as a single entity, it is troubling that Lloyd's now asserts

---

alleged Theberge did not have standing to sue. Declaration of Sarah W. Steenhoek ("Steenhoek Decl.") ¶ 3. Lloyd's counsel refused to do so. *Id.*

[13] *Dash v. Firstplus Home Loan Trust 1996-2*, 248 F. Supp. 489 (M.D.N.C. 2003), quoted at length by Lloyd's, is distinguishable for two reasons. First, the plaintiff in that case was suing a number of assignees of a mortgage loan, who, unlike the syndicates that make up Lloyd's, had no particular relation to one another. Second, in *Dash*, the court found that the plaintiff did not have standing with respect to *any* of the defendants because the plaintiff did not have a contractual relationship with any of them. *Id.* at 503. In this case, the Defendants have conceded that Plaintiff Theberge has standing to sue a number of Lloyd's syndicates.

[14] All Exhibits cited herein are attached to the Steenhoek Decl.

17

that this entity is "non-existent."  *See* Lloyd's Memo at 5 n.8.  One cannot help but wonder how this "non-existent" entity managed to procure a Florida license.  Indeed, Florida law requires an eligible surplus line insurer to, among other things, provide to the state an authenticated copy of its current financial statement, and to maintain a surplus of not less than $15 million.  Fl. Stat. § 626.918 (c), (d).  Certainly, a "non-existent" entity could neither provide reports to Florida nor maintain a $15 million surplus.  Crucially, the clear reason for the surplus requirement is to ensure that the authorized insurer is able to pay all claims.  If Lloyd's is now claiming not to be one entity, but many independent entities, this raises the question of whether all or some of those allegedly independent entities are writing insurance in Florida without authorization, and, more importantly, whether those entities have the financial ability to cover their insurance liabilities.  For present purposes, it also casts doubt on the assertion that the entity does not exist.

       The more likely scenario, of course, is that Lloyd's is not many independent entities, but is, as it represented to the Florida Office of Insurance Regulation, a single business.  Lloyd's asserts that that it is merely an "insurance marketplace" where independent entities buy and sell policies, but there is abundant evidence that this is simply not the case.  *See* Lloyd's Memo at 22 n. 27.  For example, Lloyd's bylaws make clear that it maintains a "New Central Fund," for the purpose of paying the obligations of any syndicate which is insolvent.[15]  Lloyd's own internal communications regarding insurance in Florida also refer to Lloyd's as a unitary entity.  The Lloyd's "Market Bulletin" attached to Steenhoek Decl. as Exhibit 2 states that "Lloyd's has been approved by the Florida Office of Insurance Regulation (FLOIR) to post reduced collateral… Lloyd's made an application to the FLOIR…"  Ex 2 at 1.  This internal communication belies

---

[15]*See* http://www.lloyds.com/~/media/Files/ The%20Market/Operating%20at%20L loyds/Regulation/Acts%20and%20byelaws/Byelaws/March07ByelawNewCentralFund_pdf.pdf %23search='new%20central%20fund%20byelaw' (last visited January 30, 2013).

Defendants' assertions that Lloyd's is a mere "insurance marketplace." Lloyd's Memo at 22 n. 27. A marketplace does not make applications to regulators, nor does it maintain a bailout fund for its members.

Plaintiffs' First Amended Complaint characterizes Lloyd's as a franchise. *See* FAC ¶ 23. Defendants reject this characterization. Lloyd's Memo at 22 n. 27. However, Lloyd's own documents make clear that it has a "Franchise Board" that works with its "franchisees."[16] In addition, Lloyd's communicates to its members very specific instructions on everything from how to write surplus lines insurance in Florida[17] to how to properly display the Lloyd's logo on documents,[18] much in the way a franchise would communicate requirements to its franchisees. These documents not only serve to rebut Defendants' assertion, but to further demonstrate that Lloyd's is in fact a unitary, centrally controlled entity and that none of the Lloyd's Defendants should be dismissed at this early juncture, prior to discovery, and based on a half-hearted and conclusory declaration which fails to even identify who it is that is seeking dismissal.[19] At a minimum, this raises numerous factual issues that cannot be decided at this stage.

