# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### Civil Action No. 3:12-cv-487-MOC-DCK

| | | |
|---|---|---|
| DAVID HOLMES, HERTA S. THEBERGE, MARGUERITE K. POTTER, and the MARGUERITE K. POTTER REVOCABLE TRUST, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **DEFENDANTS CERTAIN UNDERWRITERS' REPLY** |
| BANK OF AMERICA, N.A., in its own capacity and as successor by merger to BAC HOME LOANS SERVICING, L.P., SEATTLE SPECIALTY INSURANCE SERVICES, INC., in its own capacity and as successor in interest to COUNTRYWIDE INSURANCE SERVICES, INC., ILLINOIS UNION INSURANCE COMPANY, and CERTAIN UNDERWRITERS AT LLOYD'S LONDON, including all underwriters who underwrote force-placed wind insurance policies for Bank of America, as the insured during the applicable limitations period and LLOYD'S, UNDERWRITERS, AT LONDON | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR LACK OF SUBJECT-MATTER JURISDICTION [D.E. 94]** |
| Defendants. | ) ) ) | |

## I. INTRODUCTION

A single theme underlies the various legal issues raised by Plaintiffs' unjust enrichment claim: Theberge's dispute over any charges she paid relating to lender-placed insurance is with Bank of America, not with Certain Underwriters.[1]  Theberge had a contract with Bank of America, and Bank of America had a separate contract with Certain Underwriters.  Indeed, Theberge cannot allege the requirements of an unjust enrichment claim under Florida law for multiple reasons, including that: (i) she did not directly confer a benefit on Certain Underwriters; and (ii) it would not be inequitable for Certain Underwriters to retain premium Bank of America paid to Certain Underwriters for the insurance Bank of America purchased.

As discussed throughout, while some federal courts have allowed unjust enrichment claims to proceed past the motion to dismiss stage in putative class actions relating to lender-placed insurance, this claim against Certain Underwriters is clearly different: there was no affiliation between Certain Underwriters and the defendants involved in the placement of coverage on Theberge's property, and there has been and can be no allegations of the payment of "kickbacks" between Certain Underwriters and the other defendants.  Certain Underwriters are independent commercial insurers that sold an insurance policy to Bank of America.  Boiled down, Theberge's claim against Certain Underwriters flows from her relationship with Bank of America and emanates from her mortgage contract with Bank of America.  As such, it is clear that Theberge's dispute is with Bank of America, and her claim against Certain Underwriters should be dismissed.

---

[1]  "Certain Underwriters" is used herein to refer to the defendants named in Plaintiffs' First Amended Complaint [D.E. 40] as "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period."  (First Am. Compl., p. 2.)

PD.8269286.1

## II.    LAW & ARGUMENT

### A.    Plaintiffs Fail to State a Claim under Florida Law Because They Have Not Alleged and Cannot Allege that They Directly Conferred a Benefit on Certain Underwriters[2]

Plaintiffs concede that, for their unjust enrichment claim to succeed under Florida law, Plaintiffs must have directly conferred a benefit on Certain Underwriters.  (Opp., pp. 1, 6.) Plaintiffs also concede that they have not alleged that Theberge made a direct payment to or had direct contact with Certain Underwriters, but only that there was "money improperly taken from [Theberge] and retained by . . . Lloyd's in the form of backdated insurance premiums."  (Opp., pp. 6–7 (quoting First Am. Compl., ¶ 185); *see also id.* at ¶ 184.)

As to the particulars behind this passive-voice allegation—which underpins Theberge's claim—Plaintiffs allege that Bank of America paid premium to Certain Underwriters for a lender-placed wind insurance policy.  (First Am. Compl., ¶¶ 23, 186; *see also* Opp. p. 6 ("Bank of America . . . paid Lloyd's . . . .").)  Plaintiffs also allege that Theberge then owed the cost to Bank of America, with any resulting debt secured by the mortgage.  (Theberge Mortg., § 5 [D.E. 40-3]; First Am. Compl., ¶¶ 60, 72–74; *see also* Opp., p. 6 ("Plaintiff paid Bank of America . . . .").)  Thus, Plaintiffs do not—and cannot—allege that any funds paid by Theberge were directly conferred on Certain Underwriters.[3]

---

[2]  This fatal flaw in Plaintiffs' allegations is apparent from the Amended Complaint itself and the exhibits thereto. Thus, even if the Court finds that the Policy is not properly before it (which is disputed, as discussed below), Theberge's claim should still be dismissed on this basis.

[3]  Plaintiffs dispute Certain Underwriters' assertion that Certain Underwriters were to receive the premium at issue from Bank of America before and independent of any payment by Theberge to Bank of America.  Yet, this is clear from the face of Plaintiffs' Amended Complaint (First Am. Compl., ¶ 3 ("Lenders obtain this force-placed insurance from insurance carriers with whom they maintain pre-arranged relationships.")), from Theberge's mortgage contract and from the Policy.  The Policy explicitly States that Bank of America must pay the premium ("We [Certain Underwriters] insure you [Bank of America] . . . if you . . . [h]ave paid the correct premium.") (Policy, § 1 [D.E. 95-1, p. 29]), and does not make Bank of America's liability to Certain Underwriters for the premium contingent upon receipt of payment from mortgagors.  Plaintiffs specifically purport to be unconvinced on this point by the loss-payment provision of the Policy (Opp., p. 6 n.7), but that provision [D.E. 95-1, p. 40] addresses the specific situation in which Bank of America has not yet paid the premium, and allows Certain Underwriters to deduct the premium owed from any loss payment to Bank of America.  Accordingly, even in that "back-up" situation, Bank of America is the payor.

PD.8269286.1

The lack of connection between Bank of America's payment of premium to Certain Underwriters pursuant to the Policy and any payment by Theberge to Bank of America pursuant to her mortgage contract is also clear from the nature of lender-placed insurance: Bank of America must pay the premium to Certain Underwriters regardless of whether Bank of America ever recoups any funds from the mortgagor. As recently explained by a Florida federal court in denying a class certification motion in a putative class action relating to lender-placed insurance:

> Only a portion of LPI [lender-placed insurance] premiums actually get paid by borrowers. Of the borrowers subject to LPI, at any given time approximately 20% have homes in active foreclosure, 16% are in post-foreclosure status, and 40% are 60 days or more delinquent on their loans. Many of these borrowers subsequently enter into some sort of short sale, foreclosure, loan modification, bankruptcy, refinance, payoff, settlement agreement, government-sponsored program, or other agreement whereby the parties compromise their claims against one another and/or finally determine the amounts due and owing on account.

*Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-81373, 2013 WL 139913, at *2 (S.D. Fla. Jan. 10, 2013). If homeowners do not pay their lenders the amounts due under their mortgage contracts, such defaults do not excuse their lenders from paying the premiums. Indeed, in order to obtain insurance protection on the collateral for their loans, lenders must pay the premiums.

On these facts, Florida law is clear: Plaintiffs have failed to allege that they directly conferred a benefit on Certain Underwriters, and their unjust enrichment claim must be dismissed. Plaintiffs fail to acknowledge the trio of fully-reasoned Florida state court cases cited previously by Certain Underwriters (*Griggs*, *Extraordinary Title* and *Peoples National*) (Mot., p. 11), which are controlling and apply the direct-conferral requirement.[4]

---

[4] *Iodice v. U.S.*, 289 F.3d 270, 275 (4th Cir. 2002) (quoting *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1003 (4th Cir. 1998) ("[A federal court applying state law] must rule as the [state] courts would, treating decisions of the [state] Supreme Court . . . as binding, and 'depart[ing] from an intermediate court's fully reasoned holding as to state law only if 'convinced' that the state's highest court would not follow that holding."); *Molinos Valle del Cibao v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011) ("[W]e are applying Florida's substantive law. Where the

In *American Safety Insurance Service, Inc. v. Griggs*, 959 So. 2d 322 (Fla. Dist. Ct. App. 2007), plaintiffs had entered into a profit-sharing agreement with PMI relating to a real estate development project, in exchange for which plaintiffs agreed to relinquish certain promissory notes and rights in PMI's stock. Concurrent with that agreement between plaintiffs and PMI, PMI entered into a separate agreement with defendant American Safety, under which American Safety provided a loan to PMI in exchange for a mortgage on the real estate, which was secured by PMI stock. To secure its rights in the property, American Safety had required the agreement between plaintiffs and PMI as an express condition precedent to American Safety's own agreement with PMI. The Florida court rejected plaintiffs' argument that their agreement with PMI conferred benefits directly on American Safety, finding that plaintiffs' unjust enrichment claim failed as a matter of law because plaintiffs' agreement with PMI did not establish "the requisite direct benefit" to American Safety:

> When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails. American Safety entered into agreements with PMI in which the parties received exactly what they bargained for. The issue is not whether American Safety paid specifically for the security that [plaintiffs] relinquished to PMI. American Safety agreed to purchase the loan and advance additional funds in exchange for a first in priority mortgage, secured by all outstanding shares of PMI. American Safety was permitted to bargain for the terms under which it would provide the loan and additional funds. Both American Safety and [plaintiffs] entered into agreements with PMI that clearly delineated their responsibilities and the benefits bargained for in each agreement. [Plaintiffs] cannot show they conferred a direct benefit that American Safety had not already "paid for" by contracting with PMI . . . .

---

highest court—in this case, the Florida Supreme Court—has spoken on the topic, we follow its rule. Where that court has not spoken, however, we must predict how the highest court would decide this case. Decisions of the intermediate appellate courts—here, the Florida District Courts of Appeal—provide data for this prediction. As a general rule, we must follow the decisions of these intermediate courts.") (internal citations omitted).

4

*Id.* at 331–32 (emphases added; internal citations omitted). In this case, the two agreements are even less connected than in *Griggs*, because the Policy was not contingent on the terms of any mortgage agreement entered into by Bank of America (and vice versa). (*See* First Am. Compl. ¶ 114 ("Borrowers have no say or input on the carriers or terms of the force-placed policies.").) Indeed, and as discussed herein, neither was Bank of America's payment of premium to Certain Underwriters contingent on any payment by Theberge to Bank of America.

Similarly, in *Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400 (Fla. Dist. Ct. App. 2009), plaintiffs asserted an unjust enrichment claim against FPL Group based on fees for FPL Group's anticipated taxes paid by plaintiffs to FPL Group's subsidiary FPL, with which plaintiffs had contracted to buy electricity. The court affirmed the grant of FPL Group's motion to dismiss the unjust enrichment claim, noting, *inter alia*, that plaintiffs had no contract with FPL Group and that plaintiffs could not "allege nor establish that [they] conferred a direct benefit upon [FPL] Group." *Id.* at 404. Thus, even the corporate affiliation between FPL Group and FPL—which connection is not present in this case—was not enough to make the conferral of the benefit sufficiently direct.

In *Peoples National Bank of Commerce v. First Union National Bank of Florida, N.A.*, 667 So. 2d 876 (Fla. Dist. Ct. App. 1996), the court likewise dismissed an unjust enrichment claim where the plaintiff bank sought to claw back funds paid through a non-party bank to the defendant banks: "[T]he plaintiff . . . could not and did not allege that it had directly conferred a benefit on the defendants, the other participant lenders." *Id.* at 879.

Decisions of federal courts applying Florida law, while not controlling, also illustrate the direct-conferral requirement and support dismissal of Plaintiffs' unjust enrichment claim. In *BCIJ, LLC v. LeFevre*, No. 09-551, 2010 WL 1289842 (M.D. Fla. Mar. 24, 2010) (Florida law),

5

the court granted a motion to dismiss an unjust enrichment claim in circumstances in which any benefit conferred was much more direct than alleged in this case. Plaintiff invested funds in Bayonne in exchange for security and an upgrade in a separate real estate deal. Upon plaintiffs' investment, the funds invested were immediately transferred from a trust account to M&I, the owner and holder of the mortgage on Bayonne's development site. When plaintiff learned that the security was defective, it sued M&I for unjust enrichment, alleging that M&I made misrepresentations and engaged in fraud that had encouraged plaintiff to invest. The court held that plaintiff had not directly conferred a benefit on M&I, finding that M&I was not a party to plaintiff's contract under which it had made the investment, and that the funds deposited by plaintiff only "directly benefit[ted] the Seller of the investment units." *Id.* at *6–*7.

