UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL ACTION NO. 3:12-CV-00487-MOC

| | |
|---|---|
| DAVID HOLMES, HERTA S. THEBERGE, MARGUERITE K. POTTER, AND THE MARGUERITE K. POTTER REVOCABLE TRUST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., in its own capacity and as successor by merger to BAC HOME LOANS SERVICING, LP; SEATTLE SPECIALTY INSURANCE SERVICES, INC., in its own capacity and as successor in interest to COUNTRYWIDE INSURANCE SERVICES, INC., ILLINOIS UNION INSURANCE COMPANY, AND CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, including all underwriters who underwrote force-placed wind insurance policies for Bank of America, as the insured during the applicable limitations period and LLOYD'S, UNDERWRITERS AT, LONDON,<br><br>Defendants. | DEFENDANT SEATTLE SPECIALTY INSURANCE SERVICES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT |

Defendant Seattle Specialty Insurance Services, Inc. ("SSIS") respectfully submits this

Reply in support of its Motion to Dismiss the claims asserted against it in the Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The allegations in Plaintiffs' Amended Complaint do not establish that SSIS has done anything wrong or that it should be held liable for the acts of an entirely separate and unaffiliated corporation. SSIS played a very minor but entirely appropriate and permissible role in procuring lender-placed wind insurance ("wind LPI") for two of the named Plaintiffs when their existing wind coverage was insufficient to satisfy Bank of America's (the "Bank's") requirements. These facts fail to establish Plaintiffs' claims for unjust enrichment and tortious interference.

Plaintiffs' response to SSIS' Motion to Dismiss ("SSIS' Mot. to Dismiss"), December 17, 2013, ECF No. 71, argues that dismissing the claims would require factual determinations beyond the scope of a motion pursuant to Fed. R. Civ. P. 12(b)(6). Pls.' Response in Opp'n to SSIS' Mot. to Dismiss, January 31, 2013, ECF No. 98 ("Pls.' Opp'n"). To the contrary, it is evident from the face of the Amended Complaint that Plaintiffs have failed to plead facts sufficient to establish critical elements of each of their claims of unjust enrichment or tortious interference or to impose successor liability on SSIS.

## ARGUMENT

I. **THE AMENDED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT SSIS IS LIABLE AS THE SUCCESSOR-IN-INTEREST TO COUNTRYWIDE INSURANCE SERVICES, INC.**

The Amended Complaint ("Compl."), October 30, 2012, ECF No. 40, does not allege sufficient facts to support Plaintiffs' legal conclusion that SSIS is liable for the actions of Countrywide Insurance Services, Inc. ("CIS") as its successor-in-interest. While SSIS disagrees with this conclusion because, as a legal and factual matter, it is not CIS' successor-in-interest, that is not the issue before this Court nor is it the focus of SSIS' Motion to Dismiss. Rather, the

fundamental flaw in Plaintiffs' complaint falls squarely within the Court's purview on a motion pursuant to Fed. R. Civ. P. 12(b)(6).

In order to rule in SSIS' favor, the Court must find that the Amended Complaint does not sufficiently allege a factual basis for imposing successor liability; it need not make a determination as to whether SSIS actually is the successor-in-interest or is liable as such. It is readily apparent that the Amended Complaint's allegations are deficient in this regard. The purchase of assets – which is all that is alleged, Compl. ¶ 20 – does not ordinarily include a transfer of liability for the seller's prior acts. *See* SSIS' Mot. to Dismiss at 7-8. Therefore, in order to plead successor liability sufficiently, Plaintiffs had to allege that a state law exception to the general presumption against successor liability for asset purchasers applies. *See, e.g., Nova Molecular Technologies, Inc. v. Penn Specialty Chemicals, Inc.*, No. 08-2039-STA, 2009 WL 564433, at *5 (W.D. Tenn. Mar. 5, 2009) (dismissing claim for failure to allege facts supporting application of a state law exception). The Amended Complaint does not allege any facts from which one could conclude, or even plausibly assert that (1) SSIS expressly or impliedly assumed the obligations of CIS; (2) that the Balboa-QBE transaction was a *de facto* merger[1]; (3) that SSIS is a mere continuation of CIS; or (4) that the Balboa-QBE was a fraudulent effort to avoid the liabilities of the predecessor. *See* SSIS' Mot. to Dismiss at 8, n.4; Pls.' Opp'n at 5 (citing *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008). Plaintiffs' response to the Motion to Dismiss fails to adequately dispute this, and as numerous courts have held, this failure warrants dismissal. *See Brockway v. JP Morgan Chase Bank*, No. 11CV2982 JM BGS, 2012 WL 4894253, at * 3 (S.D. Cal. Oct. 15, 2012) (dismissing claims with prejudice where plaintiff failed to set forth sufficient allegations to depart from the general rule

