IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA


Case No. 3:12-CV-00487

DAVID HOLMES, HERTA S. THEBERGE, MARGUERITE K. POTTER, and the
MARGUERITE K. POTTER REVOCABLE TRUST, individually and on behalf of all
others similarly situated Individually, and on Behalf of a Rule 23 putative class,

      Plaintiffs,

v.

BANK OF AMERICA, N.A., in its own capacity and as successor by merger to BAC
HOME LOANS SERVICING, L.P., SEATTLE SPECIALTY INSURANCE SERVICES,
INC., in its own capacity and as successor in interest to COUNTRYWIDE INSURANCE
SERVICES, INC., ILLINOIS UNION INSURANCE COMPANY, and CERTAIN
UNDERWRITERS AT LLOYD'S LONDON, including all underwriters who
underwrote force-placed wind insurance policies for Bank of America, as the insured
during the applicable limitations period, and LLOYD'S, UNDERWRITERS, AT
LONDON,

      Defendants.

---

**DEFENDANT ILLINOIS UNION INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS THE
AMENDED COMPLAINT**

---

## PRELIMINARY STATEMENT

Plaintiffs' Response in Opposition to Illinois Union Insurance Company's ("IUI")

Motion to Dismiss has two components, neither of which salvages a legal claim against

IUI. First, the Response repeats the baseless assertion that IUI's wind insurance

coverage, which provides important protection to homeowners against storm damage

incurred during a defined time period, is worthless. Second, the Response again

unsuccessfully attempts to plead the case against IUI by conflating claims made against other defendants with those made against IUI. Neither of these efforts by Plaintiffs is sufficient to state a claim for unjust enrichment against IUI. The provision of continuous lender-placed insurance ("LPI") coverage—including through the "backdating" of hazard coverage—is an integral component of the national housing market and cannot in itself form the basis of an unjust enrichment claim. IUI did not issue insurance coverage without notice or in contravention of the mortgage agreements, nor select an unjustified coverage amount, nor permit commissions to inflate premium rates, and Plaintiffs' Amended Complaint does not even allege that IUI did so. Rather, those allegations are made against other parties. The claim against IUI in the Amended Complaint fails to satisfy the plausibility standard of *Twombly* and *Iqbal* and, contrary to Plaintiffs' assertions in the Response, finds no support from any court that has considered a claim against an insurer based on continuous coverage.

As in their other filings with this court, Plaintiffs continue to misconstrue the accepted practice of continuous, "backdated" coverage and, as discussed more fully below, completely ignore new regulatory guidance approving such coverage. Recent rules, promulgated over a month ago by the federal agency devoted to protecting consumers, explicitly validate the importance of LPI coverage on homes.

For these reasons, and the reasons set forth in IUI's Motion to Dismiss, IUI respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

**A.**     **Plaintiffs' Sole Allegation Against IUI Fails to Satisfy the Required Pleading Standards.**

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Although the Court must accept as true all of the factual allegations contained in the Amended Complaint, mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action will not suffice.  *Id.* at 555.  Legal conclusions are not entitled to an assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Plaintiffs' entire claim that they conferred an unjust benefit on IUI rests on the incorrect assertion that the continuous, "backdated" coverage period was without risk. (Am. Compl. ¶¶ 186-87.)  Plaintiffs repeatedly refer to weather reports from the relevant period, purportedly to demonstrate that, in the absence of a recorded storm of sufficient severity, no damage was suffered and therefore IUI's policy was risk-free, or "worthless."  (Am. Compl. ¶ 132; Pls.' Resp. in Opp'n to IUI's Mot. to Dismiss ("Opp.") at 4-5.)  This is exactly the type of conclusory assertion that *Iqbal* prohibits.  *Iqbal*, 556 U.S. at 678-79.  In fact, it is characteristic of LPI that policies be placed automatically to ensure continuous coverage without individual risk-underwriting (*see* Mem. in Support of IUI's  Mot. to Dismiss Pls.' Am. Compl. ("IUI's Mot.") Ex. A), including for periods that pre-date the issuance of the certificate of insurance. *Schilke v. Wachovia Mortg., FSB*,

820 F. Supp. 2d 825, 834 (N.D. Ill. 2011). This provides important protection to homeowners, like Plaintiffs, who promised in their mortgage agreements to purchase continuous coverage but then failed to do so. Hazard policies cover all damage incurred during the specified policy period, including damage that may have occurred in the past but is yet unknown when coverage is placed. IUI is not unjustly enriched by receiving a premium in exchange for that coverage.

