# Exhibit A

BUREAU OF CONSUMER FINANCIAL PROTECTION

12 CFR Part 1024

[Docket No. CFPB-2012-0034]

RIN 3170-AA14

**Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)**

**AGENCY:** Bureau of Consumer Financial Protection.

**ACTION:** Final rule; official interpretations.

**SUMMARY**: The Bureau of Consumer Financial Protection is amending Regulation X, which implements the Real Estate Settlement Procedures Act of 1974, and implementing a commentary that sets forth an official interpretation to the regulation. The final rule implements provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act regarding mortgage loan servicing. Specifically, this final rule implements Dodd-Frank Act sections addressing servicers' obligations to correct errors asserted by mortgage loan borrowers; to provide certain information requested by such borrowers; and to provide protections to such borrowers in connection with force-placed insurance. Additionally, this final rule addresses servicers' obligations to establish reasonable policies and procedures to achieve certain delineated objectives; to provide information about mortgage loss mitigation options to delinquent borrowers; to establish policies and procedures for providing delinquent borrowers with continuity of contact with servicer personnel capable of performing certain functions; and to evaluate borrowers' applications for available loss mitigation options. Further, this final rule modifies and streamlines certain existing servicing-related provisions of Regulation X. For instance, this final rule revises provisions relating to mortgage servicers' obligation to provide disclosures to borrowers in connection with transfers of mortgage servicing, and mortgage servicers' obligation to manage escrow accounts, including restrictions on purchasing force-placed insurance for certain borrowers with escrow accounts and requirements to return amounts in an escrow account to a borrower upon payment in full of a mortgage loan. Concurrently with the issuance of this final rule, the Bureau is issuing a rule implementing amendments relating to mortgage servicing to the Truth in Lending Act in Regulation Z.

**DATES:** This final rule is effective on January 10, 2014.

…
*Section 1024.37 Force-Placed Insurance*

…

2

*37(c) Requirements for Charging Borrower Force-Placed Insurance*

*37(c)(1) In General*

…

The Bureau received comments on various aspects of proposed § 1024.37(c)(1). Except as discussed below, the majority of industry commenters did not raise concerns with the notification aspect of proposed § 1024.37(c)(1). The majority of industry commenters only sought clarification. First, they requested the Bureau clarify that a servicer may retroactively charge a borrower for force-placed insurance back to the date that a borrower's hazard insurance lapsed, even if the servicer sends the first notice after the date of lapse. Second, a number of industry commenters requested that the Bureau clarify how a servicer should account for grace periods when determining whether a borrower has hazard insurance in place continuously. They observed that a grace period under a typical hazard insurance policy extends a policyholder's insurance coverage past the expiration date only if the policyholder pays the past-due premium during such period. A bank servicer requested the Bureau clarify that "grace period" used in proposed § 1024.37 refer to grace periods applicable to the borrower's hazard insurance, and not grace periods applicable to the borrower's loan during which the borrower pays the mortgage payment after the due date without incurring a late charge. One large bank servicer sought clarification of whether the notice period could exceed 45 days.
…
In contrast, one consumer advocacy group urged the Bureau to strengthen the notification requirement so that a servicer would be required to provide the first notice within 15 days of placing force-placed insurance. It further asserted that it would be unreasonable to permit a servicer to retroactively charge a borrower for more than 60 days of force-placed insurance because it is a servicer's responsibility to identify lapses in insurance and notify borrowers of such lapses in a timely fashion.
…
After careful consideration of these comments and further consideration, the Bureau is adopting § 1024.37(c)(1) with several adjustments. With respect to the notification aspect of § 1024.37(c)(1), the Bureau notes that RESPA establishes a very detailed scheme for any servicer (without consideration of the servicer's size) to follow before a servicer imposes a charge on any borrower for force-placed insurance. The Bureau believes that the prescriptive nature of the statutory scheme suggests that Congress believed that each step was necessary to achieve the consumer protection purpose of RESPA's force-placed insurance provisions. The notification procedures the Bureau proposed in § 1024.37(c)(1) mirror the prescriptive statutory scheme because they were necessary to achieve the intent of Congress. The Bureau declines to adopt suggestions received from commenters, which ranged from creating exemptions for small servicers and unresponsive borrowers to changing various aspects of the notification requirements, because they would make § 1024.37(c)(1) depart from the statutory scheme Congress established.

