# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAMELA KARP, individually and on behalf of
all others similarly situated,

   Plaintiffs,

vs.               CASE NO.: 8:12-cv-1700-T-17MAP

BANK OF AMERICA, N.A.,

   Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

  This cause is before the Court on Defendant Bank of America's Motion to Dismiss the Complaint (Doc. 11) and Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint (Doc. 18). For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE FACTS

  The following facts from Plaintiff's Complaint (Doc. 2) are taken as true for the purposes of this motion.

  Pamela Karp ("Plaintiff") entered into a mortgage loan (the "Mortgage") with Bank of America, N.A. ("Defendant") on May 29, 2003, for a single-family home in Sarasota, FL. (Doc. 2 at ¶ 15–16). Under the loan, Plaintiff agreed to pay Defendant $104,932.00 in equal monthly payments over thirty years. (Doc. 2 at ¶ 15). The mortgage requires the maintenance of an escrow account into which Plaintiff must make payments for, among other things, hazard

1

insurance that covers the subject property. (Doc. 2 at ¶ 17). The Mortgage provides that, should Plaintiff fail to maintain hazard insurance on the property, Defendant may obtain such insurance at Defendant's option and Plaintiff's expense. [Mortgage].[1] This practice is referred to as "force-placed insurance" (Doc. 2 at ¶ 14) or "lender-placed insurance" (Doc. 11 at 4).

The Mortgage contains detailed information regarding the amount of insurance required and under what circumstances Defendant may force-place insurance securing the mortgaged property:

> **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

Plaintiff initiated this action on July 30, 2012, asserting three counts against Defendant, on behalf of herself individually and on behalf of the following class:

---

[1] Although Plaintiff's complaint references the Mortgage and states that "a true and correct copy . . . is attached" to the complaint (Doc. 2 at ¶ 17), no such copy was attached. Defendant attached a copy of the Mortgage to its Motion to Dismiss. (Doc. 11, Exhibit A). This Court may properly consider the Mortgage in ruling on Defendant's 12(b)(6) motion. "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (stating that a "district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged"). Here, the Mortgage is central to Plaintiff's claim and Plaintiff referred to it in the complaint. (Doc. 2 at ¶ 17). Further, neither party disputes the authenticity of the Mortgage.

> a Florida only class consisting of all persons who have or had a residential mortgage loan or line of credit and had excessive deductions for an escrow account to pay for unnecessary, duplicative or non-existent insurance upon the secured property by Defendant, between June 1, 2007, and the date of final disposition of this action.

(Doc. 2 at ¶ 21). Count I is for breach of contract and breach of the implied covenant of good faith and fair dealing. Count II is for assumpsit. (Doc. 2)

Plaintiff alleges that in 2010, "Defendant began utilizing the sums paid by Plaintiff into escrow to pay for excessive and/or duplicative hazard insurance, with no obvious benefit to Plaintiff or her property." (Doc. 2 at ¶ 18).

Plaintiff further alleges that "Defendant has commonly required borrowers to pay for unnecessary insurance coverage." Plaintiff further explains that examples of this behavior include: "(a) requiring borrowers to pay for insurance coverage that exceeds the amount necessary to protect the mortgagee's interest in the secured property; and (b) requiring borrowers to pay for insurance policies despite the existence of a Lender's Loss Payable Endorsement that already protects the lender's interest in the property." (Doc. 2 at ¶ 12).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff's complaint set out a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and internal quotation marks omitted).

Therefore, to survive a defendant's motion to dismiss, the plaintiff's complaint "must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss under this plausibility standard, courts follow a two-pronged approach. First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id.* at 1290 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). Then, a court must take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citing *Iqbal*, 129 S. Ct. at 1950)) (internal quotation marks omitted). In sum, Rule 8's pleading standard "does not require 'detailed factual allegations,' but demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### A. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

It is settled law that all contracts contain not only their express terms, but also terms and matters that are implied by law, and both are equally binding. *First Nationwide Bank v. Fla. Software Servs., Inc.*, 770 F. Supp. 1537, 1542 (M.D. Fla. 1991). One of these implied terms recognized under Florida law is the covenant of good faith and fair dealing. *Id.* To sufficiently allege a breach of the implied covenant of good faith and fair dealing, a party must show:

> a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

*Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Cox v. CSK Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999). Thus, such a claim cannot be maintained "in the absence of a breach of an express term of a contract." *Id.* at 1152. Further, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Id.* at 1097–1098. The Eleventh Circuit has cautioned, however, that a party cannot maintain a cause of action for breach of the implied covenant of good faith and fair dealing "in derogation of the express terms of the underlying contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999).