---

[16] *See* http://www.lloyds.com/The-Market/I-am-a/Coverholder/Information-for-Brokers-and-Agents/~/media/Files/The%20Market/Operating%20at%20Lloyds/Regulation/Acts%20and%20b yelaws/Underwriting%20requirements/jun10_Requirements_Underwriting.pdf%23search='under writing%20byelaw' (last visited January 30, 2013).

[17] *See* Ex. 3.

[18] See http://www.lloyds.com/~/media/Lloyds/Reports/Brand%20Guidelines/NEW_LloydsBrand GuidelinesFINAL060809.pdf (last visited January 22, 2013).

[19] It is puzzling that Lloyd's counsel purports to represent "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period" (Lloyd's Memo at 1, 24) yet it fails to identify on whose behalf it makes its standing arguments. Indeed, the fact that the same counsel purports to represent "Certain Underwriters at Lloyd's London" lends further credence to the fact the Lloyd's is a unitary entity.

19

## CONCLUSION

For the foregoing reasons, Lloyd's motion to dismiss for failure to state a claim and for lack of standing should be denied in its entirety.

Respectfully submitted,

Dated: January 31, 2013

/s/Sarah W. Steenhoek
**NICHOLS KASTER, PLLP**
E. Michelle Drake, MN Bar No. 0387366*
Sarah W. Steenhoek, MN Bar No. 0390258*
    *admitted *pro hac vice*
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
E-mail:  drake@nka.com
              ssteenhoek@nka.com

**BERGER & MONTAGUE, P.C.**
Shanon J. Carson**
Lawrence Deutsch**
Robin Switzenbaum**
    ***pro hac vice* applications forthcoming
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
Fax: (215) 875-4604
Email:  scarson@bm.net
              ldeutsch@bm.net
              rswitzenbaum@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Brett Cebulash**
Kevin S. Landau**
    ***pro hac vice* applications forthcoming
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone:  (212) 931-0704
Fax:  (212) 931-0703
Email:  bcebulash@tcllaw.com
              klandau@tcllaw.com

**STOLL STOLL BERNE LOKTING &**

20

**SHLACHTER P.C.**
Scott A. Shorr**
Tim S. DeJong**
     ***pro hac vice* applications forthcoming
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:  (503) 227-1600
Fax:  (503) 227-6840
Email:  sshorr@stollberne.com
     tdejong@stollberne.com

**WHITEFIELD BRYSON & MASON, LLP**
Daniel K. Bryson, NC Bar No. 15781
Karl Amelchenko, NC Bar No. 43387
900 W. Morgan Street
Raleigh, NC  27603
Telephone: (919) 600-5000
Fax: (919) 600-5035
Email:  dan@wbmllp.com
     karl@wbmllp.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Edward W. Ciolko**
Donna Siegel Moffa**
Amanda Trask**
     ***pro hac vice* applications forthcoming
280 King of Prussia Road
Radnor, PA   19087
Telephone:  (610) 667-7706
Fax: (610) 667-7056
E-mail:  eciolko@ktmc.com
     dmoffa@ktmc.com
     atrask@ktmc.com

**GROSSMAN ROTH, P.A.**
Seth E. Miles**
     *** pro hac vice* application forthcoming
2525 Ponce de Leon Blvd., Suite 1150
Coral Gables, FL 33134
Telephone: (888) 296-1681
Fax: (305) 285-1668
Email:  SEM@grossmanroth.com

**SHAPIRO HABER & URMY LLP**
Edward F. Haber**
Adam S. Stewart**

21

     ** *pro hac vice* applications forthcoming

53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Fax: (617) 439-0134
Email: ehaber@shulaw.com
    astewart@shulaw.com

**ATTORNEYS FOR PLAINTIFFS
AND THE  CLASSES**

22

## CERTIFICATE OF SERVICE

I, Sarah W. Steenhoek, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 31, 2013.


Dated: January 31, 2013                    /s/ Sarah W. Steenhoek