*West Coast Life Insurance Co. v. Life Brokerage Partners LLC*, No. 08-80897, 2009 WL 2957749 (S.D. Fla. Sept. 9, 2009) (Florida law), makes clear that Plaintiffs passive-voice allegation that "money improperly taken" from Theberge was "retained by" Certain Underwriters is not sufficient to state a claim. In that case, the court granted defendant PVA's motion to dismiss an unjust enrichment claim, contrasting PVA with the defendants to whom plaintiff allegedly had directly paid commissions:

> [The] Complaint is devoid of any allegation that Plaintiff conferred any direct benefit on Defendant PVA. The closest the . . . Complaint comes to addressing any direct benefit conferred on Defendant PVA is its passive voice allegation that Defendant PVA "received compensation for its role in the transactions."

*Id.* at *11. In *Beary v. ING Life Insurance & Annuity Co.*, 520 F. Supp. 2d 356 (D. Conn. 2007) (Florida law), plaintiff brought an unjust enrichment claim on behalf of participants in an investment plan based on revenue-sharing payments made by third-party mutual funds to the defendant bank ING. The court granted defendants' motion to dismiss based on the "insurmountable obstacle" that plaintiff had failed to allege direct conferral of a benefit,

6

explaining that plaintiff "complain[ed] about payments made to ING not by the Plan participants themselves, but by third parties." *Id.* at 373. There are many other similar federal court decisions applying Florida law.[5]

The lender-placed insurance federal cases cited by Plaintiffs do not outweigh the above authorities. In *Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012), plaintiff sued the mortgage servicer GMAC as well as the insurance-servicing company Balboa Insurance Service, Inc. ("Balboa"). Plaintiff alleged, *inter alia*, that: Balboa paid GMAC kickbacks; Balboa and GMAC shared mailing addresses; and Balboa communicated with property owners on behalf of GMAC. Based on these allegations of lack of separation between GMAC and Balboa, the court rejected Balboa's argument that Balboa had not conferred a direct benefit on plaintiffs: "Plaintiff alleged that she had direct contact with GMAC, and that Balboa gave GMAC kickbacks." *Id.* at *2. *Ulbrich* is not helpful here. First, *Ulbrich*'s interpretation of Florida law is not binding on this Court. Moreover, *Ulbrich* is wrongly-decided and clearly distinguishable: Plaintiffs have not alleged that Certain Underwriters paid kickbacks, but only that they received premium from Bank of America and provided the insurance

---

[5] *Szymczak v. Nissan N. Am., Inc.*, No. 10-7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) ("The one Florida plaintiff . . . does not allege that he purchased his vehicle from defendants. Therefore, his unjust enrichment claim should be dismissed."); *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60055, 2011 WL 1232986, at *3 (S.D. Fla. Mar. 30, 2011) (rejecting plaintiffs' claim based on allegations that defendant had "dominated and controlled its subsidiaries"—which received the funds at issue—because "such allegations of indirect benefits are insufficient to support a claim for unjust enrichment"); *Century Senior Servs. v. Consumer Health Benefit Assoc., Inc.*, 770 F. Supp. 2d 1261, 1267 (S.D. Fla. 2011) ("A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment. In this case, the language of Magnolia's counterclaim does not include any allegation of a benefit conferred directly on to CSS; it claims that the benefits were 'derived' from Magnolia's sales."); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 948 (N.D. Ill. 2009), *rev'd on other grounds*, 657 F.3d 650 (7th Cir. 2011), *aff'd*, 683 F.3d 845 (7th Cir. 2012) ("These allegations of 'indirect' purchases, and Defendants' subsequent alleged 'indirect' enrichment, however, will not support an unjust enrichment claim under . . . . Florida . . . law."); *Swiss Watch Int'l, Inc. v. Movado Grp., Inc.*, No. 00-7703, 2001 WL 36270979, at *4 (S.D. Fla. Sept. 5, 2001) ("[A]ny other allegations . . . would only show that [plaintiff] may have conferred an indirect benefit on [defendant], and as such would be insufficient to state a claim for unjust enrichment."); *see also Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998), *aff'd* 172 F.3d 882 (11th Cir. 1999) (affirming dismissal of unjust enrichment claim on the merits where plaintiffs had "failed to allege that they directly conferred any benefit on [defendants], even though they arguably did so indirectly").

purchased by Bank of America. Likewise, there are no allegations of entanglement with the other defendants such that Plaintiffs' contact with them should be imputed to Certain Underwriters.

Similarly, Plaintiffs incorrectly describe *Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) ("*Williams I*"), as deciding "a similar unjust enrichment claim" (Opp., p. 7), but the court's decision in that case was explicitly based on the plaintiffs' allegation that the defendants "received kickbacks and/or commissions, which were taken directly from the insurance premiums paid by Plaintiffs." *Williams I*, 2011 WL 4368980, at *9 (emphasis added). Moreover, *Williams I* (like *Ulbrich*) is not binding on this Court and appears to have been wrongly decided, based upon the state court decisions discussed *supra*. Further, in *Williams I* (as in *Ulbrich*), the moving defendants were alleged to be affiliates or agents of the other defendants. As such, the court in *Williams I* expressed its concern as follows: "To find otherwise [*i.e.*, to dismiss the unjust enrichment claim,] would mean that a company could set up a shell parent company without any funds, funnel money through that shell company, and essentially launder the 'benefit,' thereby defeating any unjust enrichment claim." *Williams I*, 2011 WL 4368980, at *9 n.5. Here, there is no such danger, because there is no allegation (and nor can there be) that Certain Underwriters were affiliates or agents of the defendants involved in the placement of coverage on Theberge's property. Certain Underwriters acted as commercial insurers, independent of Bank of America and the other defendants.