---

[1] Even this allegation would be insufficient because Plaintiffs would also need to establish that the acquisition resulted in a *de facto* merger of CIS and SSIS.

3

against successor liability for the predecessor's torts); *Hayden Capital USA, LLC v. Northstar Agri Indus., LLC*, No. 11 CIV. 594 DAB, 2012 WL 1449257, at *4-5 (S.D.N.Y. Apr. 23, 2012) (dismissing claim asserting successor liability for failure to allege sufficient facts to establish that one of the exceptions applies); *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1367-68 (S.D. Fla. 2011) ("If Plaintiffs wish to claim [defendant] is liable as a successor in interest, they must properly allege facts supporting that claim in a Complaint."); *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1305 (S.D. Fla. 2009) (allegations that Bank of America purchased Countrywide insufficient to establish successor liability);[2] *Ghouth v. Conticommodity Servs., Inc.,* 642 F. Supp. 1325, 1328–29 (N.D. Ill.1986) *abrogation on other grounds recognized in CIB Bank v. Esmail*, No. 04-C-4870, 2004 WL 3119027, at *7, n.5 (N.D. Ill. Dec. 28, 2004) (holding that plaintiffs failed to allege sufficient facts to establish an exception to general rule against successor liability); *Forrest v. Beloit Corp.*, No. 00-CV-5032, 2001 WL 1251460, at *2 (E.D. Pa. Sept. 21, 2001) ("the facts alleged in the complaint fail to support Plaintiff's claim that HII is liable as a successor for Beloit, whether through the product line theory or another exception to the general rule of non-liability for successor corporations.").

Although this Court need not, and indeed should not, make any factual determinations, SSIS must respond to Plaintiffs' assertion that it is attempting to engage in a "shell game" by contesting Plaintiffs' assertion of successor liability, Pls.' Opp'n at 1, and that SSIS' argument is contrary to the position taken in another lawsuit. *Id.* at 7. The Dickson Declaration attached to Plaintiffs' opposition states that SSIS took over the *business function* previously performed by

---

[2] In their opposition, Plaintiffs argue that *Infante* is inapposite because the Amended Complaint "pleads facts far beyond those in *Infante*." Pls.' Opp'n at 6, n.7. While Plaintiffs have included more details about the Balboa asset sale and referenced press releases and other public statements about the sale, the Amended Complaint is just as deficient as the *Infante* Complaint with respect to pleading facts to establish an exception to the general rule against successor liability.

4

CIS and Balboa Insurance Services ("BIS"), specifically the function of procuring wind LPI for borrowers with mortgages serviced by GMAC Mortgage LLC following the sale of BIS' assets. *See* Exhibit 1 to Sarah W. Steenhoek Declaration to Pls.' Opp'n ¶4. Taking over the business functions of another entity does not give rise to successor liability. *See In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1010, 1015 (D. Mass. 1989) (purchasing corporation's uninterrupted continuation of seller's normal business operations is neither necessary nor sufficient to impose successor liability). There is no inconsistency here between the Dickson Declaration and SSIS' argument that it was not the successor-in-interest to CIS.[3] SSIS is not attempting to mislead the Court with its argument; it is simply pointing out the flaws in Plaintiffs' attempt to allege successor liability here.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST SSIS UNDER FLORIDA LAW.