Indeed, consistent with IUI's motion, new rules from the Consumer Financial Protection Bureau ("CFPB") issued two weeks before Plaintiffs filed their Response have expressly recognized the value of continuous hazard insurance coverage. (Ex. A at 3-4.)[1] The CFPB in fact explicitly approved of the practice of "backdated" or "retroactive" coverage. (Ex. A at 7 (providing that a servicer "may charge a borrower for force-placed insurance the servicer purchased, retroactive to the first day of any period of time in which the borrower did not have hazard insurance in place").) Tellingly, Plaintiffs omit any reference to these new rules, which seriously undermine their position and demonstrate that the federal agency tasked with protecting consumers has explicitly validated the importance of continuous, "backdated" insurance coverage.

---

[1] Exhibit A is the relevant text of the CFPB rules and commentary. For the full text, see Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10695 (Feb. 14, 2013) (to be codified at 10 C.F.R. pt. 1024). The rules and commentary may also be found at http://www.consumerfinance.gov/regulations/2013-real-estate-settlement-procedures-act-regulation-x-and-truth-in-lending-act-regulation-z-mortgage-servicing-final-rules/#rule (last visited Feb. 20, 2013).

Plaintiffs have repeatedly misconstrued regulatory positions taken by the National Association of Insurance Commissioners and New York's Department of Financial Services concerning those bodies' views on the continuous coverage component of LPI. Now, with any ambiguity wiped away, Plaintiffs simply fail to acknowledge yet another regulatory body's views, this time from a new federal agency expressly charged with protecting consumers from unjust practices.[2] The CFPB considered and endorsed the provision of continuous coverage, along with the state regulators, legislatures, consumer protection advocates, and other government-sponsored entities whose positions are cited in IUI's opening brief. (IUI's Mot. at 3, 17-21.) Underlying all of these governmental positions, the plain fact is that receipt of a premium in exchange for coverage is not unjust enrichment. *See LaCroix v. U.S. Bank, N.A.*, Civ. No. 11-3236, 2012 WL 2357602, at *5 (D. Minn. June 20, 2012) ("Backdating policies . . . ensures that the property is continuously covered in the event that a loss occurs during a period of insufficient coverage.").

Plaintiffs' citation to the policy issued by another defendant, Certain Underwriters at Lloyd's London's ("Lloyd's"), in Plaintiffs' claim against IUI also does not provide grounds for relief. (Opp. at 5 n.3.) Most importantly, without commenting upon Lloyd's policy, IUI's policy does not contain the same language as the Lloyd's policy. (Ex. B.)[3]

---

[2]    *See Learn about the Bureau*, Consumer Fin. Prot. Bureau, http://www.consumerfinance.gov/the-bureau/ (last visited Feb. 20, 2013).

[3]    The Court may properly consider IUI's policy. In ruling on a motion to dismiss, a court may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007), or documents

**B.      Without a Basis for Attacking Continuous Coverage, Plaintiffs Attempt to Replead Their Case for the Second Time.**

The substance of the claim alleged against IUI reads in relevant part:

> *Through Defendants' backdating scheme*, [IUI received] a substantial benefit and [was] enriched. [IUI] received premiums, covering past time periods with no recorded risk of loss according to well-documented weather records.
>
> Plaintiffs and the [IUI] Subclass[] received no benefit from insurance coverage of past non-events. *Therefore*, it would be unjust and inequitable to permit [IUI] to retain these premiums.
>
> Plaintiffs and members of the [IUI] Subclass[] are entitled to restitution of all monies unjustly and inequitably retained *in the form of backdated insurance*, and/or disgorgement of profits realized by [IUI] *in connection with backdated insurance*.

(Am. Compl. ¶¶ 186-88 (emphasis added).)   Because their allegations against IUI are insufficient to state a claim for relief, Plaintiffs attempt to shift the focus to allegations lodged against other defendants.   This attempt to replead through arguments raised in opposition to a motion to dismiss is impermissible. *See Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 409 (E.D. Tenn. 1967), *aff'd*, 414 F.2d 256 (6th Cir. 1969).

"relied upon" by the complaint. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002); *see also In re Wachovia Corp. ERISA Litig.*, Civ. No. 3:09cv262, 2010 WL 3081359, at *2 n.4 (W.D.N.C. Aug. 6, 2010) ("In considering a motion to dismiss, the Court may consider the complaint, documents incorporated or referenced in the complaint, and any other undisputedly authentic documents on which the plaintiffs' claims are based without converting the motion into one for summary judgment." (citations omitted)).   Here, the complaint mentions the master policy between Bank of America and IUI explicitly and incorporates each individual policy by reference to the master policy.   (Am. Compl. ¶ 20 n.1, 21, 40, 46.) Moreover, Plaintiffs refer to this policy in footnote 3 of their Response.