The Bureau has also worked to craft effective notices through consumer testing, and the results of those tests suggest that borrowers will in fact welcome and respond to the notices. The Bureau further believes that some of the commenters' concerns are addressed by the fact that the Bureau is interpreting the statutory language to allow charges to be assessed retroactively for any period in which coverage was not maintained continuously once the procedural and substantive statutory criteria are met. Moreover, the Bureau believes that it is unnecessary to set limitations on a servicer's right to assess on borrowers charges retroactively because the statute establishes that a borrower has an unconditional right to a full refund of force-placed insurance premium charges and related fees the borrower has paid for any period in which the borrower's hazard insurance and the force-placed insurance were both in place.

…

**§ 1024.37 Force-placed insurance.**

…

(c) *Requirements before charging borrower for force-placed insurance.* (1) *In general.* Before a servicer assesses on a borrower any premium charge or fee related to force-placed insurance, the servicer must:
(i) Deliver to a borrower or place in the mail a written notice containing the information required by paragraph (c)(2) of this section at least 45 days before a servicer assesses on a borrower such charge or fee;
(ii) Deliver to the borrower or place in the mail a written notice in accordance with paragraph (d)(1) of this section; and
(iii) By the end of the 15-day period beginning on the date the written notice described in paragraph (c)(1)(ii) of this section was delivered to the borrower or placed in the mail, not have received, from the borrower or otherwise, evidence demonstrating that the borrower has had in place, continuously, hazard insurance coverage that complies with the loan contract's requirements to maintain hazard insurance.

(2) *Content of notice.* The notice required by paragraph (c)(1)(i) of this section shall set forth the following information:
(i) The date of the notice;
(ii) The servicer's name and mailing address;
(iii) The borrower's name and mailing address;
(iv) A statement that requests the borrower to provide hazard insurance information for the borrower's property and identifies the property by its physical address;
(v) A statement that the borrower's hazard insurance is expiring or has expired, as applicable, and that the servicer does not have evidence that the borrower has hazard insurance coverage past the expiration date, and that, if applicable, identifies the type of hazard insurance for which the servicer lacks evidence of coverage;
(vi) A statement that hazard insurance is required on the borrower's property, and that the servicer has purchased or will purchase, as applicable, such insurance at the borrower's expense;
(vii) A statement requesting the borrower to promptly provide the servicer with insurance information;
(viii) A description of the requested insurance information and how the borrower may provide such information, and if applicable, a statement that the requested information must be in writing;
(ix) A statement that insurance the servicer has purchased or purchases:
(A) May cost significantly more than hazard insurance purchased by the borrower;
(B) Not provide as much coverage as hazard insurance purchased by the borrower;
(x) The servicer's telephone number for borrower inquiries; and (xi) If applicable, a statement advising the borrower to review additional information provided in the same transmittal.

(3) *Format.* A servicer must set the information required by paragraphs (c)(2)(iv), (vi), and (ix)(A) and (B) in bold text, except that the information about the physical address of the borrower's property required by paragraph (c)(2)(iv) of this section may be set in regular text. A servicer may use form MS-3A in appendix MS-3 of this part to comply with the requirements of paragraphs (c)(1)(i) and (2) of this section.

(4) *Additional information*. A servicer may not include any information other than information required by paragraphs (c)(2) of this section in the written notice required by paragraph (c)(1)(i) of this section. However, a servicer may provide such additional information to a borrower on separate pieces of paper in the same transmittal.

…

*Section 1024.37—Force-Placed Insurance*

…

*37(c) Requirements before charging borrower for force-placed insurance.*

*37(c)(1) In general.*

*Paragraph 37(c)(1)(i).*

1. *Assessing premium charge or fee*. Subject to the requirements of § 1024.37(c)(1)(i) through (iii), if not prohibited by State or other applicable law, a servicer may charge a borrower for force-placed insurance the servicer purchased, retroactive to the first day of any period of time in which the borrower did not have hazard insurance in place.

…