Plaintiff alleges that Defendant breached the covenant of good faith and fair dealing in several ways. First, that Defendant failed to make any effort "to maintain borrowers' existing policies" and instead force-placed insurance from providers of Defendant's choice with "substantially greater premiums" that provided less coverage than borrowers' existing policies. Second, by choosing an insurance provider in bad faith and by "forcing borrowers to pay for both (i) the actual cost of protecting the mortgagee's interest in the property and (ii) the cost of the commissions/reinsurance premiums" from the provider. Third, by failing to "seek competitive bids on the open market" and instead continually purchasing insurance through the same providers. Fourth, by "assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and the Class and misrepresenting the reason for the cost of the policies." Fifth, for "[c]ollecting a percentage of the force-placed premiums . . . and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced

premiums possible." Sixth, that Defendant accepted "purported reinsurance premiums and/or commissions in return for placing borrowers with force-placed insurance providers." Seventh, by "[b]ackdating force-placed insurance policies to cover time periods which have already passed and for which there was . . . no risk of loss." Eighth, by "[m]isrepresenting in their force-placed insurance notices that borrowers were obligated to pay for backdated insurance coverage for periods during which the lender had no risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss Payable Endorsement." Ninth, by procuring insurance to cover periods of time in which Defendant was already covered under a Lender's Loss Payable Endorsement. Finally, that Defendant failed to provide borrowers with any opportunity to opt out of "having their force-placed insurance policies provided by an insurer with whom Defendant had a commission and/or captive reinsurance agreement.

On the other hand, Defendant argues that Plaintiff's claim for breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed because the Plaintiff fails to identify a specific provision of the Mortgage that Defendant breached. (Doc. 11 at 6). The Court rejects this argument. Although Plaintiff did not identify a specific section of the Mortgage by number or title, Plaintiff refers to the provision contained in the Mortgage that permits Defendant to "'force-place' insurance or to buy more insurance to cover the mortgaged property." (Doc. 2 at ¶ 37). Thus, the Court finds that Plaintiff has adequately alleged that Defendant breached the lender-placed insurance provision contained in section 5 of the Mortgage, titled "Property Insurance."

Defendant next argues that Plaintiff failed to state a plausible claim for relief because she failed to plead specific facts that relate to her hazard insurance coverage or premiums. (Doc. 11 at 9). In her claim for breach of contract and breach of the implied covenant of good faith and

fair dealing, Plaintiff alleges, among other things, that Defendant acted capriciously and in bad faith by force-placing "excessive, unreasonable, and unnecessary" insurance premiums upon Plaintiff's and class members' mortgaged property. (Doc. 2 at ¶¶ 37–38). With respect to herself, Plaintiff supports her claim of force-placed excessive or duplicative insurance with a factual allegation that between August 18, 2010 and February 9, 2011, Defendant "assessed [Plaintiff's] escrow account $11,187.00 for hazard insurance where the premium was only $3,938.00." (Doc. 2 at ¶ 19). The Court finds that Plaintiff's specific factual allegations are sufficient to survive dismissal at this stage.