Plaintiffs also cite two inapposite cases analyzing unjust enrichment claims against manufacturers of allegedly defective products. *Hill v. Hoover Co.*, __ F. Supp. 2d. __, No. 06-96, 2012 WL 4510855 (N.D. Fla. Oct. 1, 2012); *MacMorris v. Wyeth, Inc.*, No. 04-596, 2005 WL 1528626 (M.D. Fla. June 27, 2005). But Certain Underwriters' role is not "similar to that of

a manufacturer" to whom profits are passed by a middleman (Opp., p. 8): Certain Underwriters sold insurance coverage <u>to</u> Bank of America, <u>not through</u> Bank of America as a middleman. Moreover, the reasoning of these cases is specific to the manufacturing context: "[I]ndirect purchases have been allowed to bring an unjust enrichment claim <u>against a manufacturer</u>." *MacMorris*, 2005 WL 1528626, at *4 (emphasis supplied). Plaintiffs disingenuously suggest that *MacMorris* should govern this case because "the *Virgilio* court did not overrule" it. (Opp., p. 8.) *Virgilio* did not need to overrule *MacMorris* because it <u>distinguished</u> it, on the same grounds that *MacMorris* and *Hill* are distinguishable from this case:

> Plaintiffs cite the unpublished opinion in *MacMorris* .... <u>Even putting aside the notable distinction that *MacMorris* was a products liability case</u>, the claims in *MacMorris* are distinguishable from the one here. In the instant case, Plaintiffs do not seek to recover money . . . received as partial payment for the houses they bought; instead they seek the money . . . paid for marketing services under an <u>entirely separate services contract</u>. *MacMorris* is inapposite.

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (emphases added); *see also NOVA Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1007 (11th Cir. 2004) (denying unjust enrichment claim and focusing on the parties' "separate and distinct" obligations under separate contracts: "At best, [plaintiff] conferred an indirect or incidental benefit on" defendant). Defendants cannot rebut *Virgilio*, which addressed a situation—like this one—in which the parties' relations were governed by two separate contracts.[6]

Certain Underwriters had a contract with Bank of America, and Bank of America had a contract with Theberge. These agreements created separate and distinct obligations. There are important reasons for limiting unjust enrichment to situations in which the plaintiff alleges that it

---

[6] In declining to certify the class in a putative class action relating to lender-placed insurance, a Florida federal court recently recognized the relevance of *Virgilio* in similar factual circumstances. *Kunzelmann*, 2013 WL 139913, at *5–*6, *10 (citing *Virgilio*) ("Florida . . . require[s] a benefit to pass directly from the defendant to the plaintiff.").

PD.8269286.1

directly conferred a benefit on a defendant.[7]  This requirement limits the reach of the equitable remedy to prevent liability in cases where—as here—the defendant had no course of dealings with and no sufficient connection to the plaintiff.[8]

**B. Alternatively, Plaintiffs Fail to State a Claim Because They Offer No Facts to Support their Assertion that Retention of the Benefit is Unjust—and the Policy Shows that They Could Not Allege Such Facts**

**1. The Court May Consider the Policy[9]**

Plaintiffs assert that the cases cited in Certain Underwriters' motion in support of the Court's consideration of the Policy are distinguishable because "they involved situations where the language of the policies themselves were central to the plaintiffs' complaints and were referred to or relied on therein."  (Opp., p. 4.)  But Plaintiffs refer to the Policy in the Amended Complaint, asserting that Certain Underwriters underwrote "force-placed wind insurance policies for Bank of America as the insured," and Plaintiffs' claim is premised on the issuance of the

---

[7]  Certain Underwriters agree that, in some situations, "<u>whether</u> a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss."  (Opp., p. 7 n.7 (emphasis added).)  But, where—as here—a plaintiff has failed even to <u>allege</u> the direct conferral of a benefit, there is no bar to dismissal on a defendant's motion.  *Beary*, 520 F. Supp. 2d at 371 (citing *Peoples Nat'l*, 667 So. 2d at 879; *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 674–75 (Fla. Dist. Ct. App. 2000)) (". . . Florida courts have been willing to dismiss claims of unjust enrichment on the pleadings where the plaintiff has failed to allege the requisite elements of the cause of action.").  The many cases described herein—in which courts granted motions to dismiss on the basis of the failure to allege direct conferral—attest to the lack of any such barrier to dismissal.

[8]  Even if this Court were to find that Plaintiffs have sufficiently alleged direct conferral of a benefit, as previously argued, Plaintiffs' unjust enrichment claim is barred because of the existence of Theberge's mortgage contract with Bank of America, the validity of which contract has not been disputed.  (Mot., pp. 17–18.)  There is no reason that Plaintiffs should be permitted to proceed on their unjust enrichment claim against Certain Underwriters while they are pursuing their contractual claims against Bank of America.  If Plaintiffs are successful in their pursuit of Bank of America, they would then be made whole.  If Plaintiffs are not successful in such pursuit, it will be because a court has found that there was nothing objectionable in Bank of America's dealings with Plaintiffs—in which case it would be inconceivable that a court could find that Certain Underwriters, as independent commercial insurers that dealt with Bank of America, had been unjustly enriched.  In these circumstances, this Court should not allow Plaintiffs' unjust enrichment claim to proceed while Plaintiffs are pursuing their underlying contractual claims against Bank of America.  *Cf. Commerce P'ship 8098 Ltd P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 387–88 (Fla. Dist. Ct. App. 1997) (citing *Maloney v. Therm Alum Indus., Corp.*, 636 So. 2d 767, 767–70 (Fla. Dist. Ct. App. 1994)) (requiring subcontractor to show that it had exhausted its legal remedies against general contractor with whom it had contracted before pursuing equitable claim against a third-party, the owner).

[9]  Plaintiffs have not disputed the authenticity of the Policy, so it should not be excluded on that basis.  *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (considering document not attached to the complaint "in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity").

PD.8269286.1

Evidence of Insurance to Theberge under the Policy. Indeed, Plaintiffs seek to recover premium paid (by Bank of America) pursuant to the Policy. (Am. Compl., p. 2, ¶¶ 3, 67, 133, 185–188.)

The one case that Plaintiffs cite in support of their position that the Court may not consider the Policy is inapposite. In *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589 (S.D. Ind. 2000), the court declined to consider a contract introduced by defendants that governed a relationship that was merely "mention[ed]" and "referred to" in the complaint, and which relationship the court found was "not central to [plaintiff's] claim." *Id.* at 595 & n.3. Moreover, *Hirata* explicitly acknowledged that it applied the Seventh's Circuit's "narrow" interpretation of a defendant's ability to introduce documents referenced in a complaint, and as such is not binding on this Court. *Id.* at 592–93. Plaintiffs also selectively refer to *Hirata*, suggesting that a defendant may only properly introduce an exhibit in support of a motion to dismiss where the exhibit is a contract between plaintiff and defendant or a document from which plaintiff quoted in in its complaint. (Opp., p. 5.)