Plaintiffs suggest that SSIS' arguments are fact-based and thus premature at this stage of the litigation. To the contrary, SSIS' Motion to Dismiss argues that once stripped of its legal conclusions, the Amended Complaint does not allege sufficient facts to state a plausible claim for unjust enrichment. This argument aligns precisely with the analysis this Court must conduct evaluating a motion filed pursuant to Fed. R. Civ. P. 12(b)(6). *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) *cert. denied*, 132 S. Ct. 1960 (2012) ("A court decides whether [the pleading] standard is met by separating the legal conclusions from the

---

[3] Additionally, SSIS believes it is important for the Court to have the benefit of some additional background on the context of the Dickson Declaration. It was submitted in connection with a motion for preliminary approval of a class settlement agreement in a case involving LPI for individuals with mortgages serviced by GMAC Mortgage LLC. The Declaration was included to provide that court with information to explain the scope of the release contemplated in the parties' settlement agreement and in particular why entities that were not named as defendants in the lawsuit were being granted a release. SSIS, in particular, was granted a release because the settlement class included borrowers who had LPI policies procured by SSIS rather than the named defendant BIS; it was not granted a release because of any admissions of successor liability.

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'") (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 1949-50 (2009)).  Specifically, and as set forth in detail in SSIS' Memorandum, the Amended Complaint does not include sufficiently detailed factual allegations to establish two of the requisite elements for unjust enrichment in Florida and as a result this Court cannot infer that SSIS is liable the claim.

### A.  Plaintiffs Have Not Alleged Sufficient Facts to Establish that They Conferred a Direct Benefit on SSIS as Florida Law Requires.

The most glaring deficiency with the unjust enrichment claim against SSIS is Plaintiffs' failure to allege that they conferred a benefit directly on SSIS.  As the recent decision of the Court of Appeals for the Eleventh Circuit in *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012), clarified, a complaint that does not include such allegations is deficient and should be dismissed.  In *Virgilio*, certain defendants received a percentage of the sales price paid by each plaintiff home buyer to their home's builder as payment for services defendants rendered to the builders.  The home buyers and defendants both had contracts with the builder, but there was no agreement or direct interaction between the buyers and the defendants.  *Id.* at 1333.  The Amended Complaint sets forth an analogous arrangement:  SSIS receives a percentage of the LPI premiums paid by the Plaintiffs as payment for services rendered to the Plaintiffs' mortgage servicers.

To be sure, there are differences in the underlying factual scenarios, as Plaintiffs point out, *see* Pls.' Opp'n at 14, because *Virgilio* and this case do not involve exactly the same products, but these distinctions are not relevant.  For example, Plaintiffs note that they are differently situated than the *Virgilio* plaintiffs because they did not choose to purchase LPI and because they have alleged that the overall cost of the LPI was inflated by the cost of the payment

6

to SSIS. Pls.' Opp'n at 14. Neither argument has any bearing on the applicable legal holding from *Virgilio*, *i.e.*, what constitutes conferral of a direct benefit. The pertinent facts from *Virgilio* pertain to the relationships between the plaintiffs, the entity with whom plaintiffs had contracted, and the relationship or lack thereof between plaintiffs and defendants. Both in *Virgilio* and here, the plaintiffs and defendants both had agreements with a third entity, the home builder and the mortgage servicer, respectively. And both in *Virgilio* and here, plaintiffs paid the third entity pursuant to one agreement and the defendant received a portion of that payment pursuant to a wholly separate agreement between the defendant and the third entity. Further, although Plaintiffs contend that *Virgilio* is distinguishable because of "the unique posture of force-placed insurance," Pls.' Opp'n at 14, the only court to discuss *Virgilio*'s application to LPI cases reached the opposite conclusion. Specially, a Florida district court denying a motion for class certification in a case challenging the very type of LPI commission payments alleged here, recognized that *Virgilio*'s direct benefit requirement is a "roadblock" to recovery under an unjust enrichment theory. *See Kunzelmann v. Wells Fargo Bank. N.A.*, No. 11-CV-81373-DMM, 2013 WL 139913, at *5 (S.D. Fla. Jan. 10, 2013).[4]