Moreover, Plaintiffs' attempt to include IUI in claims against other defendants by alleging that their loan originators or servicers never required wind insurance in the first instance is irrelevant here. (Opp. at 1, 9, 12-13.) Whether a policy was "backdated" to a date before a borrower received notice of inadequate coverage from his or her servicer does not bear on whether the insurance company rightfully received premiums for providing coverage during the policy's term.[4] Regardless of the other defendants' alleged actions in procuring LPI pursuant to Plaintiffs' mortgages, IUI's provision of and acceptance of premiums for that coverage is not unjust.

The cases on which Plaintiffs rely relate to allegations that are not made against IUI. The plaintiffs in those cases survived motions to dismiss by alleging unreasonably high premiums, undisclosed "kickbacks" and commissions, or an improper amount of coverage placed on the plaintiffs' property. (*See* cases cited in Opp. at 6-8.) For instance, in the *Williams* case that Plaintiffs repeatedly cite, the court made clear that "Plaintiffs do not allege that the force-placed insurance process, in and of itself, supports a claim for unjust enrichment. Instead, Plaintiffs allege that Defendants' manipulation of that process, in order to maximize their profits, supports the unjust enrichment claim." *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233-CIV, 2011 WL 4901346, at *6 (S.D. Fla. Oct. 14, 2011). None of those allegations appear in the Amended Complaint against IUI.

---

[4] Indeed, Plaintiffs' own descriptions of their mortgages disclose the possibility of LPI. (Am. Compl. ¶¶ 32-33, 86-87.) In any event, Plaintiffs' allegations that they did not receive such notice are irrelevant to IUI and to an unjust enrichment claim.

The cases cited by Plaintiffs do not grapple with the issue of continuous coverage—or backdating—alone.  Unsurprisingly, none of these cases treat that aspect of LPI with more than a cursory reference.  On the other hand, courts that have expressly considered continuous coverage have uniformly found that it is an equitable and important aspect of LPI policies.  *Schilke*, 820 F. Supp. 2d at 834;[5] *LaCroix*, 2012 WL 2357602, at \*5; *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2008 WL 2230696, at \*19 (S.D. Ohio May 28, 2008).

## CONCLUSION

For these reasons, as well as those set forth in IUI's memorandum in support of its motion to dismiss, IUI respectfully requests that the Court dismiss the Plaintiffs' Amended Complaint with prejudice.

---

[5] Plaintiffs claim that the court in *Schilke* did not consider the specific language in Plaintiffs' mortgages.  (Opp. at 10 n.7.)  To the contrary, the language the court considered—a requirement to maintain hazard insurance plus a statement that if the borrower failed to maintain it, Wachovia could "do and pay for whatever it deems reasonable or appropriate to protect [its] rights in the Property," including "purchasing [the] insurance required"—is sufficiently similar to the language in Holmes's and Potter's mortgages.  *Schilke*, 820 F. Supp. 2d at 829.

Respectfully submitted this the 21st day of February, 2013.

<div style="margin-left: 40%;">

s/Brady A. Yntema
David L. Brown
N.C. State Bar No. 18942
Brady A. Yntema
N.C. State Bar No. 25771
NELSON LEVINE DeLUCA & HAMILTON LLC
800 Green Valley Road, Suite 302
Greensboro, NC  27408
Telephone:  336.419.4900
Facsimile: 336.419.4950


Eric R. Dinallo
Robert D. Goodman
Miranda H. Turner
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

*Attorneys for Illinois Union Insurance Co.*

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of this Court on February 21, 2013, using the CM/ECF system which will send notification of such filing to all counsel of record for all interested parties to this action.

This the 21st day of February, 2013.

> s/Brady A. Yntema
> David L. Brown
> N.C. State Bar No. 18942
> Brady A. Yntema
> N.C. State Bar No. 25771
> NELSON LEVINE DeLUCA & HAMILTON LLC
> 800 Green Valley Road, Suite 302
> Greensboro, NC  27408
> Telephone:  336.419.4900
> Facsimile: 336.419.4950
>
>
> Eric R. Dinallo
> Robert D. Goodman
> Miranda H. Turner
> DEBEVOISE & PLIMPTON LLP
> 919 Third Avenue
> New York, NY 10022
>
> *Attorneys for Illinois Union Insurance Co.*