Finally, Defendant argues that Plaintiff cannot state a plausible claim for breach of the implied covenant of good faith and fair dealing because the Mortgage expressly grants Defendant the discretion to both determine what amounts of insurance are required, and for what time periods, and to purchase insurance in the event that the borrower fails to maintain the required coverage. (Doc. 11 at 11). As mentioned, however, when the terms of a contract afford a party substantial discretion to promote that party's self-interest, the implied duty of good faith "nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party." *Cox*, 732 So. 2d at 1097–1098. Where, as here, the implied covenant would not vary the express terms of the Mortgage, a failure to perform such discretionary duties in good faith could constitute a breach of the implied covenant of good faith and fair dealing. *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278–1279 (S.D. Fla. 2009). Plaintiff alleges that Defendant carried out its discretionary duties under section 5 of the Mortgage in bad faith and therefore in contravention of the parties reasonable expectations under the Mortgage. (Doc. 2 at ¶¶ 37–38). Thus, the Court finds that Plaintiff has alleged

sufficient facts to support its claim that Defendant acted capriciously in exercising its discretion under the lender-placed insurance provision of the Mortgage.

**B.      Assumpsit**

Plaintiff's second count is for assumpsit. Plaintiff and Defendant disagree as to whether the common law action of assumpsit remains a cause of action independent of an action for unjust enrichment. Defendant correctly points out, however, that in her complaint, Plaintiff alleges the bare elements of a claim for unjust enrichment under the heading of assumpsit. (Doc. 2 at ¶¶ 42–44). Thus, the Court will treat Plaintiff's claim of assumpsit as a claim for unjust enrichment. Under Florida law, the elements of a cause of action for unjust enrichment are: (1) that the plaintiff has conferred a benefit upon the defendant, and that the defendant had knowledge of the benefit; (2) that the defendant voluntarily accepted and retained the conferred benefit; and (3) that the circumstances are such that it would be inequitable for the defendant to retain the conferred benefit without payment to the plaintiff. *Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1369 (M.D. Fla. 2009) (citing *Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. 4th DCA 2006)); *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 711–712 (Fla. 2d DCA 1988).

Under Florida law, a plaintiff cannot pursue a quasi-contract claim for unjust enrichment when an express contract exists that concerns the same subject matter. *Hazen v. Cobb*, 117 So. 853, 854 (Fla. 1928) (distinguishing between general and special assumpsit and stating that the "law will not imply a contract[] where an express one exists"); *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (affirming that the "appellee's unjust enrichment claim was precluded by the existence of an express contract between the parties concerning the same subject matter"); *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA

8

1984) (holding that appellant's acknowledgement of an express agreement between the parties regarding compensation defeated his claim for relief based on a quasi-contract theory of recovery); *Salutec Corp. v. Young & Lawrence Assocs., Inc.*, 243 So. 2d 605, 606 (Fla. 4th DCA 1971) (holding that in a quantum meruit action to recover compensation for services rendered, which is a claim derived from general assumpsit, any proof of an express agreement as to compensation between the parties would defeat rather than sustain such an action).

In her response, Plaintiff argues that Federal Rule of Civil Procedure 8(d) allows her to plead in the alternative, even if the theories for relief are inconsistent. (Doc. 18 at ¶ 14). Defendant correctly points out, however, that Plaintiff acknowledged in her complaint that the Mortgage governs the same subject matter as her claim for assumpsit. Plaintiff's claim for assumpsit concerns the alleged payment of force-placed insurance premiums by her and members of the putative class. (Doc. 2 at ¶ 42). Plaintiff acknowledged that the Mortgage governs the terms by which Defendant is permitted to force-place insurance to cover the mortgaged property. (Doc. 2 at ¶¶ 37, 41–42). Thus, the parties do not dispute the existence of a valid written agreement. *See Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 2012 WL 6532717, at *18 (D. Md. Dec. 13, 2012) (refusing to dismiss a promissory estoppel claim that was plead in the alternative because it was "hotly disputed" whether the parties had entered into a valid contract). Because the written mortgage concerns the same subject matter as Plaintiff's claim in assumpsit, the Court finds that such a claim cannot stand as a matter of law. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss be **GRANTED** in part and **DENIED** in part as set out above. In particular, the Court will dismiss Count II of the complaint for assumpsit with prejudice. The Court will deny the motion as to Count I for breach of contract and breach of

the implied covenant of good faith and fair dealing. Defendant shall answer the complaint within ten days of this order.

**DONE** and **ORDERED** in chambers, in Tampa, Florida this 18th day of March 2013.

*/s/ Elizabeth A. Kovachevich*
ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT COURT JUDGE

Copies: All parties and counsel of record.