There is no such limitation on this Court's authority to consider the Policy, which is central to Theberge's claim that the coverage provided by Certain Underwriters was "worthless." (Opp., p. 1.) For example, in *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69 (2d Cir. 1995), the court allowed introduction of a contract between defendant and a third party, where the complaint "relie[d] heavily upon its terms and effect, therefore, the Agreement is integral to the complaint, and we consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle it to relief." *Id.* at 72.[10] As another court explained: "[Plaintiff] should not be allowed to make various characterizations about [defendant's document] central to his complaint

---

[10] These principles are well-established. *E.g.*, Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed. 2012) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, a significant number of cases from throughout the federal court system make it clear that the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case.").

11

and simultaneously strike [defendant's] attempt to point out any misrepresentations therein." *Blay v. Zipcar, Inc.*, 716 F. Supp. 2d 115, 119 (D. Mass. 2010); *see also In re Westinghouse Sec. Litig.*, 832 F. Supp. 948, 964 (W.D. Pa. 1993), *rev'd on other grounds*, 90 F.3d 696 (3d Cir. 1996), *aff'd*, 92 F.3d 1175 (3d Cir. 1996) ("Where the allegations of the complaint rest on the construction placed on a document, it is proper to refer to that document at the pleadings stage to determine whether the document can bear the construction placed on it.").[11]

Plaintiffs further assert that they need additional discovery to determine the meaning of the Policy. (Opp., p. 5.) To the contrary, the interpretation of the Policy is a matter of law for the Court to determine from the four corners of the Policy.[12] As such, Plaintiffs are not entitled to discovery somehow to elucidate the "meaning" of the Policy. *E.g.*, *Fudge*, 840 F.2d at 1015 (explaining that "[n]othing [plaintiffs] could have introduced could have affected the disposition of the purely legal questions that the motion to dismiss raised about the [document]").[13]

### 2. Plaintiffs Fail to State a Claim Because They Offer No Facts to Support their Assertion that Retention of the Benefit is Unjust—and the Policy Shows that Plaintiffs Could Not Allege Such Facts

The parties agree that Plaintiffs may only proceed on their unjust enrichment claim if they have alleged circumstances such that it would be inequitable for Certain Underwriters to retain the premium they received from Bank of America. Plaintiffs make two misguided

---

[11] Moreover, the Policy would certainly eventually have to be introduced for Theberge to prove her unjust enrichment claim against Certain Underwriters. *E.g.*, *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) (considering document introduced by defendant where it "was not merely referred to in plaintiff's complaint but was absolutely central to it. Plaintiffs unquestionably would have had to offer a copy . . . to prove their case").

[12] In interpreting insurance contracts, it is axiomatic that courts are bound by the plain meaning of their text. If the language used is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of that language so as to give effect to the policy as it was written. 43 <u>Am. Jur. Ins.</u> § 291 (2d ed. 2013); *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569–70 (Fla. 2011); *Barbee v. Harford Mut. Ins. Co.*, 408 S.E.2d 840, 841 (N.C. 1991).

[13] While on the one hand arguing that their claim is "independent" of the Policy, Plaintiffs then devote considerable attention to arguing—based on the terms of the Policy—that Theberge's unjust enrichment claim is viable because the coverage provided under the Policy allegedly was "worthless." (Opp., pp. 1, 4, 9.) Plaintiffs' insistence on this point belies their position that the Court should not consider the Policy.

arguments that such inequity is present here: (i) that other courts have "upheld claims for unjust enrichment based on similar backdating allegations"; and (ii) that the "backdated" and "worthless" nature of the insurance is shown by the terms of the Policy. (Opp., pp. 9–13.)

As to the first, all but one of the decisions cited by Plaintiffs did not evaluate claims against independent commercial insurers, but rather claims against lenders and insurance agents, insurance servicing companies and affiliated insurance companies. (Opp., pp. 9–10.) Those decisions, therefore, are not "similar" to this one, because Certain Underwriters are differently situated as to Plaintiffs: whether it would be inequitable for banks or related entities, with which a property owner dealt directly in obtaining a loan and communicated about insurance requirements, to retain funds is a very different question than whether it would be inequitable for independent commercial insurers to do so.

The only lender-placed insurance case cited in this respect by Plaintiffs that decided a motion to dismiss filed by an insurer that was not alleged to be affiliated to the other defendants is *Ellsworth v. U.S. Bank, N.A.*, __ F. Supp. 2d __, No. 12-2506, 2012 WL 6176905 (N.D. Cal. Dec. 11, 2012) (California law). *Ellsworth*'s reasoning is undeveloped and unconvincing, and it was decided under California law. *Id.* at *18–*19. Moreover, while the plaintiffs in *Ellsworth* also made allegations of "backdating," the ASIC policy at issue contained no explicit endorsements providing for "automatic coverage" and "backdating" as are present here. *See* ASIC's Motion to Dismiss, *Ellsworth v. U.S. Bank*, No. 12-2506 (N.D. Cal. Aug. 31, 2012) (attaching policy [D.E. 57-1]). *Ellsworth* is also distinguishable and not instructive because a primary allegation against the insurer in *Ellsworth* was that its "standard business practice is to pay kickbacks or commissions (a percentage of the premium) to banks issuing force-placed coverage . . . ." *Id.* at *3. There is no such allegation in this case.

PD.8269286.1

Most important, Bank of America decided to purchase the insurance coverage offered by Certain Underwriters because Bank of America had a need for continuous coverage. It is not for Theberge to complain about the insurance product Bank of America chose to purchase from independent commercial insurers. As explained in the Defendants' prior briefing, continuous coverage—which Plaintiffs refer to as "backdating"—is of value because it ensures that the lender's collateral is protected in the event that a loss occurs during a period of insufficient coverage. Contrary to Plaintiffs' contentions, the language of the Policy underscores the function and value of the continuous insurance coverage purchased by Bank of America.[14]

Thus, the Policy—including the Endorsements—shows that it provided the product purchased by Bank of America: continuous coverage. By providing that product, Certain Underwriters provided adequate consideration to Bank of America for the premium paid, which circumstance defeats Plaintiffs' unjust enrichment claim: "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Griggs*, 959 So. 2d at 331–32.[15] As explained in *Commerce Partnership 8098 Ltd Partnership v. Equity Contracting Co., Inc.*, 695 So. 2d 383 (Fla. Dist. Ct. App. 1997):