### B. Plaintiffs Have Not Alleged Sufficient Facts to Establish that SSIS' Retention of Any Benefit Would Be Unjust.

The Amended Complaint also fails to include factual allegations to support Plaintiffs' legal conclusion that SSIS' alleged retention of any benefit was inequitable. To the contrary, the

---

[4] The earlier decisions from Florida courts allowing unjust enrichment claims against LPI providers to proceed all either pre-date *Virgilio*, *see Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011); *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sept 19, 2011); *Abels v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1276 (S.D. Fla. 2009) or did not discuss its implications at all. *See Ulbrich v. GMAC Mortgage, LLC*, No. 11-62424, 2012 WL 3516499 (S.D. Fla. Aug. 15, 2012). Plaintiffs' citation to cases refusing to dismiss unjust enrichment claims arising under other states' laws are not at all relevant or persuasive because those courts were not applying Florida's direct benefit requirement. As a result these cases should have no bearing on the Court's analysis.

7

alleged facts show that Plaintiffs received valuable insurance coverage in accordance with the terms of their mortgage agreement and that SSIS performed work in exchange for its receipt of any benefit. Compl. ¶ 20 ("SSIS provides lender-placed insurance services to the financial services industry"); ¶¶ 52, 95, 103, 112 (identifying SSIS as Bank of America's insurance agency).

Plaintiffs' assertion that the LPI coverage was worthless because it was backdated is not supported by the terms of Plaintiffs' mortgage agreements, the position of the regulators who have weighed in on the issue, or the decisions of many courts. *See* Pls.' Opp'n at 13-14; Memorandum in Support of Defendant Illinois Union Insurance Company's Motion to Dismiss, ECF No. 75, December 19, 2012, at 17-21. In addition to the wealth of authority provided in support of this position by SSIS and Defendant Illinois Union Insurance Company, the Consumer Financial Protection Bureau ("CFPB") has recently endorsed "retroactive" placement of lender-placed insurance. In its official interpretation of final rules issued on January 17, 2013 relating to mortgage servicing under the Real Estate Settlement Procedures Act, 12 U.S.C. § 1972 and the Truth in Lending Act, 15 U.S.C. § 1602, the CFPB explained that LPI may be applied and charged retroactively to "the first day of any period of time in which the borrower did not have" continuous hazard insurance coverage. *See* Mortgage Servicing Rules Under the Real Estate Settlement Act (Regulation X); Final Rule, *official interpretation*, 78 Fed. Reg. 10,892 (Feb. 14, 2013).[5]

---

[5] The CFPB's new servicing rules also did not prohibit servicers from receiving commissions associated with the cost of insurance tracking and LPI administration, despite comments from consumer groups and trade associations urging it to do so. *See id.* at 78 Fed. Reg. 10776.

8

### III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE AGAINST SSIS.

#### A. Plaintiffs Have Not Alleged Sufficient Facts to Support Their Legal Conclusions that SSIS Intentionally and Unjustifiably Interfered with Plaintiffs' Contractual Relations