---

[14] Plaintiffs point to language in the insurance certificate to suggest that the coverage provided by Certain Underwriters was not continuous. (Policy, § VIII.B.1 [D.E. 95-1, p. 35].) Plaintiffs fail to recognize, however, that—as a matter of law—the certificate language is modified by the language of the "Backdating of Coverage" and "Coverage Guaranty and Automatic Coverage" Endorsements, which provide that coverage may be "backdated" and that coverage <u>automatically</u> attaches. (*Id.* at pp. 22–24.) Plaintiffs' misplaced focus on the language in the certificate over and to the exclusion of the Endorsements is contrary both to the language of the Endorsements themselves—"This endorsement changes the certificate to which it is attached"—and to well-established principles of interpretation of insurance contracts. 2 <u>Couch Ins.</u> § 21:22 (3d ed. 2012) ("[W]hen a[n] . . . endorsement modifies qualifies, or restricts the terms of the original policy, the endorsement controls."); *see also Fireman's Fund Ins. Co. v. Levine & Partners, P.A.*, 848 So. 2d 1186, 1187 (Fla. Dist. Ct. App. 2004); *S. Fire & Cas. Co. v. Kirby's Garage, Inc.*, 590 S.E.2d 1, 3 (N.C. Ct. App. 2004). Plaintiffs' argument based on the limits of the "Coverage Guaranty and Automatic Coverage" Endorsement also misses the point, because Plaintiffs' claim against Certain Underwriters is for allegedly backdated insurance, not for insurance allegedly provided in excess of Theberge's principal balance. (First Am. Coml., ¶¶ 11, 185–188.) Either coverage was improperly "backdated" as Plaintiffs allege, or it was not, and the policy limits are not relevant to that determination.

[15] Plaintiffs incorrectly assert that Certain Underwriters "rel[ied] on dicta from the Eleventh Circuit" on this point and that, "[c]ontextually, it is clear that the 'someone' the court was referring to was the individual bringing the unjust enrichment claim." (Opp., p. 13 n.10.) Neither assertion is true. Certain Underwriters cited the Florida

> The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher.

*Id.* at 388 (quoting *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)). An unjust enrichment claim does not permit a plaintiff to complain about the consideration provided; rather, if the defendant provided consideration, the claim is barred. *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) (quoting *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. Dist. Ct. App. 2000)) (holding that "[u]njust enrichment 'cannot exist where payment has been made for the benefit conferred'" and that plaintiffs had not stated a claim by alleging that they had "overpaid" for the benefit); *see also Asencio v. Wells Fargo Bank, N.A.*, ___ F. Supp. 2d. ___, No. 12-1104, 2012 WL 5900897, at *2 (M.D. Fla. Nov. 21, 2012) (dismissing unjust enrichment claim where plaintiff could not show that defendant failed to give consideration).

Plaintiffs cannot allege that Certain Underwriters did not provide adequate consideration in exchange for the premium at issue, and therefore cannot state a claim for unjust enrichment. At any rate, the consideration provided by Certain Underwriters pursuant to the Policy is an issue between Certain Underwriters and Bank of America. If Theberge has a complaint about the bargain she struck with Bank of America in her mortgage agreement, her remedy lies solely with Bank of America.

---

court's holding in *Griggs* (and not just the Eleventh Circuit *Baptista* decision, which quotes *Griggs*) (Mot., p. 12), and it is clear from *Griggs* that the "someone" in that case was not plaintiff, but rather the third-party PMI. (*See* full discussion of *Griggs, supra*). Plaintiffs also cite *Ulbrich* and *Williams I* in this regard. To the extent those federal cases misapplied the holding of *Griggs*, they are not controlling or instructive. At any rate, even if it were necessary to show that Theberge received adequate consideration to defeat her unjust enrichment claim, she did as well—in the form of the continuous coverage provided to Bank of America, which protected her property.

PD.8269286.1

### C. Plaintiffs Fail to State a Claim Because They Fail to Specify the State Law under which They Assert Their Claim

For the reasons set out above, Plaintiffs' claim against Certain Underwriters should be dismissed with prejudice because Plaintiffs have failed to state a claim for unjust enrichment under Florida law, which Plaintiffs accept for purposes of this motion is the law applicable to Theberge's claim. (Opp., pp. 3–4.) If the Court does not dismiss on that basis, Plaintiffs' claim should be dismissed because Plaintiffs have not specified under which state's or states' laws they assert their claim. While research has not revealed a case addressing this issue within this Circuit, federal courts hearing putative class actions in at least four Circuits (the Third, Sixth, Seventh and Ninth) have dismissed unjust enrichment claims on this basis.[16] Plaintiffs have failed to cite a single case that suggests that this Court lacks authority to dismiss in this circumstance, where Plaintiffs have not bothered to specify the law under which they are asserting their unjust enrichment claim.[17]

Without Plaintiffs' specification of the law under which they make their claim, Certain Underwriters are not able sufficiently to identify and defend against it. *E.g.*, *Avenarius*, 2012 WL 4903373, at *7–*8 (granting plaintiffs leave to amend so defendants could respond under the

---

[16] *Avenarius v. Eaton Corp.*, __ F. Supp. 2d __, No. 11-9, 2012 WL 4903373, at *7 (D. Del. Oct. 16, 2012); *In re Bank Am. Credit Prot. Mktg. & Sales Practices Litig.*, No. 11-2269, 2012 WL 1123863, at *2–*3 (N.D. Cal. Apr. 3, 2012); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 965–66 (N.D. Cal. 2011); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 667–68 (E.D. Mich. 2011); *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009); *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008); *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007). Plaintiffs try to distinguish the *Avenarius* and *Wellbutrin* cases on the grounds that they "involved multiple plaintiffs from multiple jurisdictions." (Opp., p. 3 n.2.) But, of course, so does this putative class action, which Plaintiffs purport to bring on behalf of a "Nationwide Force-Placed Wind Insurance Class." (First Am. Compl., ¶¶ 136, 140.)

[17] Plaintiffs cite four cases (*Snyder*, *Celexa*, *Harper* and *Cunningham*) for the proposition that the choice-of-law analysis should properly be undertaken at a later stage of the proceedings. (Opp., p. 4 nn.4–5.) First, in the cases cited by Plaintiffs, the defendants apparently had not moved to dismiss on the basis that plaintiffs had failed to plead the applicable law; as such, those cases provide no guidance on this issue. Second, Plaintiffs miss the point that Certain Underwriters are not asking the Court to determine what law applies to Plaintiffs' unjust enrichment claim, but rather are asking the Court to find that Plaintiffs' allegations are deficient because they have not specified under which law they attempt to assert their claim.