Plaintiffs again confuse asserting legal conclusions with alleging adequate facts in their efforts to salvage their tortious inference claim.[6] The conclusory allegations that SSIS acted "in bad faith" and that SSIS' actions were "unjustified," Compl. ¶ 180, are far from sufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Rather than pointing to factual allegations that support their legal conclusions regarding SSIS' intent, Plaintiffs primarily argue that they were not required to plead malice. Pls.' Opp'n at 20. In support, Plaintiffs rely on cases holding that the determination of whether a defendant actually acted with malice, or another improper motive, is a question of fact for the jury. *Id.* While the latter point may be correct, Plaintiffs must at least allege facts that if ultimately proven true would be sufficient to establish the requisite intent. Both of the cases cited by Plaintiffs for the contrary position – that Plaintiffs need not plead malice or other bad motive in their Complaint – pre-date the seminal Supreme Court cases, *Twombly* and *Iqbal*, imposing more stringent pleading requirements and are of questionable value to the extent they permitted a lesser degree of pleading specificity. *See* Pls.' Opp'n at 19-20 (citing *Future Tech Int'l v. Tae II Media, Ltd*, 944 F. Supp. 1538, 1570 (S.D. Fla. 1996) and *Venezia Resort, LLC v. Favret*, No. 07-CV-74, 2007 WL 1364342, at *3 (N.D. Fla. May 8, 2007)).

---

[6] Plaintiffs quibble with SSIS' citation to Florida cases that identify five elements for a claim of tortious interference and argue that the proper test includes only four elements. *See* Pls.' Opp'n. at 18, n. 14. This distinction is one of form rather than substance. The cases SSIS cited list the requirements to interfere intentionally and without justification as separate elements. *See McKinney-Green, Inc. v. Davis*, 606 So.2d 393, 397-98 (Fla. Dist. Ct. App. 1992). Plaintiffs' preferred cases instead include one element that combines these two requirements with an "and." *See, e.g., Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). Under either framework both intent and lack of justification are required pleading elements.

To the extent that Plaintiffs attempt to persuade this Court that justification is an affirmative defense in Florida that need not be considered on a motion to dismiss, their argument sweeps too broadly. First, under either explication of the elements of a tortious interference claim, the alleged interference must be unjustified. *See McKinney-Green, Inc.*, 606 So.2d at 397-98; *Tamiami Trail Tours, Inc*., 463 So.2d at 1127. Second, while some cases have held that defendants have the burden of pleading privilege or another justification as an affirmative defense, most still require at a minimum that the plaintiff must first plead a *prima facie* case that the interference was unjustified. *See Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1158 (11th Cir. 2001) (discussing question of who bears the burden of persuasion with respect to proving a defendant's conduct was justified); *see also Unistar Corp. v. Child*, 415 So.2d 733, 734-35 (Fla. Dist. Ct. App. 1982) (placing burden on plaintiff to show unjustified interference and then requiring defendant to prove that interference was lawful). If a complaint alleges facts showing that the defendant's conduct was justified (or no facts showing that it was unjustified), the fact that the defendant could separately raise justification as an affirmative defense need not serve as a barrier to dismissal. *See* Restatement (Second) of Torts § 767 (1979) ("[T]he complaint may itself show that a defense is applicable and thus not stand against a demurrer or motion to dismiss.")

The Amended Complaint also fails to allege that SSIS interfered without justification because the alleged facts demonstrate that SSIS is not a stranger to the relationship between Plaintiffs and Bank of America. *See Peoples Gas Sys. v. Posen Constr., Inc.,* No. 11-CV-231, 2011 WL 5525346, at *2 (M.D. Fla. Nov. 14, 2011)(explaining that a party is not a stranger to a contract or business relationship if its actions are necessitated by that relationship); *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.,* 13 So.3d 1090, 1094 (Fla. Dist. Ct. App.

10

2009) (holding that a defendant cannot be held liable for tortious interference with a business relationship when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed). Plaintiffs contend that SSIS is a stranger because it did not have a direct relationship with Plaintiffs and that SSIS' relationship to Bank of America is insufficient to demonstrate that it was not a stranger to the relationship. Pls.' Opp'n at 22-23. In so doing, Plaintiffs mischaracterize both SSIS' argument and the Florida case law.