16

applicable state law, noting that "states analyze unjust enrichment claims differently").[18]  Indeed, if Plaintiffs are intending to assert claims against Certain Underwriters under the laws of states other than Florida, Plaintiffs should so specify now so that Certain Underwriters have the opportunity to consider moving for dismissal of such claims.  *E.g.*, *Wellbutrin*, 260 F.R.D. at 149 (in response to motions to dismiss, finding that "plaintiffs have standing to assert claims only under the laws of those states where the plaintiffs are located or their members reside . . . [and] dismissing those claims arising under all other states").

### D. Plaintiffs Lack Standing to Sue Any Syndicate at Lloyd's Not Subscribing to the Policy under which Coverage Was Provided for Theberge's Property

Plaintiffs do not argue that Theberge has any relationship with or connection to any Syndicate at Lloyd's other than those subscribing to the Policy under which coverage for her property was provided, thus conceding that no such relationship exists.[19]  Rather, Plaintiffs offer two unavailing alleged reasons that Certain Underwriters' standing motion should not be granted: that discovery is necessary prior to the Court's decision on standing; and that "Lloyd's is a unitary organization which can be sued as such."  (Opp., pp. 15–19.)

As to the first, it is entirely improper for Plaintiffs to request "discovery to determine the identities of the parties Defendants are proposing be dismissed."  (Opp., p. 16.)[20]  Plaintiffs do

---

[18]  Plaintiffs suggest that Certain Underwriters must have suffered prejudice to complain about Plaintiffs' failure to identify the law under which they bring their claim.  (Opp., p. 3 n.3.)  As is clear from the above-cited cases, there is no such limitation on this Court's authority to manage this litigation.  At any rate, Certain Underwriters have suffered prejudice because Plaintiffs' gamesmanship prevents Certain Underwriters from being certain as to the legal basis of the claim asserted against them.

[19]  Neither do Plaintiffs offer any serious rebuttal to the many authorities cited by Certain Underwriters for the proposition that the named Plaintiff Theberge must be able to allege that she has been harmed by each of the Defendants, or else her claims against Defendants with whom she has no relation must be dismissed.  Plaintiffs' effort to distinguish *Dash v. Firstplus Home Loan Trust 1996-2*, 248 F. Supp. 2d 489 (M.D.N.C. 2003) is not convincing (Opp., p. 17 n.13), because the fact that the *Dash* court dismissed the claims against all defendants for lack of standing—rather than only against some, as is appropriate here—has no effect on the correct outcome. Plaintiffs' argument that *Dash* is not relevant because of Plaintiffs' unsupported allegations that Lloyd's is a "unitary organization" also fails for the reasons discussed below.

[20]  As explained by a federal court in denying a motion to certify a class, such discovery goals are not appropriate: "Plaintiff appears to propose conducting class discovery to identify all possible defendants, and to then join named

not have the right to discovery to investigate potential targets as to whom Theberge does not have standing.[21]  Defendants have submitted the Policy, which lists the subscribing Syndicates [D.E. 95-1, p. 5], as well as the Hicks Declaration [D.E. 95-2], which identifies the exact same subscribing Syndicates and establishes that the coverage of Theberge's property could only have been provided pursuant to the Policy.[22]  Plaintiffs have not called into question the veracity of these two consistent pieces of evidence.  No further information is necessary or relevant to determine that Theberge only has standing to bring claims against the identified Syndicates, and this Court should proceed to decide this jurisdictional issue.

Certain Underwriters do not dispute that, as illustrated by the cases cited by Plaintiffs, this Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)).[23]  Certain Underwriters assert, however, that all the necessary evidence is already before the Court, and the Court is not required to allow Plaintiffs to engage in an ill-disguised fishing expedition prior to assessing its jurisdiction.  *In re*

---

plaintiffs who would have standing against those defendants.  This unorthodox procedure reverses the traditional approach of seeking class certification on behalf of a class that is represented by named plaintiffs who have standing to represent the putative class."  *Jordan v. Paul Fin., LLC*, No. 07-4496, 2009 WL 192888, at *4 (N.D. Cal. Jan. 27, 2009); *see also Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) ("In a single-claim action, because individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny the class for inadequate representation or to allow other class representatives to step forward.  This dismissal should take place before class certification issues are ever reached.").

[21]  Plaintiffs accuse Certain Underwriters of "fail[ing] to identify on whose behalf" the standing argument is raised (Opp., p. 19 n.19), but it is not Certain Underwriters' responsibility to identify (for Plaintiffs) entities against whom Plaintiffs have no standing to bring the claims asserted.  Moreover, Plaintiffs' assertion that Certain Underwriters' use of Plaintiffs' own label to identify the entities sued somehow suggests that "Lloyd's is a unitary entity" is circular, as it is for Plaintiffs sufficiently to identify the entities sued.  *Id.*

[22]  Underwriters respectfully submit that, based on the evidence already presented, the identity of the subscribing Syndicates cannot be in doubt.  As to the link between the Policy and the coverage of Theberge's property, no discovery is justified on that point either, based on the Hicks Declaration and because Plaintiffs can presumably confirm this link themselves based on the Evidence of Insurance issued to Theberge, which Plaintiffs cite in the Amended Complaint.  (First. Am. Compl., ¶ 67.)

[23]  Plaintiffs also cite *Johnson v. GEICO Casualty Co.*, 516 F. Supp. 2d 351 (D. Del. 2007).  In that case, however, the court noted that "it is unclear to the Court what role each entity plays with respect to the allegations of the Complaint."  *Id.* at 356.  Based on the information already presented, no such lack of clarity exists in this case.

18

*CP Ships, Ltd. Sec. Litig.*, 578 F.3d 1306, 1312 (11th Cir. 2009), *abrg. on other grounds*, 130 S. Ct. 2869 (2010) (quoting *Williamson*, 645 F.2d at 414) (noting that the permitted discovery must be "appropriate to the nature of the motion to dismiss").