The applicable case law holds that a party cannot tortiously interfere with a contractual or business relationship if the party is not a stranger *to that relationship*. *See Peoples Gas Sys.*, 2011 WL 5525346 at *2 (holding that plaintiff failed to state claim for tortious interference where the defendant's conduct was necessary to the execution of plaintiff's contract with the county); *Gunders Auto Center v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x. 819, 822 (11th Cir. 2011) (holding that complaint failed to state a claim where its allegations showed that State Farm had a protectable interest in the plaintiff's relationship with State Farm's customers); *Palm Beach Cnty Health Care Dist.*, 13 So.3d at 1094 (finding that the District was an interested third party to the counterclaim plaintiff's business relationships and distinguishing a case where the defendant had a relationship with the plaintiff but no connection to the plaintiffs' business relationship with which defendant had supposedly interfered). Thus, it is not SSIS' connection to either Plaintiffs or Bank of America specifically that is relevant, but rather SSIS' connection to the relationship between them. The Amended Complaint alleges that SSIS had a financial interest in the relationship between Plaintiffs and Bank of America and that SSIS was necessary to the relationship because SSIS' actions facilitated the Bank's ability to enforce the contract and ensure that Plaintiffs' maintained continuous coverage. *See* Compl. ¶¶ 52, 95, 101, 103 (identifying SSIS as the insurance agency for the LPI lender placed by the Bank on the Holmes

and Potter properties); *id.* ¶108 ("During the applicable time frame, [the Bank] and its insurance agencies (such as Seattle Specialty) tracked BOA's loans, including Plaintiffs' loans, to ensure that borrowers' insurance coverage complied with [the Bank's] internal insurance requirements.'"). In light of these allegations, the Amended Complaint fails to state a claim against SSIS for tortious interference.

> **B. Plaintiffs Have Not Alleged Sufficient Facts to Establish that Their Supposed Injuries Were Caused by SSIS' Alleged Interference.**

The Amended Complaint also does not allege that Plaintiffs' obligation to pay for these LPI charges was the result of SSIS' alleged interference. Plaintiffs' obligation to maintain adequate hazard insurance as well as their obligation to pay for any LPI once it was obtained arises from the terms of their mortgage agreements. *See* Compl. ¶¶ 32-33; 59-60; 86-87. The Amended Complaint expresses Plaintiffs' dissatisfaction with having to pay LPI premiums, but these factual allegations support nothing more than the conclusion that SSIS facilitated the procurement of their LPI. The Court should not accept Plaintiffs' conclusion that SSIS caused Plaintiffs' alleged injuries because doing would require the Court to ignore the many preceding causal steps that have been pleaded which led to the placement of LPI on Plaintiffs' property, most importantly Plaintiffs' failure to maintain adequate insurance on their own.

Additionally, Florida law requires Plaintiffs to plead facts to establish that SSIS had "a specific intent to interfere with the [contractual] relationship." *See Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So.2d 810, 814 (Fla. Dist. Ct. App. 2002); *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1372 (M.D. Fla. 2009) ("Without sufficient allegations of a specific intention to induce a breach, Plaintiffs' claim for tortious interference must fail."). The Amended Complaint includes no allegations that SSIS had a specific and particular knowledge of the terms of Bank of America's mortgage agreements with the borrowers, and it certainly does

not allege that SSIS took any acts specifically intended to cause a breach of those agreements. At most, the Amended Complaint alleges that SSIS knowingly participated and contributed to acts that Plaintiffs consider a breach of their agreements. These allegations are insufficient for this Court "to infer more than the mere possibility of misconduct," *Iqbal,* 556 U.S. at 679, and fail to satisfy the federal pleading requirements.

## CONCLUSION

For the foregoing reasons, SSIS respectfully requests that this Court grant its Motion to Dismiss and dismiss the claims asserted against it in their entirety.