Finally, Plaintiffs assert that Certain Underwriters' standing motion should be denied because "Lloyd's is a unitary, centrally controlled entity . . . ." (Opp., p. 2.)[24] There can be no serious contention that Lloyd's is a "single business." (*Id.* at p. 18.) In *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010), which Certain Underwriters cited in their Motion but Plaintiffs ignore, the Eleventh Circuit provided a thorough description of the Society of Lloyd's marketplace:

> The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market. . . . [T]he modern market structure was formalized pursuant to the Lloyd's Acts of 1871 and 1982. Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members," assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies. . . .
>
> Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy. . . . The Names are not liable for the risks that the other Names assume. . . . Crucially, each Name's liability is several and not joint. Thus, the Lloyd's Act of 1982 provides that an "underwriting member shall be a party to a contract of insurance underwritten at Lloyd's only if it is underwritten with several liability, each underwriting member for his own part and not one for another, and if the liability of each underwriting member is accepted solely for his own account."

*Id.* at 1083 (internal citations omitted). Further, and importantly, the Policy itself (which the Court can and should consider in support of this factual attack on standing) proves—consistent

---

[24] Indeed, Plaintiffs purport in this action to have sued a defendant identified as "Lloyd's, Underwriters at, London." (First. Am. Compl., p. 2, ¶ 22.) But, as Certain Underwriters have explained (Mot., p. 23, n.30) and as Plaintiffs' counsel are well aware, no such entity exists. "Lloyd's, Underwriters at, London" is nothing more than a shorthand reference used by the Florida Office of Insurance Regulation ("OIR").

PD.8269286.1

with *Osting-Schwinn*—that Certain Underwriters are not a unitary entity and that each subscriber's liability is several, not joint. The Policy's "Several Liability Notice" Endorsement (Policy [D.E. 95-1, p. 26]) provides:

> The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.[25]

In sum, Plaintiffs' "unitary organization" theory is unsupported, and it is indisputable from the evidence already before the Court that Theberge lacks standing to sue any Syndicate at Lloyd's that did not subscribe to the Policy. Plaintiffs' claim should be dismissed with prejudice as to such Syndicates.

## III.    CONCLUSION

For the foregoing reasons, Certain Underwriters respectfully request that the Court grant their Motion to Dismiss for failure to state a claim on which relief can be granted, and dismiss Plaintiffs' claims against Certain Underwriters in their entirety, with prejudice, and at Plaintiffs' cost. Certain Underwriters also respectfully request that the Court grant their Motion to Dismiss for lack of standing, and dismiss Plaintiffs' claims against Syndicates at Lloyd's other than those subscribing to the Policy under which coverage was provided for Theberge's property (*i.e.*, Syndicates at Lloyd's other than Syndicates 2000, 1084, 4444, 2791, 318, 2003, 4020, 1225, 1200, 2488 and 958) in their entirety, with prejudice, and at Plaintiffs' cost.

---

[25] Plaintiffs' red-herring suggestion that there is a "question of whether all or some of those allegedly independent entities are writing insurance in Florida without authorization" (Opp., p. 18) has been explicitly rejected (twice) by a federal court. In *Lemy v. Direct General Finance Co.*, __ F. Supp. 2d __, No. 11-2722, 2012 WL 2339702 (M.D. Fla. June 19, 2012), the court explained: "The complaint accuses the underwriters of ineligibility to sell surplus line insurance. Documents from the [OIR] confirm that each accused underwriter enjoys eligibility." *Id.* at *4; *see also Lemy v. Direct Gen. Fin. Co.*, __ F. Supp. 2d __, No. 11-2722, 2012 WL 3326342, at *1 (M.D. Fla. Aug. 14, 2012) (stating that the OIR's "approval of the underwriters conclusively resolves whether the underwriters qualify as an eligible surplus lines insurer . . .").

PD.8269286.1

Respectfully submitted this 21st day of February, 2013.

PHELPS DUNBAR LLP

s/ Kevin M. O'Brien
Kevin M. O'Brien
obrienk@phelps.com
N.C. State Bar #43373
Daina Bray
brayd@phelps.com
N.C. State Bar #44247
GlenLake One

4140 ParkLake Avenue, Suite 100

Raleigh, North Carolina 27612-3723

Telephone:   919-789-5300

Facsimile:    919-789-5301

*Attorneys for Defendants Named as "Certain Underwriters at Lloyd's, London including all underwriters at Lloyd's London who underwrote force-placed wind insurance policies for Bank of America as the insured during the applicable statute of limitations period"*

21

## <u>CERTIFICATE OF SERVICE</u>

       I certify that, on this 21st day of February, 2013, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

BUCKLEYSANDLER LLP
Katherine L. Halliday, khalliday@buckleysandler.com
Stephen M. LeBlanc, sleblanc@buckleysandler.com
Matthew P. Previn, mprevin@buckleysandler.com
Robyn C. Quattrone, rquattrone@buckleysandler.com

DEBEVOISE & PLIMPTON LLP
Eric R. Dinallo, edinallo@debevoise.com
Robert D. Goodman, rdgoodman@debevoise.com
Miranda Holmes Turner, mhturner@debevoise.com

GOODWIN PROCTER
David Seth Kantrowitz, dkantrowitz@goodwinprocter.com
Brian M. LaMacchia, blamacchia@goodwinprocter.com
Matthew G. Lindenbaum, mlindenbaum@goodwinprocter.com
David L. Permut, dpermut@goodwinprocter.com

KESSLER TOPAZ MELTZER & CHECK LLP
Peter H. LeVan, Jr., plevan@ktmc.com

MCGUIREWOODS LLP
Steven N. Baker, sbaker@mcguirewoods.com
Bradley R. Kutrow, bkutrow@mcguirewoods.com

NELSON LEVIN DE LUCA & HAMILTON, LLC
David Leonard Brown, dbrown@nldhlaw.com
Brady A. Yntema, byntema@nldhlaw.com

NICHOLS KASTER, PLLP
E. Michelle Drake, drake@nka.com
Sarah W. Steenhoek, ssteenhoek@nka.com

ROBINSON, BRADSHAW & HINSON, P.A.
Nathan C. Chase, Jr., nchase@rbh.com
Robert Evans Harrington, rharrington@rbh.com

WHITFIELD, BRYSON & MASON, LLP
Daniel Kent Bryson, dan@wbmllp.com

                                           s/ Kevin M. O'Brien
                                           Kevin M. O'Brien