Dated:  February 21, 2013　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　s/ Robert E. Harrington
　　　　　　　　　　　　　　　　　　　　Robert E. Harrington
　　　　　　　　　　　　　　　　　　　　N.C. Bar No. 26967
　　　　　　　　　　　　　　　　　　　　rharrington@rbh.com
　　　　　　　　　　　　　　　　　　　　Nathan C. Chase, Jr.
　　　　　　　　　　　　　　　　　　　　N.C. Bar No. 39314
　　　　　　　　　　　　　　　　　　　　nchase@rbh.com

　　　　　　　　　　　　　　　　　　　　**ROBINSON, BRADSHAW & HINSON, P.A.**
　　　　　　　　　　　　　　　　　　　　101 North Tryon Street, Suite 1900
　　　　　　　　　　　　　　　　　　　　Charlotte, NC 28246
　　　　　　　　　　　　　　　　　　　　Tel.: 704.377.2536
　　　　　　　　　　　　　　　　　　　　Fax: 704.378.4000

　　　　　　　　　　　　　　　　　　　　Robyn C. Quattrone (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　rquattrone@buckleysandler.com
　　　　　　　　　　　　　　　　　　　　Katherine Halliday (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　khalliday@buckleysandler.com

　　　　　　　　　　　　　　　　　　　　**BuckleySandler LLP**
　　　　　　　　　　　　　　　　　　　　1250 24th Street NW, Suite 700
　　　　　　　　　　　　　　　　　　　　Washington, DC 20037
　　　　　　　　　　　　　　　　　　　　Tel.:  202.349.8000
　　　　　　　　　　　　　　　　　　　　Fax:  202.349.8080

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Seattle Specialty Insurance Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was electronically filed today with the Clerk of the Court by using the CM/ECF System, which will electronically notify the following counsel of record:

E. Michelle Drake
drake@nka.com
Sarah W. Steenhoek
ssteenhoek@nka.com
**Nichols Kaster, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

Peter H. LeVan , Jr.
plevan@ktmc.com
**Kessler Topaz Meltzer & Check LLP**
280 King of Prussia Road
Radnor, PA 19087

Daniel Kent Bryson
dan@wbmllp.com
**Whitfield, Bryson & Mason, LLP**
900 W. Morgan Street
Raleigh, NC 27603

*Counsel for Plaintiffs*

Bradley R. Kutrow
bkutrow@mcguirewoods.com
Steven N. Baker
sbaker@mcguirewoods.com
**McGuireWoods LLP**
201 N. Tryon Street
P. O. Box 31247
Charlotte, NC 28231

Brian M. LaMacchia
blamacchia@goodwinprocter.com
David Seth Kantrowitz
dkantrowitz@goodwinprocter.com
Matthew G Lindenbaum
mlindenbaum@goodwinprocter.com
**Goodwin Procter, LLP**
53 State Street
Boston, MA 02109

**David L. Permut**
dpermut@goodwinprocter.com
**Goodwin Procter LLP**
901 New York Avenue, NW
Washington, DC 20001

*Counsel for Defendant Bank of America, N.A.*

David L. Brown
dbrown@nldhlaw.com
Brady A. Yntema
byntema@nldhlaw.com
**Nelson Levine deLuca & Hamilton, LLC**
800 Green Valley Road, Suite 302
Greensboro, NC 27408

Eric R. Dinallo
edinallo@debevoise.com
Robert D. Goodman
rdgoodman@debevoise.com
**Debevoise & Plimpton LLP**
919 Third Avenue
New York, NY 10022

*Counsel for Defendant Illinois Union Insurance Co.*

Kevin M. O'Brien
obrienk@phelps.com
**Phelps Dunbar LLP**
Glen Lake One
4140 ParkLake Avenue
Suite 100
Raleigh, NC 27612

*Counsel for Defendant Lloyd's London Certain Underwriters*

    This 21st day of February, 2013

                                              s/ Robert E. Harrington
                                              Robert E. Harrington